Robert S. Arns, State Bar No. 65071
rsa@arnslaw.com
Jonathan E. Davis, State Bar No. 191346
jed@arnslaw.com
Kevin M. Osborne, State Bar No. 261367
kmo@arnslaw.com
Julie C. Erickson, State Bar No. 293111
jce@arnslaw.com
**THE ARNS LAW FIRM**
A Professional Corporation
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| DOMINIC COBARRUVIAZ, ARLIN GOLDEN, JOHN REILLY, CHRISTOPHER RUSSELL, SUSAN BANNON, BATYA WEBER, AND DEREK WILLIAMS, Individually and On Behalf of All Others Similarly Situated Employees, <br><br> Plaintiffs, <br><br> vs. <br><br> MAPLEBEAR, INC., dba INSTACART; AND DOES 1 THROUGH 100, inclusive, <br><br> Defendants. | No. C15-0697 EMC <br><br> [PROPOSED] COLLECTIVE ACTION COMPLAINT [29 U.S.C. §§ 201] AND FIRST AMENDED CLASS ACTION COMPLAINT |

Plaintiffs, DOMINIC COBARRUVIAZ ("Cobarruviaz"), ARLIN GOLDEN ("GOLDEN"), JOHN REILLY ("REILLY"), CHRISTOPHER RUSSELL ("RUSSELL"), SUSAN BANNON ("BANNON"), BATYA WEBER ("WEBER"), and DEREK WILLIAMS ("WILLIAMS"), on behalf of themselves and all others similarly situated ("Plaintiffs"), bring this action against Defendants MAPLEBEAR, INC., doing business as INSTACART ("Instacart"), and Does 1 through 100 (collectively "Defendants"), and allege, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

1.    Plaintiffs Cobarruviaz, Golden, Reilly, Russell, Bannon, Weber, and Williams bring this action to obtain damages and restitution, as well as injunctive and other relief, individually and on behalf of a proposed class defined below ("Class").

2.    Instacart is a shopping and delivery service that provides shoppers and delivery drivers who are dispatched through a mobile phone application to shop, purchase, and deliver groceries to customers at their homes and businesses.

3.    As alleged herein, Plaintiffs are shoppers, drivers and delivery persons who were improperly misclassified as independent contractors and required to pay business-related expenses while in the employ of Defendants.  Defendants intentionally misrepresented to Plaintiffs that they were not entitled to wages for non-productive time, reimbursements for expenses incurred in relation to their employment, workers' compensation insurance benefits, and tax benefits enjoyed by employees.

4.    By misclassifying Plaintiffs and others similarly situated as independent contractors and, in turn, failing to pay them minimum wage and overtime for all time worked, Instacart has violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiffs assert this claim under the FLSA on behalf of all similarly situated employees who may choose to opt in to this action pursuant to 29 U.S.C. §216(b).

5.    Plaintiffs further assert claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons throughout the United States, under the California Labor Code §§

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

204, 216, 224, 226, 226.7, 226.8, 510, 512, 1174, 1194, 1197, 1198, 2699, 2753 and 2802; the California Business & Professions Code § 17200; and for fraud/intentional misrepresentation.

6.     In the event Plaintiffs claims under California law are limited to those Instacart shoppers and delivery persons who have worked in California, despite uniform contracts between Instacart and its shoppers/delivery persons applying California law to their relationships and rights, per Rule 8 of the Federal Rules of Civil Procedure, the following plaintiffs make the following alternative claims:

a.     Plaintiffs Reilly and Russell alternatively assert, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in New York, claims under the New York Labor Law §§ 195 and 652 and Part 142 of Title 12 of the New York Compilation of Codes, Rules, and Regulations Sections 142-2.2, 142-2.3, and 142-2.4.

b.     Plaintiffs Bannon and Weber alternatively assert, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Pennsylvania, claims under the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. § 333.101 *et seq.*, the Pennsylvania Wage and Payment Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq.*, and various provisions of the Pennsylvania Code.

c.     Plaintiff Derek Williams alternatively asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Colorado, claims under the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*, the Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. § 8-6-101 *et seq.*, and Colorado Minimum Wage Order Number 31, 7 Colo. Code Regs. § 1103-1 *et seq.*

7.     Plaintiffs seek actual and/or compensatory damages, civil penalties, restitution, equitable relief, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

## JURISDICTION AND VENUE

8.     This class action was initially filed pursuant to Section 382 of the California Code of Civil Procedure seeking to remedy Defendants' violations of state law, including the Labor Code, UCL, and orders promulgated by the Industrial Welfare Commission ("IWC" or "IWC Orders"), arising from and related to Defendants' misclassification, unpaid workers' compensation insurance, unpaid tax contributions, unreimbursed expenses, and related misconduct in relation to Plaintiffs' employment.   Defendants removed the case to federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4 (2005) as the parties are minimally diverse and the amount in controversy exceeds $5,000,000. 28 U.S.C. §§ 1332(d)(2), 1453(b), giving this Court original jurisdiction.

9.     This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331; section 16(b) of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 216(b).

10.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state wage and hour and associated claims because the claims originate from a common nucleus of operative fact.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, Defendants are headquartered in and engage and perform business activities in and throughout San Francisco County. Plaintiffs regularly performed work in San Francisco County, many of Defendants' services involve San Francisco County residents, and many of the acts complained of herein occurred in this judicial district.

## PARTIES

12.    Plaintiff Cobarruviaz is, and at all times relevant herein was, a resident of San Francisco, California.   Defendants continuously employed Cobarruviaz as a shopper, driver and delivery person since January 2014 through February 2014. During the course of his employment by Defendants, Cobarruviaz incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.

13.    Plaintiff Golden is a resident of Oakland, California.   Defendants continuously employed Golden as a shopper, driver and delivery person since April 2013.   During the course of his

3

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

employment by Defendants, Golden incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Golden also regularly worked in excess of eight (8) hours per day and forty (40) hours per week but was not compensated at the required overtime wage rates.  Golden regularly was not paid minimum wage for the hours he worked.

14.     Plaintiff Reilly is a resident of Brooklyn, New York.  Defendants continuously employed Reilly as a shopper, driver and delivery person since October 2014. During the course of his employment by Defendants, Reilly incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Reilly also regularly worked in excess of eight (8) hours per day and forty (40) hours per week but was not compensated at the required overtime wage rates.  Reilly regularly was not paid minimum wage for the hours he worked.

15.     Plaintiff Russell is a resident of Brooklyn, New York.  Defendants continuously employed Russell as a shopper, driver and delivery person from December 2014 through February 2015. During the course of his employment by Defendants, Russell incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, including public transportation fares, for which he was not reimbursed.  Russell also regularly worked in excess of eight (8) hours per day and forty (40) hours per week but was not compensated at the required overtime wage rates.  Russell regularly was not paid minimum wage for the hours he worked.

