KEKER & VAN NEST LLP
RACHAEL E. MENY - #178514
rmeny@kvn.com
BENJAMIN BERKOWITZ - #244441
bberkowitz@kvn.com
RYAN K. WONG - #267189
rwong@kvn.com
REESE NGUYEN - #284581
rnguyen@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391-5400
Facsimile: 415-397-7188

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC COBARRUVIAZ, ARLIN GOLDEN, JOHN REILLY, CHRISTOPHER RUSSELL, SUSAN BANNON, BATYA WEBER, AND DEREK WILLIAMS, Individually, and On Behalf of All Other Similarly Situated Employees,<br><br>Plaintiffs,<br><br>v.<br><br>MAPLEBEAR, INC., dba INSTACART; AND DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:15-cv-00697-EMC<br><br>**DEFENDANT MAPLEBEAR, INC. DBA INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 25, 2015<br>Time: 1:30 p.m.<br>Courtroom: 5<br>Judge: Hon. Edward M. Chen |

---

INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | STATEMENT OF ISSUES TO BE DECIDED | 2 |
| III. | FACTUAL AND PROCEDURAL BACKGROUND | 3 |
|  | A. Instacart's communications and logistics platform enables same-day grocery delivery services in multiple cities across the country. | 3 |
|  | B. All Personal Shoppers in the Bay Area, New York City, Philadelphia, and Denver—including Plaintiffs— reviewed and signed Independent Contractor Agreements with Instacart as part of the application process. | 4 |
|  | C. Each Plaintiff expressly agreed to submit disputes arising out of or relating to his or her Personal Shopper services and Independent Contractor Agreement to binding, individual arbitration with Instacart. | 6 |
|  | D. Because each cause of action arises out of or relates to Personal Shopper activities, Plaintiffs violated their respective arbitration agreements with Instacart by filing this putative class and representative action. | 8 |
| IV. | ARGUMENT | 9 |
|  | A. The FAA governs the Independent Contractor Agreements based on the terms of the Agreements, and because all Personal Shoppers perform services that affect interstate commerce. | 9 |
|  | B. Plaintiffs' Independent Contractor Agreements are presumed valid and enforceable under the FAA. | 11 |
|  | C. All twenty-five causes of causes of action in the Amended Complaint fall within the scope of the Independent Contractor Agreements. | 12 |
|  | D. The Court should compel *individual* arbitration because the Independent Contractor Agreements and incorporated JAMS procedures do not provide for class-wide arbitration. | 14 |
|  | E. The Court should stay this action pending completion of arbitration and dismiss all class and representative allegations. | 16 |
| V. | CONCLUSION | 16 |

i

INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allied-Bruce Terminix Companies, Inc. v. Dobson*
    513 U.S. 265 (1995) ............................................................................................................. 10

*Anderson v. Pitney Bowes, Inc.*
    2005 WL 1048700 (N.D. Cal. 2005) ................................................................................... 16

*Appelbaum v. AutoNation Inc.*
    2014 WL 1396585 (C.D. Cal. 2014) .................................................................................... 14

*AT&T Mobility LLC v. Concepcion*
    131 S. Ct. 1740 (2011) .............................................................................................. 11, 14, 16

*AT&T Technologies, Inc. v. Communications Workers of America*
    475 U.S. 643 (1986) ............................................................................................................. 13

*Cape Flattery Ltd. v. Titan Maritime, LLC*
    647 F.3d 914 (9th Cir. 2011) ............................................................................................ 9, 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
    207 F.3d 1126 (9th Cir. 2000) ............................................................................................... 9

*Citizens Bank v. Alafabco, Inc.*
    539 U.S. 52 (2003) (per curiam) .......................................................................................... 10

*Eshagh v. Terminix Int'l Co., L.P.*
    588 F. App'x 703 (9th Cir. 2014) ........................................................................................ 16

*Gilmer v. Interstate/Johnson Lane Corp.*
    500 U.S. 20 (1991) ............................................................................................................... 11

*Grabowski v. Robinson*
    817 F. Supp. 2d 1159 (S.D. Cal. 2011) ............................................................................... 14

*Green Tree Fin. Corp.-Ala. v. Randolph*
    531 U.S. 79 (2000) ............................................................................................................... 12

*Hernandez v. DMSI Staffing, LLC*
    2015 U.S. Dist. LEXIS 12824 (February 3, 2015) (Chen, J.) ............................................. 14

*Makarowski v. AT&T Mobility, LLC*
    2009 WL 1765661 (C.D. Cal. June 18, 2009) ............................................................... 12, 13

*Miguel v. JPMorgan Chase Bank, N.A.*
    2013 WL 452418 (C.D. Cal. 2013) ...................................................................................... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ................................................................................................................. 11

ii

INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

*Nicholson v. Labor Ready, Inc.*
   No. C 97-0518 FMS, 1997 WL 294393 (N.D. Cal. May 28, 1997) ........................................ 10

