Robert S. Arns (# 65071)
rsa@arnslaw.com
Jonathan E. Davis (# 191346)
jed@arnslaw.com
Kevin M. Osborne (# 261367)_
kmo@arnslaw.com
Julie C. Erickson (# 293111)
jce@arnslaw.com
**THE ARNS LAW FIRM**
A Professional Corporation
515 Folsom Street, 3rd Floor
San Francisco, California 94105
Tel: (415) 495-7800 / Fax: (415) 495-7888

Jahan C. Sagafi, State Bar No. 224887
jsagafi@outtengolden.com
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Tel:  (415) 638-8800 / Fax:  (415) 638-8810

Michael J. Scimone (*pro hac vice*)
mscimone@outtengolden.com
3 Park Avenue, 29th Floor
New York, New York 10016
Tel:  (212) 245-1000 - Fax:  (646) 509-2060

Attorneys for Plaintiffs

KEKER & VAN NEST LLP
RACHAEL E. MENY - #178514
rmeny@kvn.com
BENJAMIN BERKOWITZ - #244441
bberkowitz@kvn.com
RYAN K. WONG - #267189
rwong@kvn.com
REESE NGUYEN - # 284581
rnguyen@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415-391-5400
Facsimile:    415-397-7188

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DOMINIC COBARRUVIAZ, ARLIN GOLDEN, JOHN REILLY, CHRISTOPHER RUSSELL, SUSAN BANNON, BATYA WEBER, AND DEREK WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED EMPLOYEES;

        Plaintiffs,

vs.

MAPLEBEAR, INC. dba INSTACART; AND DOES 1 through 100, inclusive

        Defendants.

No. C 15-cv-00697 EMC

**[PROPOSED] STIPULATED ORDER REGARDING PROTOCOL FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

**Judge**: **Hon. Edward M. Chen**

Having met and conferred on issues concerning the format of and conditions under which documents and electronically stored information ("ESI") are to be produced in this case, the parties, through their respective counsel, hereby enter into the following Stipulation:

**GENERAL PROVISIONS**

1.      The provisions set forth herein apply to the production of all documents, regardless of which party is seeking or producing the documents.

2.      Nothing in this Stipulation shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents.  All productions will be subject to any protective order that will be entered by the Court in this Action.

3.      Notwithstanding this Stipulation, the parties may separately agree to deviate from the protocols set forth herein as to specific documents or categories of documents provided that such agreement is memorialized in writing.

4.      The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation.  If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Stipulation or if compliance with such material aspect would be unreasonable, then within a reasonable time before the date of production, such producing party shall inform the requesting party in writing as to why compliance with the Stipulation is impossible or unreasonable.  No party may seek relief from the Court concerning compliance with this Stipulation unless it has conferred with other affected parties.

5.     Nothing in the ESI Protocol shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents.

**DEFINITIONS**

For the purpose of this Stipulation, the following definitions apply, unless a contrary use or limitation on a defined term is specified:

6.     "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by the user of such system.  "Metadata" is a subset of ESI.

7.     "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.  "Native Files" are a subset of ESI.

8.     "Image File(s)" mean a representation of ESI produced by (i) converting a Native File into a standard image format capable of being viewed and printed on standard computer systems; or (ii) scanning a hard copy file into a standard image file capable of being viewed and printed on standard computer systems.

9.     "PDF" refers to Portable Document Formal file type.

10.     "TIFF" refers to Tagged Image File Format file type.

11.     "Group IV TIFF" refers to a TIFF file type using Group IV compression format.

12.     "OCR" means Optical Character Recognition, and is the machine recognition of printed characters from Image Files or other non-searchable text contained in a document into

machine-encoded text so that the text can be indexed and searched for specific characters, words or phrases.

13.     "Relativity" means Relativity document management software produced by kCura.

14.     "Concordance" means Concordance document management software, version 8 or higher, tailored to legal applications and distributed by LexisNexis.

15.     "Extracted Text" means the electronic extraction of a Native File's content that can be indexed and searched without OCR.

16.     A "load file" is a file containing commands or information necessary to import coded, captured or Extracted data from ESI processing into a document management database, such as Relativity, and that defines the links between multiple records or document images.

