Robert S. Arns, (# 65071)
Jonathan E. Davis (#191346)
Kevin M. Osborne (#261367)
Robert C. Foss (#275489)
Julie C. Erickson (#293111)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:   (415) 495-7800
Fax:   (415) 495-7888
rsa@arnslaw.com
jed@ arnslaw.com
kmo@ arnslaw.com
rcf@arnslaw.com
jce@arnslaw.com

Jahan C. Sagafi (Cal. Bar No. 224887)
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com

Michael J. Scimone (*pro hac vice*)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060
mscimone@outtengolden.com

*Counsel for Plaintiffs and Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DOMINIC COBARRUVIAZ, ARLIN GOLDEN, JOHN REILLY, CHRISTOPHER RUSSELL, SUSAN BANNON, BATYA WEBER, AND DEREK WILLIAMS, Individually and On Behalf of All Others Similarly Situated Employees,<br><br>Plaintiffs,<br><br>vs.<br><br>MAPLEBEAR, INC., dba INSTACART; AND DOES 1 THROUGH 100, inclusive,<br><br>Defendants. | **Case No. 3:15-cv-00697-EMC**<br><br>**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STAY INDIVIDUAL CLAIMS, AND DISMISS CLASS/ REPRESENTATIVE CLAIMS**<br><br>Judge: Hon. Edward M. Chen<br>Date: August 20, 2015<br>Time: 1:30 p.m. |

# I. INTRODUCTION

Defendant's reply brief inappropriately raises for the first time the argument that an arbitrator—not the Court—should decide threshold questions of validity and scope, contradicting the position it took in its Motion. In its original moving papers, Instacart did not contend that the arbitrator should decide threshold questions of validity and scope and, in fact, *did not even mention* the delegation clause. To the contrary, Instacart unequivocally submitted the questions of validity, scope, and enforcement *to the Court*. Plaintiffs, in agreement with this stance, did not contend otherwise in their Opposition. Instacart cannot now, in its reply brief, retreat from that position and raise for the first time the argument that the delegation clause is enforceable as to questions of validity and scope. Nor can this new argument be properly characterized as rebuttal. To do so requires a gross misreading of Plaintiffs' Opposition, which only addressed the issue of delegation as to the very limited question of class arbitration within a broader section regarding the availability of class arbitration, which was made on the assumption that the motion was granted in any part. (*See* Opp. at pg. 3 ("*Alternatively*, should the Court enforce the arbitration agreement to any extent, it should delegate to the arbitrator the issue of whether class-wide arbitration is available under the terms of the agreement.")

However, should the Court choose to consider this argument, it should find that the delegation clause as it relates to the threshold questions of validity and scope is unenforceable because it is ambiguous and unconscionable.

Defendant also introduces new facts in its reply regarding the *Busick* [Boston] arbitration in order to argue that JAMS will accept arbitration under the arbitration agreement. This is a material misrepresentation of the nature of the proceeding, but regardless, it has no bearing on the enforceability analysis before the Court in this case.

# II. ARGUMENT

### A. Instacart Waived Its Right to Enforce The Delegation Clause

Instacart's delegation argument raises a completely new legal issue not presented in its Motion and thus cannot be argued for the first time in its reply. *Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) ("It is improper for a moving party to introduce new facts

or different legal arguments in the reply brief than those presented in the moving papers."). Defendant's arguments as to the delegation clause should be stricken because they are untimely, have been forfeited and/or waived.

**1. The Question of Whether The Arbitrator—Rather Than The Court—Should Determine The Validity And Scope Of The Arbitration Agreement Is A Separate Legal Issue That Needed To Have Been Expressly Raised In Instacart's Motion But Was Not**

"[*W*]*ho* decides arbitrability" and "*whether* a dispute is actually arbitrable" are "two separate issues." *Anderson v. Pitney Bowes, Inc.* 2005 WL 1048700, at *2 (N.D. Cal. May 4, 2005); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013) (same). An agreement to arbitrate a gateway issue is "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Upon request from a party to defer the latter question to the arbitrator and only "if there is a dispute over *who* decides," is a court to determine if the parties unambiguously vested this authority with an arbitrator." *See Anderson*, 2005 WL 1048700, at *2.

