Robert S. Arns (# 65071)
rsa@arnslaw.com
Jonathan E. Davis (# 191346)
jed@arnslaw.com
Kevin M. Osborne (# 261367)
kmo@arnslaw.com
Julie C. Erickson (# 293111)
jce@arnslaw.com
**THE ARNS LAW FIRM**
A Professional Corporation
515 Folsom Street, 3rd Floor
San Francisco, California 94105
Tel: (415) 495-7800 / Fax: (415) 495-7888

Jahan C. Sagafi, State Bar No. 224887
jsagafi@outtengolden.com
**OUTTEN & GOLDEN LLP**
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Tel: (415) 638-8800 / Fax: (415) 638-8810

Michael J. Scimone (*pro hac vice*)
mscimone@outtengolden.com
3 Park Avenue, 29th Floor
New York, New York 10016
Tel: (212) 245-1000 - Fax: (646) 509-2060

Attorneys for Plaintiffs

KEKER & VAN NEST LLP
RACHAEL E. MENY - #178514
rmeny@kvn.com
BENJAMIN BERKOWITZ - #244441
bberkowitz@kvn.com
NIKKI K. VO - # 239543
nvo@kvn.com
RYAN K. WONG - #267189
rwong@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415-391-5400
Facsimile:    415-397-7188

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC COBARRUVIAZ, ARLIN GOLDEN, JOHN REILLY, CHRISTOPHER RUSSELL, SUSAN BANNON, BATYA WEBER, AND DEREK WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED EMPLOYEES;<br><br>Plaintiffs,<br>vs.<br><br>MAPLEBEAR, INC. dba INSTACART; AND DOES 1 through 100, inclusive<br><br>Defendants. | No. C 15-cv-00697 EMC<br><br>**JOINT CASE STATUS REPORT**<br><br>**Judge**: **Hon. Edward M. Chen**<br><br>Date: October 1, 2015<br>Time: 10:30 a.m. |

Pursuant to the Court's Order dated August 21, 2015, Plaintiffs Dominic Cobarruviaz, Arlin Golden, John Reilly, Christopher Russell, Susan Bannon, Batya Weber, and Derek Williams, individually and on behalf of all other similarly situated employees ("Plaintiffs") and Defendant Maplebear, Inc., d/b/a Instacart ("Defendant" or "Instacart") (collectively "the Parties") respectfully submit this Joint Case Status Report in advance of the Case Management Conference scheduled for October 1, 2015.

On August 21, 2015, this Court entered an order stating:

> The Court hereby **ORDERS** Defendant [Instacart] to file an arbitration demand with JAMS covering the instant dispute for the *sole purpose* of obtaining a determination from JAMS whether it will accept such arbitration demand. No such arbitration may actually be conducted, however, nor shall JAMS make any dispositive adjudication regarding the scope and enforceability of the delegation clause contained in the Agreements, nor otherwise adjudicate whether this dispute is properly arbitrable or terms of the Agreement unconscionable, until this Court, if necessary, first resolves the delegation issue.

Order re Defendant's Motion to Compel Arbitration, Dkt. No. 76, pg. 2 ln. 3–9 (Aug. 21, 2015) ("Order") (emphasis in original).

The Order also stated "that a threshold inquiry in this case is whether JAMS will *accept* an arbitration demand in this case, and conduct an arbitration under the identical Independent Contractor Agreements that govern the relationship between Plaintiffs and Defendant." *Id.* pg. 1, ln. 17-19 (emphasis in original).

On August 26, 2015, Instacart submitted seven individual demands for arbitration—one for each named Plaintiff—to JAMS at its office located at Two Embarcadero Center, Suite 1500, San Francisco, CA 94111. Copies of those arbitration demands are attached as **Exhibits A** to **G**.