16.     Plaintiff Bannon is a resident of Philadelphia, Pennsylvania.  Defendants continuously employed Bannon as a shopper, driver and delivery person since April 2014. During the course of her employment by Defendants, Bannon incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which she was not reimbursed.  Bannon also regularly worked in excess of eight (8) hours per day and forty (40) hours per week but was not compensated at the required overtime wage rates.  Bannon regularly was not paid minimum wage for the hours she worked.

17.     Plaintiff Weber is a resident of Philadelphia, Pennsylvania.  Defendants continuously

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

employed Weber as a shopper, driver and delivery person since April 2014. During the course of her employment by Defendants, Weber incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which she was not reimbursed.  Weber also regularly worked in excess of eight (8) hours per day and forty (40) hours per week but was not compensated at the required overtime wage rates.  Weber regularly was not paid minimum wage for the hours she worked.

18.     Plaintiff Williams is a resident of Denver, Colorado.  Defendants continuously employed Russell as a shopper, driver and delivery person from June 2014 through December 2014. During the course of his employment by Defendants, Williams incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed.  Russell also regularly worked in excess of eight (8) hours per day and forty (40) hours per week but was not compensated at the required overtime wage rates.  Williams regularly was not paid minimum wage for the hours he worked.

19.     Defendant Instacart is a California corporation with its principal place of business located at 92 S. Park Street in San Francisco, California.  Instacart maintains substantial ongoing business operations throughout the United States, including San Francisco County, and is in the business of providing online grocery shopping and delivery service.

20.     The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

## THE NATIONWIDE COLLECTIVE ACTION

21.     Plaintiffs bring the first cause of action on behalf of themselves and all other Instacart shoppers and delivery persons who have worked for Defendant in the United States between January 1, 2012 and the date of final judgment in this matter.

22.     Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act.

5

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

Plaintiffs and other Instacart shoppers and delivery persons are similarly situated in that they are all subject to Instacart's common plan or practice of classifying shoppers and delivery persons as independent contractors, not paying them overtime for all hours worked beyond forty (40) in a given week, and not ensuring that they receive at least the federal minimum wage for all weeks worked.

23.     Plaintiffs have consented to join this collective action.  Plaintiffs' written consent forms are attached hereto as Exhibit 1.

## CLASS ACTION ALLEGATIONS

24.     Plaintiffs bring the second through twelfth causes of action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following Class:

> All persons who performed grocery shopping and/or delivery work anywhere in the United States for or on behalf of one or more of the Defendants from January 1, 2012 to the present.

Plaintiffs reserve the right to amend this Class definition if discovery and/or further investigation demonstrate that the Class should be expanded or otherwise modified.

25.     Plaintiffs and other class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

26.     The members of the Class are so numerous that joinder of all members would be impracticable.

27.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

> a.     Whether class members have been required to follow uniform procedures and policies regarding their work for Instacart;
>
> b.     Whether the work performed by class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;
>
> c.     Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of California law;

6

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

d.      Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the course of their employment;

e.      Whether Defendants' conduct violates the California Labor Code;

f.      Whether Defendants' conduct violates Section 17200 of the California Business and Professions Code;

g.      Whether Defendants' conduct otherwise violates California law; and

h.      Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

28.     Named Plaintiffs Cobarruviaz, Golden, Reilly, Russell, Bannon, Weber, and Williams are class members, who suffered damages as a result of Defendant's conduct and actions alleged herein.

29.     Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs have no interests antagonistic to those of the Class and are not subject to any unique defenses.

30.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class and have retained attorneys experienced in class action and complex litigation.

31.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions;

b.      The Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

7

33.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

**FACTUAL ALLEGATIONS**

34.     Instacart provides grocery delivery services in cities throughout the country via an on-demand dispatch system.

35.     Instacart offers customers the ability to purchase groceries from specified stores on a mobile phone application or over the Internet and have them delivered by "personal shoppers" within one or two hours.

36.     Instacart's website advertised that "Instacart is a grocery delivery service that delivers in a little as an hour!"

37.     At all times during their employment with Defendants, Plaintiffs were misclassified as independent contractors by Defendants, were in fact employees of Defendants, and suffered actual economic harm as a consequence of this misclassification.

38.     At all relevant times, Defendants issued Plaintiffs Form 1099s, indicating Plaintiffs were independent contractors and were not Defendants' employees.  The agreement between Plaintiffs and Instacart is titled the "Independent Contractor Agreement." This document, which Class members are required to sign to be eligible for employment, was drafted by Instacart, is not subject negotiation, and is presented to the Class members at the end of the application process. This Instacart document requires that any and all issues related to the document and the work of the Class members be subject to California law.

39.     Despite Defendants' explicit and implicit classification of Plaintiffs as independent contractors, Plaintiffs were in fact employees of Defendants.  Plaintiffs were required to follow a litany of detailed requirements imposed on them by Instacart and they were graded and subject to termination based on their failure to adhere to these requirements.

40.     Defendants even refer to Plaintiffs and its other shoppers/drivers as "employees" and members of the Instacart "team" and "fleet."

41.     At all relevant times, Defendants exerted control over Plaintiffs in a manner consistent with an employer-employee relationship, including but not limited to, generating the work orders for Plaintiffs; controlling their wages; enforcing behavioral codes of conduct; controlling the

8

means, manner, and method by which they perform their work; and controlling the conditions of employment.

42.     At all relevant times, Defendants directed Plaintiffs precisely when and where they were to collect and deliver groceries to Instacart customers, how they were to interact with Instacart customers, required them to wear clothing and use accessories bearing the Instacart insignia, directed them as to how they were to maintain their vehicles, and terminated them from Instacart's employment at Instacart's discretion.

43.     As a prerequisite to being hired as an Instacart delivery driver, Plaintiffs had to undergo training by Instacart regarding how to perform their duties.  Instacart required further training if Plaintiffs were going to be delivering alcohol as part of a work order.  Plaintiffs had to take multiple tests regarding applicable rules and regulations.  They were trained on how to operate the Instacart mobile application on their smartphones and underwent in-store training sessions during which they shadowed another Instacart shopper/delivery person.  Plaintiffs were also directed to watch Instacart videos, hosted on the mobile application, for additional instruction on how to perform their job duties in accordance with Instacart's standards and objectives.

44.     At all relevant times, Plaintiffs were assigned their work by Defendants, through its dispatchers via a mobile phone application ("Instacart App"), on a daily basis.

45.     On a typical workday, Plaintiffs received text messages from Defendants directing Plaintiffs what items they were to collect for Instacart customers, the specific grocery store and exact store location where they were to collect these items, and when and to where they were to deliver the items to Instacart customers.  Instacart even directed Plaintiffs as to where to park when working a shift. Plaintiffs did not have any role or discretion in determining the manner of executing their duties, the timing or scope of their work, or price to be charged for the work performed.

46.     Instacart imposed strict job-performance rules that controlled every aspect of Plaintiffs' means and mode for accomplishing the order fulfillment and delivery.  For example, Instacart directed its shoppers/drivers to call the customer if an order item is unavailable.  It also imposed protocol on what item to purchase as a substitute if the customer is unreachable.  Instacart

9

directed its shoppers to try to match the quantity ordered and prioritize health features like if the requested but unavailable item was gluten-free, the shopper should purchase a gluten-free substitute.