*Parvataneni v. E\*Trade Fin. Corp.*
   967 F. Supp. 2d 1298 (N.D. Cal. 2013) ............................................................................. 14

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*
   218 F.3d 1085 (9th Cir. 2000) .......................................................................................... 10

*Quevedo v. Macy's, Inc.*
   798 F. Supp. 2d 1122 (C.D. Cal. 2011) ............................................................................. 14

*Rajan Nanavati v. Adecco USA, Inc.*
   Case No. 14-cv-04145-BLF, 2015 U.S. Dist. Lexis 49053 (Apr. 13, 2015) ........................... 14

*Shearson/Am. Exp., Inc. v. McMahon*
   482 U.S. 220 (1987) ........................................................................................................ 11

*Simula, Inc. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999) ............................................................................................ 13

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*
   559 U.S. 662 (2010) ............................................................................................. 2, 14, 15

*United States v. Sutcliffe*
   505 F.3d 944 (9th Cir. 2007) ............................................................................................ 10

**State Cases**

*Iskanian v. CLS Transportation Los Angeles LLC*
   59 Cal. 4th 348 (2014) ..................................................................................................... 14

*Kinecta Alternative Fin. Solutions, Inc. v. Superior Court*
   205 Cal. App. 4th 506 (2012) ........................................................................................... 15

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*
   89 Cal. App. 4th 1042 (2001) ........................................................................................... 12

**Federal Statutes**

9 U.S.C. § 2 ............................................................................................................................. 9, 11

9 U.S.C. § 3 ............................................................................................................................. 9, 16

9 U.S.C. § 4 .................................................................................................................................. 9

15 U.S.C. §§ 7001–7006 ............................................................................................................. 11

28 U.S.C. § 1332 .......................................................................................................................... 8

28 U.S.C. § 1453 .......................................................................................................................... 8

**State Statutes**

Cal. Civ. Code § 1633.7 ............................................................................................................. 11

938579

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 25, 2015, at 1:30 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Judge Edward M. Chen, located in Courtroom 5 of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Maplebear, Inc. dba Instacart ("Instacart") will and hereby does move this Court to compel individual arbitration of Plaintiffs' claims, stay Plaintiffs' individual claims pending the completion of individual (*i.e.*, bilateral) arbitration proceedings, and dismiss Plaintiffs' putative class and representative claims with prejudice.

Instacart submits this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") based on each Plaintiff's agreement to individual arbitration with Instacart when entering into Independent Contractor Agreements. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Sunil Raman, and the exhibits attached thereto, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

Dated: May 21, 2015                    KEKER & VAN NEST LLP

By:    */s/Ryan K. Wong*
        RACHAEL E. MENY
        BENJAMIN BERKOWITZ
        RYAN K. WONG
        REESE NGUYEN

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART

1
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Each of the seven plaintiffs in this lawsuit is or was an independent contractor for Instacart, a San Francisco-based technology company that enables contractors to provide same-day, on-demand grocery delivery services to customers in multiple cities across the country. Instacart provides the technical infrastructure for these services via its communications and logistics platform. This platform facilitates connections between individuals who want to order food, drinks, and other grocery items from select retail stores (called "Instacart customers"), and independent contractors seeking to fulfill those needs by retrieving and/or delivering the items to Instacart customers (called "Personal Shoppers").

When agreeing to become a Personal Shopper, each Plaintiff entered into and signed an Independent Contractor Agreement with Instacart. By executing that contract, each Plaintiff ***expressly agreed*** to submit "any controversy, dispute or claim arising out of or relating to the Services" performed as a Personal Shopper ***to binding arbitration*** with Instacart, and each Plaintiff also "***expressly waive[d] the right to a jury trial*** and ***agree[d] that the arbitrator's award shall be final and binding***." At no time did Instacart, or any Plaintiff, agree to allow claims to be arbitrated on a class-wide or collective basis. Thus, under the Independent Contractor Agreement, each of the Plaintiffs is required to arbitrate his or her claims against Instacart on an individual—not a class-wide—basis. *See Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 687 (2010) (where an arbitration agreement is silent on the availability of class arbitration, class arbitration is impermissible).

Plaintiffs ignored these mandatory arbitration provisions by not only filing this lawsuit, but purporting to do so as representatives of a putative class. Because the arbitration agreements are valid and enforceable, the Court should grant Instacart's motion and compel arbitration of Plaintiffs' claims on an individual basis, stay this action until the individual arbitrations have completed, and dismiss all class and representative claims.

## II. STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided are whether the Court should compel arbitration of Plaintiffs'

claims on an individual basis, stay this action until the individual arbitrations have completed, and dismiss all class and representative claims.

## III.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Instacart's communications and logistics platform enables same-day grocery delivery services in multiple cities across the country.