**PRODUCTION OF HARD-COPY DOCUMENTS IN ELECTRONIC FORMAT**

17.     **Production Format.**  If a document exists only in paper form, then a party may produce that document in either paper or electronic form.  If elected to be produced in electronic form, the Production of hard copy documents shall comply with the following requirements, with the exception that a party need not generate or provide OCR text for paper documents elected to be produced in electronic form.

a.      **IMAGE FORMAT.**  Documents that exist in hard copy format shall be scanned and produced as single-page black and white Group IV TIFFs, with a resolution of at least 300 dots per inch (dpi).  Each TIFF should be named as the corresponding Bates number associated with that page.  Original document orientation should be maintained (*i.e.,* portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations, and redactions should be branded onto the TIFF images so that they appear when the document is

printed without obscuring any original content on the document.  TIFF images should be

provided in a self-identified "Images" folder.

b.     **Database Load Files.** Documents should be provided with

Relativity/Concordance-compatible image and data load files (*i.e.* .OPT and .DAT files) using

the standard delimiters.  Relativity/Concordance-compatible image and data load files should

be provided in a self-identified "Data" folder. Each .DAT file should include links to ("text

path") multi-page (document level) text files in the .DAT file.  The total number of documents

referenced in a production's data load file (.DAT) should match the total number of designated

document breaks in the Image Load File(s) (.OPT) in the production.  Additionally, the .OPT

file should provide the beginning and ending Bates number of each document and the number

of pages the document comprises. The .OPT file should include links (relative paths) to each

image file within the .OPT file (document production).  Attached as Exhibit A is a document

containing additional information regarding the production specifications.

c.     **Metadata and Coding Fields.** Absent special circumstances, hard copy

documents should be produced with *at least* the following searchable information in

accompanying delimited data files:  (1) BEGDOC; (2) ENDDOC; (3) BEGATTACH

(4) ENDATTACH (5) CUSTODIAN NAME.  Custodians should be identified using the

convention "last name, first name." The Custodian NAME should remain the same for each

unique custodian across each production.  A full list of relevant fields is included in Exhibit A.

d.     **Bates Numbering.** Each TIFF image should be assigned a Bates number

that: (1) is unique across the entire document production; (2) maintains a constant length across

the entire production (*i.e.,* "padded" with leading zeroes to the same number of characters); (3)

contains no special characters or embedded spaces; and (4) is sequential within a given

document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

**PRODUCTION OF ESI**

18.    **Email.**  The parties will work together to reduce the cost and size of email production with the goal of reducing the relative burden on the parties.   While the parties have not yet reached an agreement on reasonable limits on custodians and search terms, the parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI. Should Instacart's motion to compel arbitration be denied, the parties intend to continue meeting and conferring on the proportionality of the discovery process and to attempt to agree upon reasonable limits on numbers of search terms and custodians.

19.    **PRODUCTION FORMAT:**

a.    **IMAGE FORMAT.**  Documents that exist electronically shall be produced in single-page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi).  Each TIFF image should be named as the corresponding Bates number associated with that page.  Original document orientation should be maintained (*i.e.,* portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations, and redactions should be branded onto the TIFF images so that they appear when the document is printed.  TIFF files should be provided in a self-identified "Images" folder.

b.    **Metadata Fields and Processing.**  Absent special circumstances, each of the metadata and coding fields set forth in Exhibit A that can be extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible.  To the extent that metadata does not exist, is not reasonably

accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data. The parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a document, with the exception of the following: (1) BEGDOC; (2) ENDDOC; (3) BEGATTACH (4) ENDATTACH (5) CUSTODIAN NAME, (6) NATIVEPATH, AND (7) TEXTPATH fields (which may be populated by the party or the party's vendor). A full list of relevant fields is included in Exhibit A.

c.      **Extracted Text Files.** For each document, a multi-page (document level) text file should be provided along with its corresponding TIFF images and metadata. The file name of each extracted text file should be identical to that of the first image of its corresponding document, followed by .txt. File names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file, where it exists. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

d.      **Database Load Files.** Database Load Files shall be provided in Relativity/Concordance-compatible image and load files. (*i.e.* .OPT and .DAT files) using standard delimiters. Relativity/Concordance-compatible image and data load files should be provided in a self-identified "Data" folder. Each .DAT file should include links to ("text path") multi-page (document level) text files in the .DAT file. A "NativePath" entry for each such native file should be included in the .DAT load file indicating the relative file path to each native file on the production media. The total number of documents referenced in a production's data load file (.DAT) should match the total number of designated document breaks in the Image Load File(s) (.OPT) in the production. Additionally, the OPT file should

provide the beginning and ending bates number of each document and the number of pages the document comprises. The .OPT file should include links (relative paths) to each image file within the .OPT file (document production).  Attached as Exhibit A is a document containing additional information regarding the production specifications.

e.      **Native Files.**  ESI need not be produced in its native file format, unless (1) a requesting party can show a need for specific ESI in its native format and it would not be unreasonable, unduly burdensome, or expensive for the producing party to provide the ESI in this manner; (2) the ESI is in a multimedia form (e.g., sound, graphics, animation, or video); or (3) both parties agree otherwise in writing.  Nothing shall prevent a Party from producing other materials in native format if the Party reasonably believes that production of such materials in native format would save time or expense, or that production in TIFF format would compromise the document's utility (e.g., large spreadsheets).