Thus, the party requesting arbitration must actually seek to enforce the delegation clause in its moving papers. *See e.g, Gillette v. Uber Techs.*, No. 3:14-cv-05241-EMC (N.D. Cal., June 9, 2015), Defs' Mot. to Compel Arbitration, pg. 3, 8 ("The Arbitration Provision Delegates The Gateway Issues To The Arbitrator). Even the case Instacart relies on, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), illustrates its error in failing to raise this argument earlier. In *Rent-A-Center*, the defendant brought a motion to compel arbitration, which specifically sought enforcement of a delegation provision. *Id.* at 68. ("The current 'controversy' between the parties is whether the Agreement is unconscionable. *It is the second provision*, which delegates resolution of that controversy to the arbitrator, that Rent–A–Center seeks to enforce.") *See also Anderson,* 2005 WL 1048700, at *2 (stating the "dispositive issue is who should decide arbitrability" where defendant contended that the court must order arbitration on gateway issues of arbitrability and plaintiffs opposed); *Bitstamp Ltd. v. Ripple Labs Inc.,* 2015 WL 4692418, at *3-4 (N.D. Cal. Aug. 6, 2015) (same).

Here, Instacart waived its right to enforce the delegation clause as its motion fails to ask this Court to enforce the delegation clause. Instacart did not even reference the delegation clause in its motion, let alone argue or establish that the clause constituted "clear and unmistakable" evidence that the parties intended for the arbitrator to decide the questions of *validity* and *scope*. To the contrary, Instacart readily submitted those questions to the Court. For example, on page 9 of its Motion, Instacart contends that "[t]he *court's role*" is to "*determin[e]* (1) *whether a valid agreement to arbitrate exists* and, if it does, (2) whether the agreement encompasses the dispute at issue" and that "[t]he issues to be decided are whether *the Court* should compel arbitration of Plaintiffs' claims on an individual basis." *Id.* at pg. 2-3. *See also id.* at pg. 8-9, 12-14 (making argument as to scope—focusing on whether Plaintiffs' claims "arise out of and/or relate to" their services under the agreement and failing to contend that question of scope should be decided by arbitrator). Instacart cannot reverse field at this point and argue that all gateway issues belong instead to the arbitrator.[1]

### 2. Instacart's New Argument Is Not Properly Characterized As Rebuttal

To the extent Instacart may attempt to characterize this late-raised argument as responding to or rebutting defenses raised in Plaintiffs' Opposition, it should fail. Such a characterization is predicated on a gross or intentional misconstruction of a single sentence in Plaintiffs' Opposition that ignores the surrounding paragraphs, subsection, and larger encompassing section as well as other contextual implications.

Plaintiffs' argument throughout the first twenty pages of their Opposition presents a clear and consistent position that the Court is to decide whether a valid arbitration agreement exists and if so, whether Plaintiffs' claims are encompassed within it. Only after resting on these issues, does it turn to the issue of whether, *in the event* the <u>Court</u> (not the arbitrator) were to

---

[1] Additionally, Plaintiffs have been prejudiced by Instacart's reply brief as it has forced Plaintiffs to take second trip around the motion-to-compel-briefing carousel: first to brief the threshold questions of arbitrability and now to double-back and reconsider who should decide the threshold questions, causing Plaintiffs to spend additional resources opposing new arguments raised in its reply brief. At the outset, Instacart had every chance to ask the Court to refer the threshold question to an arbitrator. Instacart instead chose a different path that will drive up Plaintiffs' litigation expenses. Waiver requires that Instacart live with its decision.

determine (1) that the arbitration agreement is enforceable to some extent (i.e., validity); and (2) that at least some of Plaintiffs' claims are arbitrable (i.e., scope), arbitration should be compelled on an individual basis. (Opp. at 19, Sec. F ["**If The Court Compels Arbitration of Any Claim, The Court Should Not Order Arbitration Proceed Individually**: To any extent the Court should find the agreement enforceable..."]; *see also* pg. 19 n.6 [stating that the argument was offered only in the alternative].) Within a subsection therein, Plaintiffs briefly advocated that whether class arbitration is available is a question that should be made by the arbitrator. In support of this position, Plaintiffs made a limited argument that Section 7.1 *combined with* JAMS Class Action Procedures unambiguously conferred power on the arbitrator to decide the class and collective action issues. Plaintiffs again emphasized that the argument that the arbitrator should decide whether class arbitration is available was offered conditionally and proceeded "by treating all terms of the agreement as enforceable, including the delegation clause." (Opp. at pg. 20 n. 8.)

Even if Defendant's new argument could be characterized as proper rebuttal, which it cannot, Plaintiffs' brief argument on the limited issue of class arbitration should in no event be construed as any kind of concession as to the propriety of delegating the questions of validity, scope, and enforcement. As explained fully below, Plaintiffs' position is that any delegation of the threshold questions of validity, enforceability, and scope is unenforceable.

**B. The Delegation Of The Threshold Questions Of Validity, Enforceability, And Scope Under The Terms Of The Arbitration Agreement Is Unenforceable**

Should the Court consider Defendant's untimely argument as to the validity of the delegation clause, it should find it unenforceable because it is ambiguous and unconscionable.

1. **The Delegation Clause Is Conflicting and Ambiguous**

The arbitration provision's delegation clause at Section 7.1, when viewed against the balance of the agreement—particularly Section 10—can be found ambiguous, which by default, means that the Court must decide issues of enforceability. The Supreme Court has held that courts must apply a heightened standard to the question of whether the parties have actually agreed to arbitrate arbitrability: "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*

*of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techs. v. Comm'ns Workers*, 475 U.S. 643, 649 (1986)). Where there is ambiguity about the delegation, questions of arbitrability must be decided by the courts. *See First Options* at 945. In this case, there is not only ambiguity but direct conflict regarding delegation. Accordingly, the delegation clause is insufficient meet the heightened "clear and unmistakable" standard, and this Court must therefore decide the gateway questions of whether the parties validly agreed to arbitrate the dispute at issue. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

Specifically, the agreement provides for binding arbitration of "any controversy, dispute or claim arising out of or relating to…the interpretation, enforcement, validity, scope and applicability of" the agreement. (Ex. A to the Declaration of Sunil Raman In Support of Maplebear, Inc. DBA Instacart's Motion to Compel Individual Arbitration, Dkt. 30-1, at § 7.1.) However, the agreement also contains a severability provision applicable if "any provision of this Agreement, or any part thereof, be declared or determined by any arbitrator <u>or court</u> to be illegal, invalid or unenforceable." (*Id.* at § 10 (emphasis added).)

"As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the *court* might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator." *Ajamian v. CantorCO2e, L.P.*, 203 Cal.App.4th 771, 792 (2012).

In *Baker v. Osborne Development Corp.*, 159 Cal.App.4th 884 (2008), a delegation clause assigning to the arbitrator issues of enforceability was found to be ambiguous in light of severability clause nearly identical to the one here. *Id.* at 891, 893-94 (delegation was unenforceable due to inconsistency created by other clause providing if "any provision of this arbitration agreement shall be determined by the arbitrator *or by any court* to be unenforceable"). Similarly, in *Parada v. Superior Court*, 176 Cal.App.4th 1554, 1566 (2009), an express delegation clause was held unenforceable due to an ambiguity created by another provision intimating that a "trier of fact of competent jurisdiction" could determine that a portion of the

agreement was unenforceable. *See also Gillette v. Uber Tech., Inc.*, slip op. at 20 (similar severability clause created tension with delegation clause as it applied to enforceability issue).

Here, as in *Baker* and *Parada*, because of the inconsistencies between the delegation clause, which provides questions of validity, enforceability, and scope are to be *arbitrated*, and the severability clause, which provides that a *court* may make decisions as to the agreement's validity and enforceability, the clause is insufficient meet the heightened "clear and unmistakable" standard.

### 2. **The Delegation Clause Is Unconscionable**

Delegation clauses are unenforceable where the terms of an arbitration agreement "*as applied* to the delegation provision render[] *that provision* unconscionable." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010) (emphasis in original). Here, the terms of Defendant's agreements are unconscionable as applied to the delegation provision to the extent it purports to assign questions of validity and scope to the arbitrator. (See generally Opp. at pg. 5-13.)

First, as discussed fully in Plaintiffs' Opposition, the delegation provision herein is procedurally unconscionable because it is contained in a contract of adhesion that manifests a high degree of both oppression and surprise. (*See* Pltf. Opp. at pg. 6-8 (discussing adhesive and non-negotiable nature, inability to opt-out).) These arguments apply with equal weight as to the delegation clause specifically.

Second, the fee-splitting provision and venue selection clause, *as applied to the delegation clause*, are substantively unconscionable. As fully explained in Plaintiffs' Opposition, the arbitration agreement mandates Instacart workers to advance thousands of dollars in arbitral fees simply to *initiate* the arbitration and potentially thousands more just to challenge the delegation provision on which Defendant now relies. (Opp. at pg. 9; Declaration of Robert S. Arns In Support of Opp., Exs. 11-13 (JAMS invoices detailed typical arbitration costs and fees).) Further, arbitrating the issue of arbitrability in San Francisco would require the five non-California Plaintiffs to incur additional and substantial travel expenses, lost wages due to having to miss work, and other costs such as securing childcare services. (Opp. at 12.) These costs greatly impede the shoppers' access to arbitration. Plaintiffs cannot afford to advance half of the

arbitration costs and fees required to initiate arbitration and proceed through a hearing on the issue of arbitrability in the arbitral forum under the terms of Instacart's arbitration agreement. (Opp. at pg. 8-11; Arns Decl. to Opp., Ex. 5 at ¶¶ 9-10; Ex. 6 at ¶¶ 10-11; Ex. 7 at ¶¶ 9-10.)

Both of these significant costs are of a type that shoppers would not be required to bear if they were free to bring the action in court. *See Armendariz v. Found. Health Pschcare Servs.*, 24 Cal. 4th 83, 110-11; *Gillette v. Uber Tech.*, No. 3:14-cv-05241-EMC, slip op. 29 (N.D. Cal. June 9, 2015)(Chen, J.) (finding similar JAMS fees to be "of a type [plaintiff] would not pay in court"). Because Plaintiffs have established that, just to arbitrate arbitrability, they would be "subject to hefty fees of a type they would not face in court if they are forced to arbitrate," the agreement is highly substantively unconscionable and unenforceable. *Id.*, slip op. at 32, 40 (finding delegation clauses substantively unconscionable "to a significant degree" due to similar fee-splitting provision).

### C. JAMS Only Accepted The *Busick* Arbitration Demand Because Instacart, in the Face of the *Cobarruviaz* Lawasuit, Decided to Waive Unconscionable Terms

The Court should strike, or at the very least disregard, Defendant's newly-presented information about the *Busick* action, not only because it contains new facts raised for the first time on reply, but because it has no bearing on the enforceability of the arbitration clause. Defendant's alteration of another agreement *after* the outset of this litigation, does not affect the content of the agreement at issue in this litigation; their actions only demonstrate for the Court what Instacart is willing to do in effort to skirt liability in the face of this nationwide class action.

Defendant's reply also misrepresents the particulars of the Boston arbitration and the status of that case with JAMS. First, Defendant states "The Boston arbitration demonstrates that JAMS *will* in fact accept arbitration demands under Plaintiffs' IC Agreements, and will apply its Minimum Standards of Procedural Fairness." (Reply at 1.) Notably, JAMS has **_not_** accepted an arbitration demand "under the identical arbitration provisions that apply to Plaintiffs here," but rather Instacart has drastically severed the terms of the agreement as to the cost, venue, and discretionary loser-pays provisions so as to comply with the JAMS Minimum Standards. Instacart still has the same provisions in its agreement that chill workers from ever seeking redress.

Additionally, despite Instacart's contrary contention, the attorney who filed the *Busick* arbitration, Shannon Liss-Riordan, agrees with Plaintiffs that the agreement contains numerous unconscionable terms. (*See* Declaration of Robert S. Arns In Support of Plaintiff's Administrative Motion for Leave to File Surreply, Ex. 1, Declaration of Shannon Liss-Riordan ("Liss-Riordan Decl."), at ¶ 4.) By filing with JAMS, Ms. Busick's counsel "took the chance on behalf of Ms. Busick and the putative class that Instacart would waive the unconscionable terms of the agreement," and only *after* filing the arbitration demand did Ms. Liss-Riordan learn that Instacart would not require Ms. Busick to advance half of the costs of arbitration, arbitrate the case in San Francisco, or enforce the looser pays provision. (Liss-Riordan Decl. at ¶¶ 6-7.)

Therefore, JAMS ultimately became an available arbitral forum for the *Busick* arbitration *only* because Instacart unexpectedly waived the arbitration agreement's unconscionable terms in order to comply with the JAMS Minimum Standards for Procedural Fairness. JAMS was in no way involved in that decision.

As this Court has noted, a party cannot cure an unconscionable contract by agreeing not to enforce an unconscionable term at a later date (after a complaint has been filed). *See Gillette v. Uber Techs.*, No. 3:14-cv-05241-EMC, slip op. at 31-32 (N.D. Cal., June 9, 2015) ("This after-the-fact concession cannot render the delegation clause conscionable. As the Supreme Court in *Armendariz* explained, whether a party is now willing to excise an unconscionable clause in a contract "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy.") (citing *Armendariz*, 24 Cal. 4th 83, 125 (2000) and *Sonic-Calabasas*, 57 Cal. 4th 1109, 1134 (2013) (explaining that under California law, unconscionability is measured by "whether a contract provision was unconscionable at the time it was made")).

### III. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Compel Arbitration.

THE ARNS LAW FIRM

   /s/ Robert S. Arns
Robert S. Arns, State Bar No. 65071
rsa@arnslaw.com

Jonathan E. Davis, State Bar No. 191346
jed@arnslaw.com
Kevin M. Osborne, State Bar No. 261367
kmo@arnslaw.com
Julie C. Erickson, State Bar No. 293111
jce@arnslaw.com
THE ARNS LAW FIRM
A Professional Corporation
515 Folsom Street, 3rd Floor
San Francisco, California 94105
Phone: (415) 495-7800
Fax: (415) 495-7888


Jahan C. Sagafi, State Bar No. 224887,
jsagafi@outtengolden.com
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810
Michael J. Scimone (*pro hac vice*),
mscimone@outtengolden.com
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

Attorneys for Plaintiffs and Proposed FLSA and Rule 23 Class Members