On August 31, 2015, JAMS Senior Case Manager Karen V. Clerici left a voicemail with Instacart's outside counsel, Rachael E. Meny, inquiring whether Instacart submitted the

JOINT CASE STATUS REPORT

seven arbitration demands as individual arbitrations. Instacart responded to Ms. Clerici's voicemail via email on August 31, 2015. *See* **Ex. H**.[1]

Plaintiffs' counsel and Instacart's counsel then engaged in several email exchanges with JAMS on August 31, 2015. *See* **Ex. I** (Davis email to JAMS on Aug. 31, 2015); **Ex. J** (Meny email to JAMS on Aug. 31, 2015); **Ex. K** (Davis email to JAMS on Aug. 31, 2015); **Ex. L** (Meny email to JAMS on Aug. 31, 2015). Among other matters, which are discussed in the separate statements below, the email exchange involved Ms. Clerici confirming Plaintiffs' counsel's request to keep separate correspondence relating to mediation follow-up and arbitration matters. *See* **Ex. I**; **Ex. M** (Clerici email to the Parties on Aug. 31, 2015).[2] On September 3, 2015, Ms. Clerici at JAMS informed the parties that "JAMS will be in touch shortly regarding this matter." *See* **Ex. N**.

The Parties engaged in further email communications with JAMS on September 4, 2015 and September 8, 2015. *See* **Exs. O–S**. Those communications between the Parties and JAMS are discussed in the separate statements below.

On September 14, 2015, the Parties received a letter from JAMS regarding the arbitration demands. The letter, dated September 11, 2015 and signed by JAMS Executive Vice President and General Counsel Jay Welsh, is attached as **Exhibit T**. The letter states:

> JAMS has received and reviewed the parties' submissions in this matter, including the Court's Order of August 21, 2015. The Court's Order provides that the arbitration demands be filed at JAMS for the sole purpose of obtaining a determination from JAMS whether it will accept such arbitration demands. With regard to this inquiry, please note that JAMS will accept the arbitration demands for administration, subject to application of the Employment Minimum Standards. The parties' arbitration agreement specifically provides that the JAMS Employment Rules and the JAMS Employment Minimum Standards will apply to any arbitration. However, the arbitration agreement as written does not comply with the Minimum

---

[1] Prior to Instacart's submission of the arbitration demands, the parties agreed to include all counsel of record in any communications with JAMS relating to the demands.

[2] Ms. Clerici is also involved with settlement efforts in this case and had emailed the parties earlier in the day on August 31, 2015 to follow up on the mediation. It was in reply to Ms. Clerici's mediation-related email that Instacart responded to Ms. Clerici's voicemail inquiry about the arbitration demands.

-3-

JOINT CASE STATUS REPORT

> Standards. Therefore, JAMS has determined that it will administer the cases only if the parties, by agreement or waiver, amend the arbitration agreement to comply with the Minimum Standards.
>
> JAMS has placed the Arbitration Demands on hold until further directed by the parties or the Court

**Ex. T**.

Following receipt of JAMS' letter, the Parties separately responded to JAMS on September 14, 2015. *See* **Exs. U** and **V**. Those communications between the Parties and JAMS are discussed in the separate statements below.

**Plaintiffs' Position:**

Plaintiffs' position is that the purpose of this Joint Case Status Report is to inform the Court of whether JAMS accepted Instacart's arbitration demands. JAMS did not accept Instacart's arbitration demands, per the September 11, 2015 determination letter signed by JAMS Executive Vice President and General Counsel Jay Welsh, which stated:

> [T]he arbitration agreement as written does not comply with the Minimum Standards. Therefore, JAMS has determined that it will administer the cases only if the parties, by agreement or waiver, amend the arbitration agreement to comply with the Minimum Standards.

**Ex. T**.

Following receipt of the JAMS determination letter, on September 14, 2015, Plaintiffs sent a letter to JAMS stating that Plaintiffs do not consent or agree to any modification or amendment of the arbitration agreement. *See* **Ex. U**. In light of these facts, Plaintiffs believe that any further discussion is unnecessary and beyond the scope of this Report per the Court's Order. However, due to Defendant's inclusion of argument on several extraneous topics, Plaintiffs are compelled to set forth corresponding positions. Defendant argues that (1) JAMS accepted Instacart's arbitration demands; and (2) the Independent Contractor Agreement's severability clause authorizes JAMS to unilaterally modify the arbitration agreement so as to achieve compliance with the JAMS Minimum Standards for purposes of avoiding the unavailability of JAMS as an arbitral forum. *See infra* "Defendant's Position," for Defendant's full arguments.

Defendant filed its seven individual arbitration demands on August 26, 2014. *See* **Ex. A-G**. The forms on which Instacart submitted its arbitration demands ("Demand for Arbitration Before JAMS") expressly provided for Plaintiffs to file a response to Instacart's submission. *See* **Ex. A-G**, pg. 3 ("Respondent may file a response…to the above-stated claims."). Directly in line with the procedures contemplated by the Demand Form, Plaintiffs submitted a brief response to JAMS in opposition to Instacart's arbitration demands on September 4, 2015. **Ex. O**. Plaintiffs' response provided little more than that which the Court included in its Order. *See* Order, pg. 1, ln. 25–pg. 2 ln. 1 (summarizing Plaintiffs' argument as to why JAMS is an unavailable forum).[3]

With respect to JAMS's rejection of Instacart's arbitration demands under the controlling Independent Contractor Agreement ("IC Agreement"), Instacart's suggestion that JAMS should be permitted by the Court to strike any terms in conflict with the Minimum Standards in order to be able to accept Instacart's arbitration demands misses several key points. First, Instacart argues that the IC Agreement's severability clause somehow supersedes the bilateral modification requirement for contract amendments. However, as the Court observed during oral argument on this matter, "[y]ou can't have just one party waive" the terms that do not comply with the JAMS Minimum Standards; "both parties [must agree] to effectuate a modification of the contract." Transcript, at pg. 17, ln. 8-10. The IC Agreement itself also expressly requires bilateral consent to effectuate any contractual modifications (*see* IC Agreement, § 14 ("This Agreement can only be modified by a written agreement executed

---

[3] Thus, for Defendant to label Plaintiffs' response (**Ex. O**) as "extensive lobbying" is a gross mischaracterization. Defendant fails to mention that Instacart's initial email to Ms. Clerici on August 31, 2015 improperly provided, "once the arbitration is commenced…" **Ex. H**. In reply, Plaintiffs' counsel stated that this statement "improperly…presupposes that JAMS can conduct *any arbitration*" and cited this Court's Order for the proposition that "whether JAMS can conduct any arbitration, given the terms of the Instacart Arbitration Agreement, is in dispute." **Ex. I**. Defendant also fails to mention that its other emails to JAMS on September 4, 2015 and September 8, 2015 included argument as to why JAMS should accept the arbitration demand—the same arguments Defendant wages here. **Exs. P; R**. JAMS nevertheless rejected Instacart's arbitration demands.

JOINT CASE STATUS REPORT

by Contractor and by the President of Company")), as does JAMS (*see* **Ex. T** (JAMS "will administer the cases only if *the parties*, by agreement or waiver, amend the arbitration agreement") (emphasis added)).

Second, Instacart misinterprets the legal effect of the IC Agreement's severability clause. The severability clause only applies when a <u>court</u> or <u>arbitrator</u> determines a provision to be "illegal, invalid or unenforceable." *See* IC Agreement, § 10. It does not provide that, at the initial arbitration demand evaluation stage, an administrative case manager at JAMS or JAMS's general counsel can unilaterally modify provisions of a contract to which it is not a party. Additionally, non-compliance with the JAMS Minimum Standards does not necessarily render a contractual term "illegal, invalid or unenforceable." But even if it did, Instacart's suggestion nonetheless exceeds the Court's Order, which was expressly limited to resolving the "threshold inquiry" of whether JAMS will accept an arbitration demand "under the ***identical*** Independent Contractor Agreements that govern the relationship between Plaintiffs and Defendant." Order, pg. 1, ln. 17-19 (emphasis added). The Order was not aimed at determining whether JAMS, after altering the IC Agreement at this preliminary stage so as to comply with the Minimum Standards, would accept the arbitration demands. In effect, Defendant is asking the Court to rescind its previously issued Order.

JAMS's determination letter is very clear. JAMS will not accept a demand for arbitration under the subject arbitration agreement in its current form. This fully resolves the question posed by the Court in its August 21, 2015 Order. As the Court recognized at oral argument, "[if JAMS says] no, because facially this is a problem and unless we get a novation or modification consented to by both sides, we're not touching this thing, at least then we know the ball is back in this Court literally." Transcript, at pg. 11, ln. 19-22.

Finally, to the extent the Court entertains Defendant's argument on topics beyond the Court's Order, Plaintiffs' briefing and oral argument clearly set forth Plaintiffs' other positions on the integrality of the JAMS arbitral forum designation (*see* Pltfs. Supp. Brief, Dkt. No. 68), unenforceability of the delegation clause as to questions of validity and scope (*see* Pltfs. Sur-

JOINT CASE STATUS REPORT

Reply, Dkt. No. 79, pg. 4-7), and severability (*see* Pltfs. Opp., Dkt. No. 52, pg. 13-16). Plaintiffs request the Court provide Plaintiffs the opportunity to respond to any new argument made by Defendant.

**Defendant's Position:**

The JAMS' September 11, 2015 letter expressly provides that "JAMS *will accept* the arbitration demands for administration, subject to application of the Employment Minimum Standards." **Ex. T** (emphasis added). Thus, contrary to Plaintiffs' arguments, JAMS has not refused jurisdiction over the arbitration and cannot be deemed an "unavailable" arbitral forum under *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006).[4] JAMS' decision to accept Instacart's arbitration demands is fully consistent with the procedures set forth in the JAMS Employment Minimum Standards. *See* JAMS Employment Minimum Standards, at 4.

The Court's August 21, 2015 Order directed that JAMS was not to "adjudicate whether this dispute is properly arbitrable or terms of the Agreement unconscionable." Dkt. No. 76, pg. 2 ln. 3–9. Thus, pursuant to the Court's Order, JAMS's inquiry and authority was limited to a facial review of the contract, and JAMS was prohibited from adjudicating the enforceability of potentially unconscionable terms. In response to the Court's Order, JAMS responded that it "will accept" Instacart's demands, while acknowledging that modification would be required to bring the arbitration agreements within conformity of JAMS' Employment Minimum Standards. **Ex. T**.[5]

---

[4] Of course, even if JAMS were "unavailable," the instant dispute remains subject to arbitration because the selection of JAMS was not "integral" to the Parties' arbitration agreements. *See* Dkt. No. 67 at 3–5.

[5] The threshold question posed by the Court's August 21, 2015 Order was whether JAMS, applying its own rules and procedures, would accept an arbitration demand covering the instant dispute. *See* Order at 1. Nevertheless, Plaintiffs counsel engaged in extensive lobbying of JAMS to encourage JAMS to reject the dispute. On September 4, 2015, Plaintiffs' counsel emailed JAMS an "opposition to Defendant Instacart's demands for arbitration" and argued that JAMS could not accept the arbitration demands submitted by Instacart. *See* **Ex. O**. Instacart responded to Plaintiffs' submission via email on September 4, 2015, and objected to Plaintiffs' unsolicited arguments as "outside of the normal JAMS procedure for consideration of Instacart's arbitration demands" and an improper attempt to "influence JAMS' determination regarding Instacart's pending arbitration demands." *See* **Ex. P**. Plaintiffs' counsel emailed

JOINT CASE STATUS REPORT

Accordingly, and pursuant to the sequence described in the Court's August 21, 2015 Order, the next step should be for the Court to address the IC Agreement's delegation clause. If the Court upholds the delegation clause, the Court then should permit JAMS to refer the IC Agreement to an arbitrator to determine, pursuant to Section 10's mandatory severability clause, whether to "strike" or "deem waived" any contract term that he or she determines is unconscionable.[6] Alternatively, if the Court determines that interpretation and enforceability of the arbitration agreement have not been "clearly and unmistakably" delegated to the arbitrator, the Court should apply Section 10 to sever the arbitrator's fees provision in Section 7.3, enforce the arbitration agreements signed by Plaintiffs for the reasons stated in Instacart's briefing and at oral argument, and grant Instacart's motion to compel each Plaintiff to individual arbitration with JAMS. *See* Dkt. Nos. 29, 59, 65, 67.

Under Section 10, notwithstanding the severance of any "illegal, invalid, or unenforceable" term by a court or arbitrator, the remainder the Agreement "shall nonetheless remain binding in effect." IC Agreement, §10. As previously noted in Instacart's briefing on its motion to compel (*see* Dkt 59 at 11-13), severance of an offending fee provision is also consistent with applicable case law. *See Kairy v. Supershuttle Int'l Inc.*, No. C 08-02993 JSW,

---

JAMS again on September 8, 2015, and again argued that JAMS could not accept the arbitration demands. *See* **Ex. Q**. Instacart responded that same day, and again reiterated its view that Plaintiffs' arguments were "an improper effort … to influence this process." *See* **Ex. R.** JAMS notified the parties via email on September 8, 2015 that "[a]ll submissions up to this point will be reviewed." *See* **Ex. S.** Following receipt of the September 11, 2015 JAMS letter indicating that JAMS would accept the arbitration subject to its Minimum Standards, Instacart informed JAMS that it agreed to comply with the JAMS Employment Minimum Standards, and that it had already informed Plaintiffs in June 2015 that it would not require any Plaintiff to pay the arbitrator's fees and costs in a JAMS arbitration. *See* **Ex. V**.

[6] Plaintiffs' assertion that they "do not consent or agree to any modification or amendment of the arbitration agreement" (*see* **Ex. U**) is contradicted by their pre-dispute agreement in Section 10 of the Independent Contractor Agreement, which provides for severance of any illegal, invalid, or unenforceable term. As set forth in Instacart's prior briefing, the only provision that is inconsistent with California law or the JAMS Minimum Standards is the arbitrator fees provision in Section 7.3 of the IC Agreement. That fee-splitting provision should be severed pursuant to Section 10 of the IC Agreement and the remainder of the arbitration provision should be enforced. *See* Dkt. No. 59, pages 11-13

2012 WL 4343220, at *8 (N.D. Cal. Sept. 20 2012) (severing a fee splitting term from an arbitration agreement and compelling arbitration); *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013) (finding attorney fee provision "plainly collateral to the main purpose" of an arbitration agreement and severing it). Indeed, Instacart has never argued that the fee-splitting term should be preserved or enforced, and instead has maintained that the term should be severed so that the remainder of the arbitration agreement may be enforced absent the offending term. *See* Dkt. 59 at 11-13.

**Joint Request:**

The Parties jointly request confirmation from the Court that the Parties need not file a Joint Case Management Conference Statement in accordance with Civ. L.R. 16-10(d) in light of this Joint Case Status Report.

**Respectfully Submitted:**

Date: September 17, 2015

THE ARNS LAW FIRM

By: */s/ Julie C. Erickson*
Robert S. Arns
Jonathan E. Davis
Julie C. Erickson
*Attorneys for Plaintiffs and Proposed FLSA and Rule 23 Class Members*

Date: September 17, 2015

KEKER & VAN NEST LLP

By: */s/ Benjamin W. Berkowitz*
Rachael E. Meny
Benjamin W. Berkowitz
Nikki K. Vo
Ryan K. Wong
*Attorneys for Defendant*