47.    Instacart monitored and managed Plaintiffs' job performance down to the minute. Plaintiffs and all other shoppers/drivers were required to notify Instacart, by way of the Instacart App, when they were starting to shop for an order, when the purchase was complete, when they were starting the delivery process, and when delivery was complete.  Instacart sent text messages to Plaintiffs if they were running even a minute or two behind Instacart's unilaterally-imposed timetable to inquire why they were running late and requested that Plaintiffs provide minute-by-minute updates on the delivery status of their assigned orders.

48.    At times, Instacart managerial personnel were stationed in the grocery stores to help the shoppers/delivery persons with any ongoing issues, answer questions, and improve its shopping/checkout/delivery process.

49.    At all relevant times, Instacart also used a letter grading system to evaluate Plaintiffs and all other shoppers/drivers.  Each letter grade was comprised of three components: reliability, accuracy, and speed.  A shopper/delivery person was expected to locate and select two and a half items per minute.  Even at that rate, a shopper will receive a "C" in the "Speed" category.  The lower a person's grade, the fewer or smaller batches they received.

50.    Instacart also directed its shoppers/drivers to assist in the maintenance of Instacart's online interface by compiling and updating the grocery inventory for its partner grocery stores while they are shopping in the stores.

51.    At all relevant times, Instacart provided a shopper support team within its Operations division to provide instruction to shoppers/drivers mid-shift as to questions about carrying out their job functions.

52.    At all relevant times, Plaintiffs received their assigned jobs on a daily basis from Defendants and, as a result, they did not know where they were to be assigned to work, the type of deliveries they were to be performing, or the length of time any given assignment was expected to require until they received Defendant's work order text message.  Plaintiffs were not

10

permitted to collect the materials from locations of their choosing or deliver them at a time or a price negotiated by Plaintiffs.

53.     Instacart also exerted control over its employee's wages.   On multiple occasions throughout the class period, Instacart unilaterally modified the compensation structure applicable to shoppers/drivers without any negotiation or consent on the part of the drivers.

54.     At all relevant times, Instacart paid Plaintiffs via direct deposit.  A wage statement was provided on the Instacart App.  However, at all relevant times, the Instacart App never provided the Plaintiffs' hours worked or the hourly rate paid.   Nor did the app provide Plaintiffs information as to their piece rate compensation (i.e., per-batch commission).  Plaintiffs had no means of verifying they were being paid correctly.

55.     At some time during the class period, Instacart began bifurcating the job duties of its delivery persons into two separate roles: in-store shoppers who remained at a given grocery store for the entirety of their shifts and performed the actual shopping and purchasing of the dictated items; and delivery drivers who pick up the already-purchased orders from designated areas within the grocery stores and then deliver the batches to the customer.  Full-service roles (i.e., shopping and delivering) are still available.

56.     Prior to this change, Instacart delivery persons were entitled to one hundred percent of any tips given by customers during their shift.  Sometime after the change, tips are now split equally between the delivery person and the in-store shopper.

57.     Instacart is in the business of providing grocery delivery service to customers, and that is the service that Instacart shoppers and drivers provide.  The shoppers' and drivers' services are fully integrated into Instacart's business, and without them, Instacart's business would not exist.

58.     However, at all relevant times, Defendants treated Plaintiffs like independent contractors to the detriment of Plaintiffs in various manners, including but not limited to, requiring Plaintiffs to use their own vehicles to make deliveries, pay for driving-related expenses, refusing to provide liability insurance for the operation of Plaintiffs' motor vehicles, refusing to provide workers' compensation insurance, and requiring Plaintiffs to pay increased tax rates mandatory for independent contractors.   Additionally, Defendants required Plaintiffs to use their own smart

11

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

phones and data from their personal cell phone service plans in order to receive and carry out work orders. Further, despite requiring that Plaintiffs use its mobile phone application to perform their job, Instacart charges Plaintiffs twenty-five cents ($0.25) per order ("batch") delivered for the use of the "proprietary 'Instacart Shopper' app."

59. Defendants voluntarily and knowingly misclassified Plaintiffs as independent contractors.

60. Defendants counseled and advised Defendant Instacart to treat Plaintiffs as independent contractors to avoid employee status for these individuals.

61. By misclassifying Plaintiffs as independent contractors, Defendants were able to avoid the significant responsibilities associated with the employer/employee relationship, including, inter alia, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

62. Instacart advertised on its website and elsewhere, including but not limited to the website Craigslist, that Instacart shoppers and delivery persons could "earn up to $25 per hour" performing services for Instacart. Instacart made these representations in order to induce potential shoppers/delivery persons to work for it but with knowledge that it was impossible to earn that hourly rate. At no time during the relevant period did Plaintiffs earn an hourly rate of $25 per hour.

63. At all relevant times, Plaintiffs were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Plaintiffs were required to collect and deliver under each individual work order.

64. Plaintiffs were required to make themselves available to perform work within a predetermined range of time each day, but were not compensated in a manner that guaranteed they were compensated at or above the applicable minimum wage during those hours. During non-productive time, or time during which Plaintiffs were required to make themselves available for work but were not given an assignment, Plaintiffs were not compensated in any manner whatsoever. On various occasions during the relevant period, Plaintiffs spent sometimes up to four hours of a designated shift sitting in their cars in a grocery store parking lot awaiting direction from Instacart. Plaintiffs were not compensated for this time in any manner.

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

65.     Additionally, Plaintiffs were required to accept (or "acknowledge") every job (also called a "batch") that Instacart sent to their smartphones within two minutes.  If Plaintiffs failed, for whatever reason, to acknowledge even a single batch offer within that two-minute window, Instacart would terminate the remainder of their shift and Plaintiffs would receive no compensation for the rest of the pre-determined shift regardless of whether they were one minute or six hours into their shift.

66.     Plaintiffs could sign up for shifts of up to ten (10) hours in duration.  If, at the end of a shift, Instacart was experiencing high volumes of orders, Plaintiffs could extend their shifts, in some cases up to fifteen (15) hours.  Plaintiffs regularly worked up to seventy (70) hours per week.  Despite these long hours, Plaintiffs were not compensated at the required overtime rates for the time worked over eight (8) hours in a given day or forty (40) hours in a given week.

67.     Plaintiffs were also forced to work when they should have been given rest periods and/or meal periods.  While the Instacart App did have a feature which allowed a shopper/driver to temporarily suspend incoming orders in order to take a break, it only provided for a single twenty (20) minute break over the course of 24 hours regardless of the length of the shift.  As explained above, Instacart would terminate the remainder of Plaintiffs' shifts if they failed to acknowledge a batch within two minutes. Thus Plaintiffs were forced to forego taking any additional breaks or else have the remainder of their shift terminated.

68.     At no time during Plaintiffs' employment did Defendants provide Plaintiffs with any written or electronic wage statement showing hours worked, gross and net wages, hourly rates, and federal and state deductions.

69.     Plaintiffs were paid on a commission basis without regard to the hours worked above eight (8) or ten (10) in a given day or forty (40) in a given week.

70.     Plaintiffs were required to bear many of the expenses of their employment, including expenses for their vehicles, gas, and other expenses.  California law requires employers to reimburse employees for such expenses, which are for the benefit of the employer and are necessary for the employees to perform their jobs.

71.     At all relevant times, Defendants required Plaintiffs to use and maintain insured and

13

licensed vehicles as a condition of their work.  Plaintiffs were required to pay all expenses related to the use and maintenance of their vehicles, including expenses related to liability insurance, fuel, routine maintenance, and the upkeep of their vehicles' appearance. Plaintiffs incurred costs related to parking, such as parking meter payments and parking tickets, which were necessitated by Defendants' directives to its drivers.  For example, Instacart directed its driver-only personnel to not park in the grocery store parking lots but instead to double park near the store's entrance while they went in to pick up their order.  Defendants also required Plaintiffs to use their own smart phones and data from their personal cell phone service plans as a condition of their work in order to receive and carry out work orders. Defendants did not reimburse Plaintiffs for these work-related expenses in any manner.

72.    At all relevant times, Defendants did not provide Plaintiffs with workers' compensation insurance.   Plaintiffs injured in the course and scope of their employment with Defendants were left to rely on either their own private medical insurance or make direct payments for medical treatment rendered as a result of industrial injuries.  Plaintiffs were additionally ineligible for workers' compensation disability benefits if they were physically unable to perform their work as a consequence of industrial injuries.

73.    At all relevant times, Defendants paid taxes in a manner consistent with Plaintiffs' misclassification as independent contractors.  As a consequence, Plaintiffs were required to pay increased state and federal taxes at the rate of independent contractors despite the fact they were employees.

74.    In misclassifying Plaintiffs as independent contractors and failing to pay Plaintiffs wages and compensation due to them, as well as by committing the numerous other violations detailed below, Defendants, by and through their officers, directors and/or managing agents, acted with malice, oppression and or conscious disregard for the statutory and/or other rights of Plaintiffs, and committed fraud by willfully and wrongly treating Plaintiffs as independent contractors and not employees.

75.    Pursuant to a contract that shoppers and delivery persons enter into with Instacart, California law applies to claims brought by shoppers and delivery persons against the company.

14

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

In no less than four places throughout this contract, Instacart designates California law as governing the substantive rights of the parties to it.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FLSA**
**(29 U.S.C. §§ 201 et seq.)**

76.     Plaintiffs hereby reallege and incorporates by reference all paragraphs above as if set forth in detail herein.

77.     At all relevant times, Defendants, and each of them, have been the employers of Plaintiffs, their employees, and have been engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA.  Defendant's annual operating revenues exceed $500,000.

78.     Plaintiffs consent to sue for violations of the FLSA pursuant to 29 U.S.C. § 216(b) and 256.  A copy of the written consent forms of the Plaintiffs are attached hereto as Exhibit 1.

79.     The FLSA, 29 U.S.C. §§ 201 *et seq*., requires employers, such as Defendants, to compensate their non-exempt employees, such as Plaintiffs, at a rate of not less than the minimum wage for all hours worked.  The FLSA further requires employers to compensate employees at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week.  In addition, the FLSA requires employers to record, report, and preserve records of hours worked by employees.

80.     Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked, and failed to compensate Plaintiffs at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week, in violation of the FLSA, including 29 U.S.C. § 207(a)(1) and § 215(a).

81.     Defendants, and each of them, have failed to record, report, or preserve records of hours worked by Plaintiffs sufficient to determine wages, hours, and other conditions and practices of employment, in violation of the FLSA, including 29 U.S.C. § 211(c) and § 215(a)

82.     The conduct described above constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

15

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

83.     Plaintiffs seek recovery of attorneys' fees and costs to be paid by Defendants, as provided under 29 U.S.C. § 216(b).

84.     Plaintiffs have incurred economic damages as a direct and proximate consequence of the acts of Defendants alleged herein.  Plaintiffs seek damages in the amount of their respective unpaid compensation, unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and other such legal and equitable relief as the Court deems just and proper.

85.     This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### UNPAID WAGES
### (Cal. Labor Code §§ 216, 1194 & 1197)

86.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

87.     Defendants, and each of them, have violated and continue to violate California Labor Code §§ 216, 1194 & 1197 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiffs.  As more fully set forth above, Plaintiffs are not compensated for non-productive hours worked.  Additionally, Plaintiffs work and have worked well in excess of 8 hours a day or 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week and/or 8 hours per day.  These unpaid hours include overtime that should have been paid.

88.     Equally, Defendants denied that any wages due for non-productive work and work in excess of 40 hours per week and/or 8 hours per day were due to be paid to Plaintiffs even though each Defendants knew that under any set of circumstances or facts, Plaintiffs were entitled to be paid for each hour that they worked.  Defendants have falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs.

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

### THIRD CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES
### (Cal. Labor Code §§ 204, 510, 1194 & 1198)

89.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

90.     Plaintiffs have been and are expected to regularly work in excess of eight (8) hours per day and/or forty (40) hours per week.  Plaintiffs have regularly worked and continue to regularly work in excess of 8 hours per day or 40 hours per week.

91.     At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated wages when due, as required by Cal. Lab. Code §§ 204, 510, 1194 & 1198.

92.     Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, civil penalties, including, but not limited to, penalties available under California Labor Code §§ 210 and 1197.1, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, including waiting time penalties, against Defendants.

### FOURTH CAUSE OF ACTION
### FAILURE TO PAY MINIMUM WAGES
### (Cal. Labor Code §§ 1194, 1197)

93.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

94.     Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked in violation of the California Labor Code, including sections 1194 and 1197.

95.     As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the California Labor Code and any other applicable law, including, but not limited to, civil penalties pursuant to California Labor Code §§ 558 and 1197.1.

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

**FIFTH CAUSE OF ACTION**
**FAILURE TO PAY WAGES FOR MEAL PERIODS AND REST PERIODS**
**(Cal. Labor Code §§ 226.7 & 512)**

96.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

97.     Defendants have required and continue to require Plaintiffs to work for periods of more than 5 hours per day with no provision of a meal period of at least 30 minutes.

98.     Defendants have required and continue to require Plaintiffs to work for periods of more than 10 hours per day with no provision of a second meal period of at least 30 minutes.

99.     Defendants have required and continue to require Plaintiffs to work for periods of more than 4 hours per day with no provision of a rest period of at least 10 minutes.

100.    Plaintiffs were not properly provided with meal or rest periods as required by California Labor Code §§ 226.7 and 512, and Industrial Welfare Commission Wage Order Nos. 4 and 7, for missed rest and/or meal periods on or after 2012.

101.    As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the California Labor Code and any other applicable law, including, but not limited to, civil penalties pursuant to California Labor Code §§ 558 and 1197.1.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PROPERLY REPORT PAY**
**(Cal. Labor Code § 226 & 1174)**

102.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

103.    At all relevant times, Defendants failed to keep accurate records of the hours worked by Plaintiffs in violation of California Labor Code §§ 226 & 1174.

104.    At all relevant times, Defendants failed to provide Plaintiffs with accurate records of pay indicating the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiffs.

105.    As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

damages permitted under the California Labor Code and any other applicable law, including, but not limited to, civil penalties pursuant to California Labor Code §1174.5.

## SEVENTH CAUSE OF ACTION
## FAILURE TO REIMBURSE EXPENSES
### (Cal. Labor Code §§ 224 & 2802)

106.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

107.    Throughout their employment, Plaintiffs incurred expenditures or losses related to their employment and in direct consequence of the discharge of their duties as Defendants' employees, or of their obedience to the directions of Defendants.

108.    Defendants failed to reimburse or indemnify Plaintiffs for these expenditures or losses. Items and services that Plaintiffs were required to purchase include, but are not limited to gas, automotive insurance, other vehicle maintenance services, parking privileges, smartphones, and smartphone data packages.

109.    By the conduct described herein, Defendants have violated the California Labor Code.

110.    As a result of Defendants' violations, Plaintiffs are entitled to reimbursement of the incurred expenses pursuant to California Labor Code §§ 224 and 2802, as well as attorneys' fees and costs and all civil penalties available as a result of such conduct.

## EIGHTH CAUSE OF ACTION
## WILLFUL MISCLASSIFICATION
### (Cal. Labor Code § 226.8)

111.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

112.    Defendants, and each of them, have violated and continue to violate California Labor Code § 226.8 by willfully misclassifying Plaintiffs as independent contractors. As more fully set forth above, Plaintiffs are not independent contractors.  Defendants knew that Plaintiffs were properly treated as employees but chose to misclassify them as independent contractors. Defendants knowingly and voluntarily engaged in and continue to engage in a pattern and practice of these violations.

113.    By misclassifying Plaintiffs as independent contractors, Defendants were able to avoid the

19

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

significant responsibilities associated with the employer/employee relationship, including, inter alia, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

114.   As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the California Labor Code and any other applicable law, including, but not limited to, civil penalties pursuant to California Labor Code § 226.8.

### NINTH CAUSE OF ACTION
### ADVICE REGARDING MISCLASSIFICATION
### (Cal. Labor Code § 2753)

115.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

116.   Defendants, and each of them, have violated and continue to violate California Labor Code § 2753 by advising Defendant Instacart to treat Plaintiffs as independent contractors to avoid employee status for these individuals.   As more fully set forth above, Plaintiffs are not independent contractors.  Defendants knew that Plaintiffs were properly treated as employees but advised Defendant Instacart to misclassify them as independent contractors.

117.   By misclassifying Plaintiffs as independent contractors, Defendants were able to avoid the significant responsibilities associated with the employer/employee relationship, including, inter alia, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

118.   As a result of Defendants' conduct, Defendants shall be jointly and severally liable for all relief demanded herein.

### TENTH CAUSE OF ACTION
### CIVIL PENALTIES
### (Cal. Labor Code § 2699)

119.   Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

120.   Plaintiffs have complied with the requirements of California Labor Code § 2699.3 and attach herewith as Exhibit **2 + is** a true and correct copy of their letter of November 13, 2014, providing the Division of Labor Standards Enforcement and Defendants with written notice via

certified mail of all violations of the Labor Code Plaintiffs allege that are enumerated in Labor Code § 2699.5.

121.   Pursuant to California Labor Code § 2699, all civil penalties otherwise recoverable for violations of the Labor Code which could be assessed and collected by the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of the Labor Code, may be recovered through a civil action by an aggrieved employee in an action brought on his or her own behalf or on behalf of others similarly situated.

122.   By the conduct described herein, Defendants have violated the California Labor Code.

123.   As a result of Defendants' violations, Plaintiffs are entitled to all civil penalties available pursuant to the California Labor Code, as well as attorneys' fees and costs as authorized by Labor Code § 2699(g).

### ELEVENTH CAUSE OF ACTION
### UNFAIR, UNLAWFUL, FRAUDULENT BUSINESS PRACTICES
#### (Cal. Bus. & Prof. Code § 17200, et seq.)

124.   Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

125.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class.

126.   Defendants have engaged in unfair, unlawful, and fraudulent business practices as set forth above.

127.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Section 17200 of the California Business and Professions Code ("UCL").   These acts and practices constitute a continuing and ongoing unfair and/or unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

128.   Defendants have unlawfully treated personal shopper and delivery service employees as independent contractors for purposes of business-related expenses and wages to avoid payment of overtime wages and other benefits in violation of, inter alia, the FLSA, the California Labor and Civil Code, and the applicable IWC Orders.   In addition, Defendants have wrongly, illegally, and

21

unfairly failed to compensate Plaintiffs for work-related expenses including but not limited to gas, vehicle maintenance services, car insurance, smartphones, and smartphone data packages.

129.    The conduct of Defendants is contrary to the public welfare since it transgresses civil statutes of the State of California designed to protect workers from exploitation.

130.    Defendants' conduct in misclassifying Plaintiffs and failing to pay wages for hours worked, including overtime, was unfair within the meaning of the UCL because it was against established public policy and has been pursued to attain an unjustified monetary advantage for Defendants by creating personal disadvantage and hardship to their employees.   As such, Defendants' business practices and acts have been immoral, unethical, oppressive and unscrupulous.

131.    The injury to Plaintiffs as a result of Defendants' conduct is far greater than any alleged countervailing benefit.

132.    By and through its unfair and/or unlawful business practices and acts described herein, Defendants have obtained valuable services from Plaintiffs and have deprived Plaintiffs of valuable rights and benefits guaranteed by law, all to their detriment.

133.    Plaintiffs seek an order of this Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, inter alia, Cal. Code of Civ. Proc. § 1021.5.

## TWELFTH CAUSE OF ACTION
## FRAUD/INTENTIONAL MISPREPRESENTATION

134.    Plaintiffs hereby reallege and incorporates by reference all paragraphs above as if set forth in detail herein.

135.    Defendants, and each of them, made the representations set forth above, including the specific representation to Plaintiffs that they are not entitled to reimbursement for business-related expenses and therefore not entitled to the benefits or rights conferred by the employment relationship between Plaintiffs and Defendants.   These representations were made on an ongoing basis from at least January 1, 2012 to the present time.

136.    The representations by Defendants as set forth above were, in fact, false.  Defendants, at

the time they made the representations set forth above, knew them to be false and intended to, and did, induce Plaintiffs' reliance upon these false representations.

137.    Plaintiffs, at the time the aforementioned representations were made, were ignorant of the falsity of the representations and believed them to be true.

138.    Plaintiffs reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Defendants according to the terms established by Defendants.  Plaintiffs' reliance was a substantial factor in causing economic harm.

139.    As a direct, proximate and foreseeable result of Defendants' misrepresentations and conduct, Plaintiffs have suffered, and will continue to suffer, economic injuries.

## ALTERNATIVE STATE-SPECIFIC CLASS ACTION ALLEGATIONS

140.    In the event Plaintiffs claims under California law are limited to those Instacart shoppers and delivery persons who have worked in California, despite uniform contracts between Instacart and its shoppers/delivery persons applying California law to their relationships and rights, per Rule 8 of the Federal Rules of Civil Procedure, the following plaintiffs make the following alternative claims:

        a.    New York: Plaintiffs Reilly and Russell alternatively assert, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in New York, claims under New York state law, specifically, the thirteenth through seventeenth alternative causes of action.

        b.    Pennsylvania: Plaintiffs Bannon and Weber alternatively assert, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Pennsylvania, claims under Pennsylvania state law, specifically the eighteenth through twenty-first causes of action.

        c.    Colorado: Plaintiff Derek Williams alternatively asserts, pursuant to Rule

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Colorado, claims under Colorado state law, specifically the twenty-second through twenty-fifth causes of action.

**ALTERNATIVE NEW YORK-SPECIFIC CLASS ACTION ALLEGATIONS**

141.    In the event Plaintiffs claims under California law are limited to those Instacart shoppers and delivery persons who have worked in California, despite uniform contracts between Instacart and its shoppers/delivery persons designating California law as governing the parties' rights, Plaintiffs John Reilly and Christopher Russell alternatively assert, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in New York, claims under New York state law, specifically, the thirteenth through seventeenth alternative causes of action.

142.    Plaintiffs Reilly and Russell and other class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

143.    The members of the class are so numerous that joinder of all members would be impracticable.

144.    There are questions of law and fact common to the members of the class that predominate over any questions affecting only individual members, including:

      a.    Whether class members have been required to follow uniform procedures and policies regarding their work for Instacart;

      b.    Whether the work performed by class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

      c.    Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of New York law;

      d.    Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the course of their employment;

      e.    Whether Defendants' conduct violates the New York Labor Law;

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

f.      Whether Defendants' conduct violates Title 12, Sections 142-2.2, 142-2.3, and 142-2.4 of the New York Compilation of Codes, Rules, and Regulations;

g.      Whether Defendants' conduct otherwise violates New York law; and

h.      Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

145.    Named Plaintiffs Reilly and Russell are class members who suffered damages as a result of Defendant's conduct and actions alleged herein.

146.    The claims of Plaintiff Reilly and Plaintiff Russell are typical of the claims of the members of the class.  Plaintiffs Reilly and Russell have no interests antagonistic to those of the class and are not subject to any unique defenses.

147.    Plaintiffs Reilly and Russell will fairly and adequately represent and protect the interests of all members of the class and have retained attorneys experienced in class action and complex litigation.

148.    The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

149.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions;

b.      The Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

150.    Plaintiffs Reilly and Russell do not anticipate any difficulty in the management of this litigation.

### THIRTEENTH CAUSE OF ACTION
### NEW YORK: FAILURE TO PAY OVERTIME WAGES
#### (N.Y. Comp. Codes R. & Regs. 12, § 142-2.2)

151.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

152.    Plaintiffs have been and are expected to regularly work in excess of forty (40) hours per week. Plaintiffs have regularly worked and continue to regularly work in excess of 40 hours per week.

153.    At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated overtime wages when due, as required by N.Y. Comp. Codes R. & Regs. 12, § 142-2.2.

154.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, civil penalties, including, but not limited to, penalties available under the New York Labor Law §§ 198 and 663, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties, including waiting time penalties, against Defendants.

155.    This claim is brought by Plaintiffs Reilly and Russell on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in New York.

### FOURTEENTH CAUSE OF ACTION
### NEW YORK: FAILURE TO PAY MINIMUM WAGES
#### (N.Y. Lab. Law § 652)

156.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

157.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked in violation of New York state law, including N.Y. Lab. Law § 652 and N.Y. Comp. Codes R. & Regs. 12, § 142-2.1.

158.    As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

not limited to, civil penalties pursuant to N.Y. Labor Law §§ 198 and 663.

159.    This claim is brought by Plaintiffs Reilly and Russell on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in New York.

**FIFTEENTH CAUSE OF ACTION**
**NEW YORK: FAILURE TO PAY SPREAD OF HOURS PAY**
**(N.Y. Comp. Codes R. & Regs. 12, § 142-2.4)**

160.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

161.    N.Y. Comp. Codes R. & Regs. 12, § 142-2.4 requires that employees receive one hour's pay at the basic minimum hourly wage rate, in addition to the statutorily required minimum wage, for any day which the spread of hours exceeds ten (10) hours.

162.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs the required additional hour of compensation at the minimum hourly wage rate for shifts that exceeded ten (10) hours, in violation of N.Y. Comp. Codes R. & Regs. 12, § 142-2.4.

163.    As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but not limited to, civil penalties pursuant to N.Y. Labor Law §§ 198 and 663.

164.    This claim is brought by Plaintiffs Reilly and Russell on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in New York.

**SIXTEENTH CAUSE OF ACTION**
**NEW YORK: FAILURE TO PAY CALL-IN PAY**
**(N.Y. Comp. Codes R. & Regs. 12, § 142-2.3)**

165.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

166.    N.Y. Comp. Codes R. & Regs. 12, § 142-2.3 requires that employees who, by request or permission of the employer, report for work on any day be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage.

167.    At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

wages when due, as required by N.Y. Comp. Codes R. & Regs. 12, § 142-2.3.

168.     Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for at least four hours per day for each day on which Plaintiffs reported for work at the request of Defendant, or the number of hours in the regularly scheduled shift where in excess of four hours, in violation of N.Y. Comp. Codes R. & Regs. 12, § 142-2.3.

169.     As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but not limited to, civil penalties pursuant to N.Y. Labor Law §§ 198 and 663.

170.     This claim is brought by Plaintiffs Reilly and Russell on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in New York.

**SEVENTEETH CAUSE OF ACTION**
**NEW YORK: FAILURE TO PROVIDE PROPER WAGE STATEMENT**
**(N.Y. Lab. Law § 195)**

171.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

172.     At all relevant times, Defendants failed to keep accurate records of pay indicating the hours worked and/or the wages paid for the hours worked by Plaintiffs in violation of N.Y. Labor Law § 195.

173.     At all relevant times, Defendants failed to provide Plaintiffs with statutorily required wage statements provided for in N.Y. Labor Law § 195.  Defendant failed to provide wage statements that indicate the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiffs.

174.     As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the New York Labor Law and any other applicable law, including, but not limited to, statutory damages in the amount of two hundred and fifty dollars ($250) for each workweek that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars ($5,000) per Plaintiff, together with costs and reasonable attorneys' fees, as

28

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

provided by the N.Y. Lab. Law § 198, and such other legal and equitable relief as the Court deems just and proper.

175.    This claim is brought by Plaintiffs Reilly and Russell on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in New York.

**ALTERNATIVE PENNSYLVANIA-SPECIFIC CLASS ACTION ALLEGATIONS**

176.    In the event Plaintiffs claims under California law are limited to those Instacart shoppers and delivery persons who have worked in California, despite uniform contracts between Instacart and its shoppers/delivery persons designating California law as governing the parties' rights, Plaintiffs Susan Bannon and Batya Weber alternatively assert, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Pennsylvania, claims under Pennsylvania state law, specifically, the eighteenth through twenty-first alternative causes of action.

177.    Plaintiffs Bannon and Weber and other class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

178.    The members of the class are so numerous that joinder of all members would be impracticable.

179.    There are questions of law and fact common to the members of the class that predominate over any questions affecting only individual members, including:

a.    Whether class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.    Whether the work performed by class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.    Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of Pennsylvania law;

d.    Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the

29

course of their employment;

e.      Whether Defendants' conduct violates the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 Pa. Cons. Stat. §§ 333.101 *et seq*.;

f.      Whether Defendants' conduct violates the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Cons. Stat. §§ 260.1 *et seq*.;

g.      Whether Defendants' conduct violates the Pennsylvania Code of administrative regulations;

h.      Whether Defendants' conduct otherwise violates Pennsylvania law; and

i.      Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

180.   Named Plaintiffs Bannon and Weber are class members who suffered damages as a result of Defendant's conduct and actions alleged herein.

181.   The claims of Plaintiffs Bannon and Weber are typical of the claims of the members of the class.  Plaintiffs Bannon and Weber have no interests antagonistic to those of the class and are not subject to any unique defenses.

182.   Plaintiffs Bannon and Weber will fairly and adequately represent and protect the interests of all members of the class and have retained attorneys experienced in class action and complex litigation.

183.   The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

184.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions;

b.      The Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation;

30

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

and

    d.    A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

185.    Plaintiffs Bannon and Weber do not anticipate any difficulty in the management of this litigation.

**EIGHTEENTH CAUSE OF ACTION**
**PENNSYLVANIA: UNPAID WAGES**
**(Penn. Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.3)**

186.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

187.    Defendants, and each of them, have violated and continue to violate the PWPCL, 43 Pa. Cons. Stat. § 260.3 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiffs.  As more fully set forth above, Plaintiffs are not compensated for non-productive hours worked.  Additionally, Plaintiffs work and have worked well in excess of 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week.  These unpaid hours include overtime that should have been paid.

188.    Equally, Defendants denied that any wages due for non-productive work and work in excess of 40 hours per week were due to be paid to Plaintiffs even though each Defendants knew that under any set of circumstances or facts, Plaintiffs were entitled to be paid for each hour that they worked.  Defendants have falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs.

189.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action pursuant to 43 Pa. Cons. Stat. § 260.9a, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, civil penalties, including, but not limited to, penalties available under 43 Pa. Cons. Stat. § 260.10, reasonable attorneys' fees and costs of suit, as well as the assessment of any other statutory penalties and liquidated damages, pursuant to 43 Pa. Cons. Stat. § 260.9a, against Defendants and

31

such other legal and equitable relief as the Court deems just and proper.

190.    This claim is brought by Plaintiffs Bannon and Weber on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

### NINETEENTH CAUSE OF ACTION
### PENNSYLVANIA: FAILURE TO PAY OVERTIME
### (Penn. Minimum Wage Act, 43 Pa. Cons. Stat. § 333.104(c); 34 Pa. Code § 231.41)

191.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

192.    Plaintiffs have been and are expected to regularly work in excess of forty (40) hours per week.  Plaintiffs have regularly worked and continue to regularly work in excess of 40 hours per week.

193.    At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated overtime wages when due, as required by the PMWA, 43 Pa. Cons. Stat. § 333.104(c), and 34 Pa. Code § 231.41.

194.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action pursuant to 43 Pa. Cons. Stat. § 333.113, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, reasonable attorneys' fees and costs of suit, as well as civil penalties against Defendants and such other legal and equitable relief as the Court deems just and proper.

195.    This claim is brought by Plaintiffs Bannon and Weber on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

### TWENTIETH CAUSE OF ACTION
### PENNSYLVANIA: FAILURE TO PAY MINIMUM WAGES
### (Penn. Minimum Wage Act, 43 Pa. Cons. Stat. § 333.104(a))

196.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

197.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked in violation of the PMWA, 43 Pa. Cons. Stat. § 333.104(a).

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

198.   As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under Pennsylvania law and any other applicable law, including, but not limited to, liquidated damages equal in amount to the unpaid compensation for the hours worked for which they did not receive compensation equal to the minimum wage, together with interest, costs and reasonable attorneys' fees, pursuant to 43 Pa. Cons. Stat. § 333.113.

199.   This claim is brought by Plaintiffs Bannon and Weber on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in Pennsylvania.

### TWENTY-FIRST CAUSE OF ACTION
### PENNSYLVANIA: FAILURE TO PROVIDE PROPER WAGE STATEMENT
### (43 Pa. Cons. Stat. § 333.108; 34 Pa. Code §§ 231.31 & 231.36)

200.   Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

201.   Pursuant to 43 Pa. Cons. Stat. § 333.108 and 34 Pa. Code § 231.31, employers are required to keep a true and accurate record of, among other items, the hours worked each day and each workweek by its employees, and how much overtime was worked.  Additionally, pursuant to 34 Pa. Code § 231.36, employers are required to furnish a statement to all employees with each payment of wages indicating the number of hours worked during the specific pay period.

202.   At all relevant times, Defendants failed to keep accurate records of pay indicating the hours worked and/or the wages paid for the hours worked by Plaintiffs in violation of 43 Pa. Cons. Stat. § 333.108 and 34 Pa. Code § 231.31.

203.   At all relevant times, Defendants did not furnish accurate statements to Plaintiffs, in violation of 34 Pa. Code § 231.36.  Defendants failed to provide wage statements that indicate the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiffs.

204.   Therefore, Plaintiffs Bannon and Weber, on behalf of themselves and a class of similarly situated individuals who have worked for Instacart in Pennsylvania, request all such relief that this Court deems appropriate pursuant to Pennsylvania law and other applicable rules and regulations.

33

**ALTERNATIVE COLORADO-SPECIFIC CLASS ACTION ALLEGATIONS**

205.    In the event Plaintiffs claims under California law are limited to those Instacart shoppers and delivery persons who have worked in California, despite uniform contracts between Instacart and its shoppers/delivery persons designating California law as governing the parties' rights, Plaintiff Derek Williams alternatively asserts, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of other similarly situated Instacart shoppers, drivers and delivery persons who have worked in Colorado, claims under Colorado state law, specifically, the twenty-second through twenty-fifth alternative causes of action.

206.    Plaintiff Williams and other class members have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

207.    The members of the class are so numerous that joinder of all members would be impracticable.

208.    There are questions of law and fact common to the members of the class that predominate over any questions affecting only individual members, including:

a.    Whether class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b.    Whether the work performed by class members—providing grocery shopping and/or delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c.    Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of Colorado law;

d.    Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the course of their employment;

e.    Whether Defendants' conduct violates the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. §§ 8-4-101 *et seq*.;

f.    Whether Defendants' conduct violates the Colorado Minimum Wage of Workers Act ("CMWA"), Colo. Rev. Stat. §§ 8-6-101 *et seq*. as implemented by the Colorado Minimum Wage Order, No. 31 ("MWO"), 7 Colo. Code Regs. § 1103-1;

34

g.      Whether Defendants' conduct otherwise violates Colorado law; and

h.      Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

209.    Named Plaintiff Williams is a class member who suffered damages as a result of Defendant's conduct and actions alleged herein.

210.    Plaintiff Williams' claims are typical of the claims of the members of the class.  Plaintiff Williams has no interests antagonistic to those of the class and is not subject to any unique defenses.

211.    Plaintiff Williams will fairly and adequately represent and protect the interests of all members of the class and has retained attorneys experienced in class action and complex litigation.

212.    The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

213.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions;

b.      The Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

214.    Plaintiff Williams does not anticipate any difficulty in the management of this litigation.

/ / /

/ / /

/ / /

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

**TWENTY-SECOND CAUSE OF ACTION**
**COLORADO: FAILURE TO PAY OVERTIME WAGES**
**(Colo. Rev. Stat. §§ 8-6-101 *et seq*.; 7 Colo. Code Regs. § 1103-1)**

215.   Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

216.   Plaintiffs have been and are expected to regularly work in excess of twelve (12) hours per day and/or forty (40) hours per week.  Plaintiffs have regularly worked and continue to regularly work in excess of twelve (12) hours per day and/or 40 hours per week.

217.   At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated overtime wages when due, as required by the CMWA, Colo. Rev. Stat. §§ 8-6-101 *et seq*., as implemented by the MWO, 7 Colo. Code Regs. § 1103-1:4.

218.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action pursuant to 7 Colo. Code Regs. § 1103-1:18, for the unpaid balance of the full amount of overtime and other compensation, including interest thereon, civil penalties, reasonable attorneys' fees and costs of suit pursuant to Colo. Rev. Stat. § 8-6-118 and such other legal and equitable relief as the Court deems just and proper.

219.   This claim is brought by Plaintiff Williams on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Colorado.

**TWENTY-THIRD CAUSE OF ACTION**
**COLORADO: FAILURE TO PAY MINIMUM WAGES**
**(Colo. Rev. Stat. §§ 8-6-101 *et seq*.; 7 Colo. Code Regs. § 1103-1)**

220.   Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

221.   Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked in violation of Colorado state law, including the CMWA, Colo. Rev. Stat. § 8-6-108.5 and the MWO, 7 Colo. Code Regs. § 1103-1:3.

222.   Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement

36

to recovery by the Plaintiffs, in a civil action pursuant to Colo. Rev. Stat. § 8-6-118 and 7 Colo. Code Regs. § 1103-1:18, to damages equal to the difference between the minimum wage and actual wages received after accounting for deduction for job-related expenses, including interest thereon, reasonable attorneys' fees and costs of suit pursuant to Colo. Rev. Stat. § 8-6-118 and such other legal and equitable relief as the Court deems just and proper.

223.     This claim is brought by Plaintiff Williams on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Colorado.

**TWENTY-FOURTH CAUSE OF ACTION**
**COLORADO: FAILURE TO PAY WAGES FOR MEAL AND REST PERIODS**
**(Colo. Rev. Stat. §§ 8-6-101 *et seq.*; 7 Colo. Code Regs. §§ 1103-1:7, 1103-1:8)**

224.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

225.     Defendants are required under Colorado law to pay Plaintiffs for their time worked, including the time they spent working during their unpaid meal periods.  7 Colo. Code Regs. §§ 1103-1:2, 1103-1:7.

226.     Defendants have required and continue to require Plaintiffs to work for periods of more than 5 hours per day with no provision of a meal period of at least 30 minutes, in violation of the MWO, 7 Colo. Code Regs. § 1103-1:7.

227.     Defendants have required and continue to require Plaintiffs to work for periods of more than 4 hours per day with no provision of a rest period of at least 10 minutes, in violation of the MWO, 7 Colo. Code Regs. § 1103-1:8.

228.     Plaintiffs were not properly provided with meal or rest periods as required by 7 Colo. Code Regs. §§ 1103-1:7 and 1103-1:8 for missed rest and/or meal periods on or after 2012.  As such, Defendants have not paid Plaintiffs for their overtime wages related to unpaid meal periods.

229.     As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under Colorado law and any other applicable law, and such other legal and equitable relief as the Court deems just and proper.

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

**TWENTY-FIFTH CAUSE OF ACTION**
**COLORADO: FAILURE TO PROVIDE PROPER WAGE STATEMENT**
**(Colo. Rev. Stat. § 8-4-103(4); 7 Colo. Code Regs. § 1103-1:12)**

230.   Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

231.   At all relevant times, Defendants failed to keep accurate records of pay indicating the hours worked and/or the wages paid for the hours worked by Plaintiffs in violation of the MWO, 7 Colo. Code Regs. § 1103-1:12.

232.   At all relevant times, Defendants failed to provide Plaintiffs with statutorily required wage statements provided for in the CWCA, Colo. Rev. Stat. § 8-4-103(4) and the MWO, 7 Colo. Code Regs. § 1103-1:12.   Defendant failed to provide wage statements that indicate the hours worked and/or the wages paid for the hours worked.   In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiffs.

233.   Therefore, Plaintiff Williams, on behalf of himself and a class of similarly situated individuals who have worked for Instacart in Colorado, request all such relief that this Court deems appropriate pursuant to Colorado law and other applicable rules and regulations, in addition to an award of reasonable attorney's fees and costs pursuant to Colo. Rev. Stat. § 8-4-110(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, pray for judgment against Defendants as follows:

A.   An order certifying this case as a class action and appointing Plaintiffs Cobarruviaz, Golden, Reilly, Russell, Bannon, Weber, and Williams and their counsel to represent the Class;

B.   For declaratory judgment that the practices complained of herein are unlawful under the FLSA;

C.   For a declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

D.   For actual and compensatory damages according to proof pursuant to the FLSA, the California Labor Code, applicable California IWC Orders, the New York Labor Law, applicable

38

Case No. C15-0697 EMC Plaintiff's First Amended Complaint

New York codes, rules, and regulations, Pennsylvania law and applicable codes, rules, orders, and regulations, Colorado law and applicable code, rules, orders, and regulations, and all other applicable laws and regulations;

E.     For restitution and disgorgement to the extent permitted by applicable law;

F.     For an order enjoining Defendants from continuing to engage in the conduct described herein;

G.     For civil and statutory penalties available under applicable law;

H.     For pre-judgment and post-judgment interest;

I.     For an award of attorneys' fees, costs and expenses as authorized by applicable law; and

J.     For punitive damages according to proof;

K.     For such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

_____
Robert S. Arns (SBN 65071)
Jonathan E. Davis (SBN 191346)
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888

Case No. C15-0697 EMC Plaintiff's First Amended Complaint