Instacart is a three-year old technology company founded and headquartered in San Francisco. Decl. of Sunil Raman in Supp. of Instacart's Mot. to Compel Arbitration ("Raman Decl.") ¶ 2. At the heart of Instacart's business model is its communications and logistics platform, which is the brains behind Instacart's website and mobile phone software application (called an "app"). *Id.* ¶¶ 3, 4. Instacart uses this proprietary platform to facilitate fast and on-demand grocery delivery services in major metropolitan areas across the country, including the San Francisco Bay Area, Denver, Philadelphia, and New York City. *Id.* ¶ 5.

Instacart customers who wish to purchase grocery-type items from stores like Safeway, PETCO, Costco, Whole Foods, and other retail stores need only create an account with Instacart via the Instacart website or app, and place an order for those items (again, using Instacart's website or app). *Id.* ¶ 6. In addition to specifying where the items should be purchased and delivered, the customer can specify how quickly he or she wants the groceries delivered. *Id.* Once a customer places an order, Instacart's proprietary communications and logistics technology connects that customer with an available Personal Shopper who is likely to complete the order within the requested timeframe. *Id.* ¶ 7. A Personal Shopper may be contracted to handle both the in-store shopping and delivery aspects of a customer's grocery order, or may handle just one of those tasks (while someone else takes care of the rest). *Id*. The services a Personal Shopper may be contracted to perform can differ city by city, store by store, and contractor to contractor, and continues to evolve as Instacart improves its business model. *Id.* ¶ 8. In addition, the stores from which a customer may order items may differ in each city (for example, San Francisco customers may purchase from Bi-Rite, a grocery store with only two locations in San Francisco, but customers can also purchase items from national chains like Safeway, PETCO, Whole Foods, and Costco in various cities across the United States). *Id.* ¶ 9.

3
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

**B. All Personal Shoppers in the Bay Area, New York City, Philadelphia, and Denver—including Plaintiffs— reviewed and signed Independent Contractor Agreements with Instacart as part of the application process.**

All Personal Shoppers in the San Francisco Bay Area, New York City, Philadelphia, and Denver are independent contractors. *Id.* ¶ 10. This has been the case since Instacart launched in each of those regions, starting in September 2012 in San Francisco. *Id.* ¶¶ 10, 11. Instacart then expanded to Philadelphia in February 2014, followed by New York City in March 2014, and Denver in June 2014. *Id.* ¶ 11.[1] The following application process applies to all individuals—including the named Plaintiffs—who applied to become a Personal Shopper in each of the foregoing cities. *Id.* ¶¶ 12, 13. It does not necessarily apply to other cities in which Instacart's platform is active.

To become a Personal Shopper, an individual applies via the Instacart website. *Id.* ¶ 13. During all relevant time periods, the Instacart website included a link on its front page that said "Become a Shopper." *Id.* Clicking on that link took the person to a dedicated Personal Shopper application portion of the website, which describes the tasks that a Personal Shopper may be contracted to perform (*e.g.*, shop for groceries, deliver groceries, or both[2]), the qualifications to enter into a contract as a Personal Shopper, an overview of the application process, and an "Apply Now!" link to start the application process. *Id.* As part of the application process, a Personal Shopper applicant seeking contract work in the San Francisco Bay Area, New York City, Philadelphia, or Denver region is required to review and sign an Independent Contractor Agreement with Instacart. *Id.* ¶¶ 10, 12–14, 17–23, Exs. A–G.

To manage its Independent Contractor Agreements with Personal Shoppers, Instacart uses (and has used since its inception) an electronic signature service called HelloSign. *Id.* ¶ 15. HelloSign maintains a time-stamped audit trail that tracks (using IP addresses and other

---

[1] Instacart also launched in Chicago in September 2013; Boston in December 2013; Washington D.C. in February 2014; Los Angeles in April 2014; Austin, Seattle, and Stamford in May 2014; Atlanta in June 2014; Houston and Portland in August 2014; and Boulder in September 2014. Raman Decl. ¶ 11. None of the Plaintiffs served as a Personal Shopper in these cities.

[2] The contracted tasks for Personal Shoppers have changed since Instacart launched in 2012. Raman Decl. ¶ 8. While these changes may be relevant to the merits of Plaintiffs' claims, they are not germane to Instacart's motion to compel arbitration.

4
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

identifying data) when each Personal Shopper applicant receives, views, and executes each Independent Contractor Agreement. *Id.* It also enables an applicant, after being properly authenticated through various security measures, to electronically sign and affix his or her signature to the Agreement without printing it out. *Id.* HelloSign's Legality Statement represents that it complies with the U.S. Electronic Signature in Global and National Commerce Act of 2000 (E-SIGN) regarding electronic signatures and transmissions, thereby making the signatures valid and legally binding. *Id.* ¶ 16.

Every named Plaintiff in this lawsuit reviewed and signed (via HelloSign) an Independent Contractor Agreement with Instacart when applying to become a Personal Shopper. *Id.* ¶¶ 17–23, Exs. A–G. That Agreement is and was intended to be valid and legally binding between the two contracting parties—namely, "between Maplebear, Inc., doing business as Instacart ('Company'), and [the applicant], an individual ('Contractor') (collectively referred to as the 'Parties')." *See, e.g.*, *id.* Ex. A at Page 2. The Bay Area-based Plaintiffs, Dominic Cobarruviaz and Arlin Golden (*see* Am. Compl. ¶¶ 12, 13), signed their Independent Contractor Agreements with Instacart on January 29, 2014, and October 11, 2013, respectively. Raman Decl. ¶¶ 17, 18, Exs. A, B. According to HelloSign's audit data, Mr. Cobarruviaz reviewed his Agreement for seventeen minutes before signing it, and Mr. Golden reviewed his Agreement twice before signing it—once on October 8, 2013, and then again on October 11, 2013. *See id.*[3] The two Brooklyn-based Plaintiffs, John Reilly and Christopher Russell (*see* Am. Compl. ¶¶ 14, 15), signed their Independent Contractor Agreements with Instacart on October 14 and December 30, 2014, respectively. Raman Decl. ¶¶ 19, 20, Exs. C, D. Mr. Reilly and Mr. Russell reviewed their Agreements for approximately three to four minutes before signing them. *See id.* Plaintiffs Susan Bannon and Batya Weber, based in Philadelphia (*see* Am. Compl. ¶¶ 16, 17), signed their Agreements with Instacart on April 2 and April 24, 2014, respectively. Raman Decl. ¶¶ 21, 22, Exs. E, F. Ms. Bannon reviewed her Agreement for around six minutes before executing it, while

---

[3] The HelloSign program does not set a time limit for a Personal Shopper to review and sign the Independent Contractor Agreement. *See, e.g.*, Raman Decl. ¶¶ 17–23, Exs. A–G (showing, in the audit trail, that each Plaintiff spent a different period of time reviewing the Agreements before signing them).

5
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

Ms. Weber reviewed her Agreement twice before signing it. *See id.* Finally, Plaintiff Derek Williams, based in Denver (*see* Am. Compl. ¶ 18), reviewed and signed his Independent Contractor Agreement with Instacart on June 18, 2014. Raman Decl. ¶ 23, Ex. G. Mr. Williams reviewed his Agreement for approximately three minutes before signing it. *Id.* Each named Plaintiff received a copy of his or her application materials, including the signed Agreement, at the completion of the application process. *Id.* ¶ 24. Instacart has attached copies of each Plaintiff's Independent Contractor Agreement, as well as the corresponding HelloSign audit information for each Agreement, as part of this Motion. *Id.* ¶¶ 17–23, Exs. A–G (attaching Plaintiffs' Independent Contractor Agreements).

After Plaintiffs accepted the terms of their respective Agreements (and completed other paperwork and training as part of the application process), Plaintiffs and Instacart performed under their Agreements. Plaintiff Cobarruviaz started using the Instacart Platform as a Personal Shopper around January 29, 2014. *Id.* ¶ 25. For its part, Instacart granted Mr. Cobarruviaz access to its communications platform and paid out funds to him per the terms in his Agreement. *Id.* Plaintiffs Golden, Reilly, Russell, Bannon, Weber, and Williams similarly performed contracted work under their respective Agreements after reviewing and signing them. *Id.* ¶¶ 26–31. And Instacart allowed each of them access to its platform and paid them per the terms in their Agreements. *Id.* Thus, after Plaintiffs reviewed and signed their Independent Contractor Agreements, each of them and Instacart indicated their mutual assent to the Agreement by performing under its terms.

  **C. Each Plaintiff expressly agreed to submit disputes arising out of or relating to his or her Personal Shopper services and Independent Contractor Agreement to binding, individual arbitration with Instacart.**

The Independent Contractor Agreements signed by the named Plaintiffs each contain a section entitled "DISPUTE RESOLUTION" in bold and capitalized letters. *Id.* ¶¶ 17–23, Exs. A–G at § 7. The terms of this section are identical for all seven Plaintiffs. *See id.* Section 7.1 of their Independent Contractor Agreements states:

> 7.1 Following the full opportunity to discuss and negotiate over this dispute resolution procedure, ***the Parties agree that*** to the fullest extent permitted by law, ***any controversy, dispute or claim arising out of or relating to the Services***

938579

> *performed by the Contractor*, *this Agreement, the breach, termination, interpretation, enforcement, validity, scope and applicability of any such agreement*, or any allegations of discrimination or harassment on any basis under federal, state, or local law, which could otherwise be heard before any court of competent jurisdiction (a "Dispute"), ***shall be submitted to and determined exclusively by binding arbitration.*** The Parties agree that a Dispute arising under any law that requires resort to an administrative agency may be brought before such agency as permitted by law, and that after exhaustion of administrative remedies, the Parties must pursue such Dispute through this binding arbitration procedure to the fullest extent permitted by law.

*Id.* Exs. A–G at § 7.1 (emphasis added). This agreement to arbitrate is only between the two "Parties" to the contract: the Personal Shopper and Instacart. *Id.* Exs. A–G at Page 2. Nowhere in any Agreement does Instacart or the Personal Shopper consent to or even contemplate class arbitration.

Section 7.2 of the Independent Contract Agreement further states that the arbitration "shall be administered by JAMS at its office [in San Francisco] pursuant to its Employment Arbitration Rules and Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness (collectively, 'Rules') that are in effect when arbitration is demanded." *Id.* Exs. A–G at § 7.2. The JAMS Rules are attached as Exhibit B to each Agreement, and the website address to JAMS is also provided. *Id.* (Ex. B to the Agreements). The JAMS Rules provide additional protections to ensure fairness for both contracting parties. Each Independent Contractor Agreement further provides for reasonable and sufficient discovery procedures and a full presentation of evidence, and each Agreement requires "the arbitrator [to] submit a decision in writing, specifying the findings of fact and the conclusions of law on which the decision is based." *Id.* Exs. A–G at § 7.3.

Finally, Section 7.4 of each Plaintiff's Agreement with Instacart states (with the bolded text in the original):

> 7.4 The Parties agree that the enforceability of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 2), and acknowledge that Company's business and the nature of Contractor's services involve interstate commerce. The arbitrator shall apply California substantive law to the proceeding, except for any claim to which Federal substantive law would apply. **The Parties each expressly waive the right to a jury trial and agree that the arbitrator's award shall be final and binding on the Parties.** Any action to review the arbitration award for legal error or to have it confirmed, corrected or vacated shall

7
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

be decided pursuant to California law and shall be filed and maintained in a
California state court of competent jurisdiction.

*Id.* Exs. A–G at § 7.4 (emphasis in original). Each Plaintiff—as well as Instacart—agreed to be bound to these arbitration terms when entering into the Independent Contractor Agreement.

### D. Because each cause of action arises out of or relates to Personal Shopper activities, Plaintiffs violated their respective arbitration agreements with Instacart by filing this putative class and representative action.

Plaintiff Cobarruviaz filed suit in San Francisco Superior Court on January 9, 2015, alleging violations of the California Labor Code, the California Business and Professions Code, and fraud against Instacart. *See* D.I. 1 (Notice of Removal) at 1. Instacart removed the action on February 13, 2015 under the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d)(2), and 1453(b). *Id.* After the case was reassigned to this Court, Plaintiffs sought leave to file an Amended Complaint, which the Court allowed on April 6, 2015. *See* D.I. 12, 16, 17. The Amended Complaint ("Am. Compl.") added new claims under federal and non-California law, and six additional Plaintiffs—five of which allegedly reside outside of California.

All Plaintiffs allege that they "are shoppers, drivers and delivery persons who were improperly misclassified as independent contractors and required to pay business-related expenses while in the employ of [Instacart]." Am. Compl. ¶ 3. They further allege that Instacart "intentionally misrepresented … that they were not entitled to wages for non-productive time, reimbursements for expenses incurred in relation to their employment, workers' compensation insurance benefits, and tax benefits enjoyed by employees." *Id.* These core allegations (which Instacart disputes) are repeated throughout the Amended Complaint. *See, e.g.*, *id.* ¶¶ 37, 39.

Plaintiffs' misclassification assertions form the basis of every cause of action in this dispute. The Amended Complaint expressly alleges: "***By misclassifying Plaintiffs as independent contractors***, Defendants were able to avoid the significant responsibilities associated with the employer/employee relationship, including, inter alia, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits." *Id.* ¶ 61 (emphasis added); *see also* ¶ 4 (alleging misclassification as the basis for claims under the federal Fair Labor Standards Act

8

INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

(FLSA), ¶¶ 64–74 (alleging misclassification for Plaintiffs' minimum wage, non-productive time, overtime pay, rest and meal period, wage statement, reimbursement, workers' compensation, tax treatment, and fraudulent and willful misclassification allegations).

Because all twenty-five causes of action arise out of and/or relate to Plaintiffs' Personal Shopper services, Plaintiffs breached their Independent Contractor Agreements with Instacart by filing this lawsuit and failing to honor their arbitration agreements.

## IV.   ARGUMENT

This Court's role in deciding Instacart's motion to compel arbitration is a narrow one. "[T]he [Federal Arbitration] Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then ***the Act requires the court to enforce the arbitration agreement*** in accordance with its terms." *Id.* (citations omitted) (emphasis added).

Because a valid arbitration agreement exists between each named Plaintiff and Instacart, and since each agreement encompasses the disputes set forth in the Amended Complaint, the Court should order Plaintiffs to submit their disputes with Instacart to individual arbitration as required under the Independent Contractor Agreements. *See* 9 U.S.C. § 4. The Court should also stay this action pending the completion of arbitration under Section 3 of the FAA, and dismiss all putative class and representative claims against Instacart.

### A.   The FAA governs the Independent Contractor Agreements based on the terms of the Agreements, and because all Personal Shoppers perform services that affect interstate commerce.

The parties clearly and unmistakably "agree[d] that the enforceability of th[e] Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 2), and acknowledge[d] that Company's business and the nature of Contractor's services involve interstate commerce."

9

INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

Raman Decl. ¶¶ 17–23, Exhs. A–G at § 7.4. That choice of law is binding. *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 (9th Cir. 2011).

Regardless, the "FAA governs any written provision in a 'contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract.'" *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000) (quoting Section 2 of the FAA). The term "involving commerce" in the FAA is the "functional equivalent of the more familiar term 'affecting commerce'[,]" which represents the "broadest permissible exercise of Congress' Commerce Clause Power." *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam). An activity need not be "within the flow of interstate commerce" or even have "a substantial effect on interstate commerce" to fall within the FAA. *See id.* Rather, the contracted activity need only ***affect*** interstate commerce for the FAA to govern. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–274 (1995).

Plaintiffs' services as Personal Shoppers, performed under their Independent Contractor Agreements with Instacart, are activities "affecting" interstate commerce under the FAA. *First*, Instacart's communications and logistics platform extends nationwide into California, Oregon, Washington, Colorado, Illinois, Texas, Pennsylvania, Washington D.C., New York, Connecticut, and Massachusetts. Raman Decl. ¶¶ 5, 11. And Personal Shoppers—including the named Plaintiffs—use the Instacart platform in different states to connect with shoppers who seek grocery delivery services. *Id.* ¶¶ 5, 11, 12; *Nicholson v. Labor Ready, Inc.*, No. C 97-0518 FMS, 1997 WL 294393, at *3 (N.D. Cal. May 28, 1997) (defendant's business presence and activity across multiple states supports FAA application). *Second*, Instacart's platform facilitates connections between Personal Shoppers and customers via the Internet; customers place and pay for grocery orders using the Instacart website or mobile phone apps, and Personal Shoppers accept contract work using their mobile phone apps. Raman Decl. ¶¶ 3–7; *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the Internet is an instrumentality and channel of interstate commerce") (internal quotation marks omitted). Finally, Personal Shoppers purchase grocery items on behalf of customers at several national retail stores including Safeway, PETCO, Whole Foods, and Costco, generating revenue for those stores across multiple states. Raman

938579

Decl. ¶¶ 6, 9. All of these Personal Shopper activities performed by Plaintiffs clearly "affect" interstate commerce under the FAA.

### B. Plaintiffs' Independent Contractor Agreements are presumed valid and enforceable under the FAA.

Arbitration agreements governed by the FAA are ***presumed valid and enforceable***. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226–227 (1987). This reflects Congress' intent behind the FAA: to reverse longstanding judicial hostility toward arbitration, and evince a "liberal federal policy favoring arbitration agreements." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The presumption of validity also reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations omitted). The FAA therefore mandates enforcement of an arbitration clause unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Here, all seven Plaintiffs reviewed and signed Independent Contractor Agreements with Instacart containing clearly disclosed arbitration provisions binding Plaintiffs and Instacart. *See* Raman Decl. ¶¶ 17–23, Exs. A–G at § 7. Plaintiffs electronically signed those Agreements using HelloSign, and copies of those Agreements have been submitted with Instacart's motion. *Id.* ¶¶ 15, 17–23, Exs. A–G. HelloSign is compliant with the E-Sign Act, *see id.* ¶ 16., and Plaintiffs' electronic signatures are binding and enforceable under California and Federal Law. *See* Cal. Civ. Code § 1633.7 (upholding the validity of electronic signatures); *see also* 15 U.S.C. §§ 7001–7006 (Electronic Signature in Global and National Commerce Act ("E-Sign Act")).

In addition, Instacart has provided an audit trail showing when it offered the terms of each Independent Contractor Agreement to all seven Plaintiffs, the exact times that Plaintiffs viewed the Agreements, and when Plaintiffs accepted the terms of the Agreements by signing them. Raman Decl. ¶¶ 15–23, Exs. A–G. All seven Plaintiffs had ample time to review the Agreement terms (including the arbitration terms) before affixing their signatures. *See id*. (HelloSign audit trail information). In fact, some Plaintiffs viewed the Agreement multiple times over several days before agreeing to be bound to its terms. *Id.* Ultimately, all Plaintiffs accepted and agreed to be

11
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

bound to those terms by signing their respective Agreements, and Plaintiffs and Instacart each demonstrated their mutual assent by performing under the Agreements. *Id.* ¶¶ 25–31; *see also Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,* 89 Cal. App. 4th 1042, 1049 (2001) (a party "who signs an instrument which on its face is a contract is deemed to assent to all its terms").

In any event, if any Plaintiff contends that his or her Independent Contractor Agreement and the arbitration terms therein are invalid and unenforceable, ***it is Plaintiffs' burden—not Instacart's—to prove that the causes of action in this dispute are unsuitable for arbitration***. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). Since it is not Instacart's burden to prove validity and enforceability of the Agreements, Instacart reserves all rights address such arguments as may be made by Plaintiffs, if necessary, on reply.

### C. All twenty-five causes of causes of action in the Amended Complaint fall within the scope of the Independent Contractor Agreements.

The Court should compel individual arbitration for all of Plaintiffs' twenty-five causes of action. Each Plaintiff and Instacart agreed that "any controversy, dispute or claim ***arising out of or relating to the Services performed by the Contractor [or] this Agreement*** … shall be submitted to and determined exclusively by binding arbitration." Raman Decl., Exs. A–G at § 7.1 (emphasis added). The Independent Contractor Agreements define "Services" as "Shopping and delivery services for customers of Company [*i.e.*, Instacart]." *Id.* (Ex. A to each Agreement). The phrase "arising out of or relating to" in the arbitration clause is both "broad" and "all-encompassing." *See Cape Flattery*, 647 F.3d at 922 ("[W]hen parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement."); *see also Makarowski v. A T& T Mobility, LLC*, 2009 WL 1765661 at *3 (C.D. Cal. June 18, 2009).

Every cause of action in the Amended Complaint arises out of or relates to those shopping and delivery services performed by each Plaintiff. For example, Plaintiff Cobarruviaz alleges that he "incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed." Am. Compl. ¶ 12. Plaintiffs

12

INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

Golden, Reilly, Russell, Bannon, Weber, and Williams make the same allegations, and further allege that they "regularly worked in excess of eight (8) hours per day and forty (40) hours per week but w[ere] not compensated at the required overtime wage rates" and "regularly w[ere] not paid minimum wage[.]" *Id.* ¶¶ 13–18. Plaintiffs also allege that they "were in fact employees" of Instacart based on how they were treated under the Independent Contractor Agreements. *Id.* ¶ 39. They allege that Instacart "exerted control over [them] in a manner consistent with an employer-employee relationship, including but not limited to, generating the work orders for Plaintiffs; controlling their wages; enforcing behavioral codes of conduct; controlling the means, manner, and method by which they perform their work; and controlling the conditions of employment. *Id.* ¶ 41; *see also* ¶¶ 39–57 (further describing these allegations). Plaintiffs then allege how they were treated as independent contractors (rather than employees) under their Independent Contractor Agreements. *See id.* ¶¶ 58–73.

These factual allegations clearly arise from and relate to services performed by Plaintiffs as Personal Shoppers, and underlie every cause of action in the Complaint. *See supra* at Section II.D (detailing the factual premise for all twenty-five causes of action). All are therefore subject to binding arbitration under each Plaintiff's Independent Contractor Agreement. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, [each Plaintiff]'s ***factual allegations need only touch matters covered by the contract*** containing the arbitration clause and ***all doubts are to be resolved in favor of arbitrability***.") (emphasis added); *see also AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (no court may deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). The Court should

13
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

therefore compel arbitration of all twenty-five causes of action in the Amended Complaint.[4]

### D. The Court should compel *individual* arbitration because the Independent Contractor Agreements and incorporated JAMS procedures do not provide for class-wide arbitration.

The Independent Contractor Agreements do not contain any provisions permitting class-wide arbitration, and their lack of affirmative consent to class-wide arbitration requires Plaintiffs to proceed with individual (non-class) arbitration. As the Supreme Court has reiterated on multiple occasions, an arbitration agreement that is "silent on the question of class procedures" cannot be interpreted to allow class arbitration because "'the changes brought about by the shift from bilateral [*i.e.* individual] arbitration to class-action arbitration' are 'fundamental.'" *Concepcion*, 131 S.Ct. at 1750 (quoting *Stolt-Nielsen*, 559 U.S. at 686).

It is a "basic precept" of "fundamental importance" that "arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen*, 559 U.S. at 681 (citation omitted). "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Id.* at 682 (citation omitted). "[P]arties may specify *with whom* they choose to arbitrate their disputes." *Id.* at 683 (emphasis in original). Thus, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684 (emphasis in original). In *Stolt-Nielsen*, the Supreme Court held that an agreement to arbitrate is not an "implicit agreement to authorize

---

[4] Plaintiffs' cause of action under California's Private Attorney General Act ("PAGA") is entirely premised on their myriad allegations of Labor Code violations, all of which arise out of or relate to Plaintiffs' Personal Shopper services under the Independent Contractor Agreements. It too must be arbitrated under the FAA. *See Concepcion*, 131 S.Ct. at 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA[.]"); *see also Rajan Nanavati v. Adecco USA, Inc.,* Case No. 14-cv-04145-BLF, 2015 U.S. Dist. Lexis 49053 (Apr. 13, 2015) (finding that a PAGA action "is much more akin to a private action between private parties in which the State has a beneficial interest" and "[a]s a dispute that is, at its core, between private parties, the terms of their arbitration agreement control"); *Appelbaum v. AutoNation Inc.*, 2014 WL 1396585 * 11 (C.D. Cal. 2014) (citing *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 845–46 (N.D. Cal. 2012); *see also Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1142 (C.D. Cal. 2011); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1180 (S.D. Ca1. 2011); *Parvataneni v. E*Trade Fin. Corp.*, 967 F. Supp. 2d 1298, 1304–05 (N.D. Ca1. 2013); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418 at * 9–10 (C.D. Cal. 2013); *but see Hernandez v. DMSI Staffing, LLC*, 2015 U.S. Dist. LEXIS 12824 (February 3, 2015) (Chen, J.); *Iskanian v. CLS Transportation Los Angeles LLC*, 59 Cal. 4th 348 (2014).

14
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579

class-action arbitration," and therefore where an agreement is silent on class arbitration, class arbitration is impermissible. *Id.* at 685.[5]

Here, nothing in the agreement indicates Instacart or the Plaintiffs agreed to class arbitration. The term "class" appears nowhere in the Independent Contractor Agreement (or the exhibits thereto), and the JAMS Employment Arbitration Rules and Procedures do not provide procedures for—or even mention the possibility of—class-wide arbitration. Raman Decl. ¶¶ 17–23, Exs. A–G.[6]

Moreover, each Independent Contractor Agreement is between Instacart and "***an individual*** ('Contractor')," and the arbitration clause in each Agreement solely contemplates the arbitration of disputes between those two parties (the Contractor and Instacart). *Id.* Exs. A–G at Page 2 (emphasis added) and § 7.1. In fact, Section 7.1 in each Agreement states that "the Parties" (defined in the Agreement as Instacart and the individual Contractor) "agree that … any controversy, dispute or claim arising out of or relating to the Services performed by ***the Contractor*** … shall be submitted to and determined exclusively by binding arbitration." (emphasis added). This language, which refers only to disputes between a ***single Personal Shopper*** and Instacart, evidences individual—not class-wide—arbitration. *See Kinecta Alternative Fin. Solutions, Inc. v. Superior Court*, 205 Cal. App. 4th 506, 517–519 (2012) (finding that the "the parties did not agree to authorize class arbitration in their arbitration agreement" under similar language).

Thus, under the Independent Contractor Agreement, the Court should compel Plaintiffs to

---

[5] In reaching this conclusion, the Supreme Court reasoned that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen*, 559 U.S. at 684—87 (further noting that "the relative benefits of class-action arbitration" such as lower costs, greater efficiency and speed "are much less assured," the arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties," and the "award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well").

[6] Tellingly, other JAMS rules provide for class-wide arbitration, but those rules were not made part of the arbitration clause in the Independent Contractor Agreements. *See, e.g.*, *JAMS Class Action Procedures, Effective May 1, 2009*, JAMS Website, http://www.jamsadr.com/rules-class-action-procedures (last visited May 21, 2015); Raman Decl. Exs. A–G at § 7.2 (referring only to JAMS Employment Arbitration Rules and Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness).

938579

arbitrate their claims on an individual, not class-action, basis. *Stolt-Nielsen*, 130 S. Ct. at 1775.

### E. The Court should stay this action pending completion of arbitration and dismiss all class and representative allegations.

When a dispute covered under an arbitration clause is brought in a suit in federal court, the court must stay the action upon application of any of the parties. 9 U.S.C. § 3. Where, as here, the issues in the case are within the reach of the arbitration agreement, the district court has no discretion to deny a stay. *See Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700 at *2 (N.D. Cal. 2005) ("'If the issues in a case are within the reach of the Agreement,' the court must, upon request by either party, grant a stay of the action pending arbitration") (citing *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)). Instacart respectfully requests that the Court stay this action immediately under Section 3 of the FAA. Furthermore, since the named Plaintiffs must submit all their disputes with Instacart to individual arbitration, the Court should dismiss all putative class and representative claims. *See Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703, 704 (9th Cir. 2014).

## V. CONCLUSION

The "principal purpose" of the FAA is to ensure that private arbitration agreements are enforced according to their terms. *Concepcion*, 131 S. Ct. at 1748. Plaintiffs each agreed to submit any dispute arising out of or relating to their services as Personal Shoppers to binding, individual arbitration. The Court should compel each named Plaintiff to honor those arbitration terms, dismiss all class and representative claims against Instacart, and stay this action under Sections 3 and 4 of the FAA.

Dated: May 21, 2015                                                KEKER & VAN NEST LLP

By: */s/Ryan K. Wong*
RACHAEL E. MENY
BENJAMIN BERKOWITZ
RYAN K. WONG
REESE NGUYEN

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART

16
INSTACART'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS,
AND DISMISS CLASS/REPRESENTATIVE CLAIMS
Case No. 3:15-cv-00697-EMC

938579