i.      **Multimedia Files.** Multimedia files (e.g. .MOV files, .MPG files), and Spreadsheet files (e.g. Excel .XLS and .XLSX files, and Apple Numbers .NUMBERS files) shall be produced in native format except where produced in redacted form. Each such Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File as well as any confidentiality designation being claimed by the producing party.  Native Files should be named with the Bates number that is assigned to that specific record in the production.  A "NativePath" entry for each such multimedia file should be included in the .DAT load file indicating the relative file path to each native file on the production media.

ii.      **Presentation Files.**  Presentation files (e.g. .PPT, .PPTX, and .KEY files) may be produced in TIFF image format provided the image files contain the speaker

presentation notes, or the speaker presentation notes are produced as part of the file's metadata included in the production.

            iii.    **Requests for Other Native Files.**  Other than as specifically set forth above, a producing party need not produce documents in native format.  If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format.  The producing party shall not unreasonably deny such requests, and shall produce the requested native files within 5 business days.  Each document produced in response to such requests shall be produced with a "NativePath" entry in the .DAT load file indicating the relative file path to each Native File on the production media.

       20.    **Structured Data.** The parties will work together to reduce the cost and size of the production of structured data with the goal of reducing the relative burden on the parties. As a general matter, reports generated from a database, whether maintained internally by the party or through a third party provider, shall be produced as reports in Microsoft Excel, Microsoft Access or ASCII delimited text format.

       21.    **Color.** The receiving party may request production of specific documents in color by (1) providing a list of the Bates numbers of documents it requests to be produced in color format, and (2) an explanation of the need for reviewing such documents in color.  The producing party shall not unreasonably deny such requests, and shall produce the requested native files within 5 business days, but need not make such production until the parties reach agreement regarding the additional costs associated with the production of documents in color.

Where such agreement is reached and documents are produced in color, they shall be provided in single page JPG format, created with a resolution of at least 300 dots per inch (dpi). Each JPG image should be named as the corresponding Bates number associated with that page. Original document orientation should be maintained (*i.e.,* portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be branded onto the JPG images so that they appear when the document is printed. JPG files should be provided in a self-identified "Images" folder

22. **Parent-Child Relationships.** Parent-child relationships (the association between e-mails and attachments) will be preserved through the production of a ProdBegAttach field contained in the .DAT load file. E-mail attachments will be consecutively produced with the parent email record.

23. **Duplicates.** Each party shall de-duplicate ESI on a global level (across all custodians) prior to production. The basis for such de-duplication shall be the MD5 or SHA1 Hash values, or some other later agreed to de-duplication method such as full text de-duplication. For generating either the MD5 or SHA1 hash values for emails, the parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation; an email shall only be considered a duplicate if the attachments are also the exact same as another email and its attachments. The identity of other custodians of de-duplicated items must be listed in the "Custodian" field (or otherwise provided in the delimited .DAT text file) of the copy of the record that is produced or in a "Dupe Custodians" field identifying each custodian to the email. If productions are made on a rolling basis, an overlay file shall be produced updating the "Dupe Custodians" field for prior produced documents.

24.     **Non-Degradation.** Documents shall not be converted from one form to another such that it becomes more difficult or burdensome to use the document or that removes or degrades the ability to search by electronic means documents that were originally searchable.

25.     **Documents That Cannot Be Imaged.** To the extent that a document cannot be imaged for technical reasons, a place-holder image will be produced which identifies the file by file name and file extension. The Metadata for these documents will be produced as otherwise required by this Stipulation.  Examples of such files include, but are not limited to, corrupted files, container files or databases (e.g., .pst, .zip, .mdb, etc.), or proprietary software associated with a file.

26.     **Inaccessible ESI.**  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained, including but not limited to, backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.  Additionally, absent a showing of good cause, voicemails, and unlogged instant messages are deemed not reasonably accessible and need not be collected and preserved.

27.     **Privilege Logs.**  If any ESI is withheld pursuant to a claim of privilege, the responding party shall produce a log of privileged documents as required by FRCP 26(b)(5)(A).

28.     **Encryption.**  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party.  In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

29.     **Processing Third-Party Documents.** A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and request that

the non-party produce documents in accordance with the specifications set forth herein. The Issuing Party is responsible for producing to all other parties any documents obtained pursuant to a subpoena to any non-party.  To the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other parties within seven (7) days of the non-party's production to the Issuing Party.


**So Stipulated:**

DATED:  June 12, 2015                    THE ARNS LAW FIRM


                              By: _____/S/ Robert S. Arns_____
                                        Robert S. Arns
                                        Jonathan Davis
                                  Attorneys for Plaintiffs and Proposed
                                    FLSA and Rule 23 Class Members


DATED:  June 12, 2015                    KEKER & VAN NEST LLP



                              By: _____/S/ Rachael Meny_____
                                        Rachael Meny
                                      Benjamin Berkowitz
                                        Ryan Wong
                                  Attorneys for Defendant

**IT IS ORDERED** that the forgoing Agreement is approved.



Dated:  June 15, 2015      _____

                                    UNITED STATES

IT IS SO ORDERED

Judge Edward M. Chen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA