1  KEKER & VAN NEST LLP
   RACHAEL E. MENY - #178514
2  rmeny@kvn.com
   BENJAMIN BERKOWITZ - #244441
3  bberkowitz@kvn.com
   NIKKI K. VO - #239543
4  nvo@kvn.com
   RYAN K. WONG - #267189
5  rwong@kvn.com
   633 Battery Street
6  San Francisco, CA 94111-1809
   Telephone:    415-391-5400
7  Facsimile:    415-397-7188

8  Attorneys for Defendant
   MAPLEBEAR, INC. dba INSTACART

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12 DOMINIC COBARRUVIAZ, ARLIN          Case No. 3:15-cv-00697-EMC
   GOLDEN, JOHN REILLY,
13 CHRISTOPHER RUSSELL, SUSAN          **DEFENDANT'S STATEMENT OF**
   BANNON, BATYA WEBER, AND            **RECENT DECISION PER CIVIL**
14 DEREK WILLIAMS, Individually, and On **L.R. 7-3(d)(2)**
   Behalf of All Others Similarly Situated
15 Employees,                          Judge:      Hon. Edward M. Chen

16              Plaintiffs,            Date Filed:  February 13, 2015

17       v.

18 MAPLEBEAR, INC., dba INSTACART and
   DOES 1 through 100, inclusive,
19
                Defendants.
20

21

22

23

24

25

26

27

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Maplebear, Inc. dba Instacart ("Instacart") submits this Statement of Recent Decision under Civil L.R. 7-3(d)(2) to bring to the Court's attention the U.S. Supreme Court's grant of *certiorari* on October 1, 2015, of the Petition for Writ of *Certiorari* filed in *MHN Government Services, et al. v. Zaborowski*, Case No. 14-1458.  This recent U.S. Supreme Court decision to grant *certiorari* for the Ninth Circuit's decision in *Zaborowski v. MHN Government Services, Inc.*, No. 13-15671 (9th Cir. Dec. 17, 2014) is relevant to Defendants' pending Motion to Compel Individual Arbitration, Stay Individual Claims, and Dismiss Class/Representative Claims (Dkt. No. 29).  Plaintiffs cite to the Ninth Circuit's *Zaborowski* decision in their opposition to Instacart's motion.  *See* Dkt. No. 52 at 11.

A copy of the U.S. Supreme Court's Order granting *certiorari* in *MHN Government Services, et al. v. Zaborowski* is attached hereto as **Exhibit 1**.  The question presented to the U.S. Supreme Court in the petition for *certiorari* is:

> The Federal Arbitration Act ("FAA") provides that an arbitration agreement shall be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. California law applies one rule of contract severability to contracts in general, and a separate rule of contract severability to agreements to arbitrate. The arbitration-only rule disfavors arbitration and applies even when the agreement contains an express severability clause. Its application in this case conflicts with binding precedent of this Court and with opinions of four other courts of appeals.
>
> The question presented is whether California's arbitration-only severability rule is preempted by the FAA.

*See* Petition for Writ of *Certiorari* (attached hereto as **Exhibit 2**) at i.

Dated:  October 2, 2015

KEKER & VAN NEST LLP

By:   */s/ Ryan K. Wong*
RACHAEL E. MENY
BENJAMIN BERKOWITZ
NIKKI K. VO
RYAN K. WONG

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART

993816

# EXHIBIT 1

(ORDER LIST: 576 U.S.)

THURSDAY, OCTOBER 1, 2015

CERTIORARI GRANTED

14-770      BANK MARKAZI V. PETERSON, DEBORAH, ET AL.

14-1209     STURGEON, JOHN V. MASICA, SUE, ET AL.

14-1280     HEFFERNAN, JEFFREY J. V. PATERSON, NJ, ET AL.

14-1373     UTAH V. STRIEFF, EDWARD J.

14-1382     AMERICOLD LOGISTICS, LLC, ET AL. V. CONAGRA FOODS, INC., ET AL.

14-1406     NEBRASKA, ET AL. V. PARKER, MITCH, ET AL.

14-1458     MHN GOVERNMENT SERVICES, ET AL. V. ZABOROWSKI, THOMAS, ET AL.

14-1516     DUNCAN, WARDEN V. OWENS, LAWRENCE

            The petitions for writs of certiorari are granted.

14-6166     TAYLOR, DAVID A. V. UNITED STATES

14-8913     MOLINA-MARTINEZ, SAUL V. UNITED STATES

            The motions of petitioners for leave to proceed *in forma
            pauperis* and the petitions for writs of certiorari are granted.

15-108      PUERTO RICO V. VALLE, LUIS M., ET AL.

            The petition for a writ of certiorari is granted.

15-138      RJR NABISCO, INC., ET AL. V. EUROPEAN COMMUNITY, ET AL.

            The motion of Washington Legal Foundation for leave to file
            a brief as *amicus curiae* is granted.  The petition for a writ of
            certiorari is granted.  Justice Sotomayor took no part in the
            consideration or decision of this motion and this petition.

15-5040     WILLIAMS, TERRANCE V. PENNSYLVANIA

            The motion of petitioner for leave to proceed *in forma
            pauperis* and the petition for a writ of certiorari are granted.

# EXHIBIT 2

**No. 14-**

IN THE

# Supreme Court of the United States

———————

MHN GOVERNMENT SERVICES, INC., AND
MANAGED HEALTH NETWORK, INC.,

*Petitioners,*

v.

THOMAS ZABOROWSKI, ET AL.,

*Respondents.*

———————

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

## PETITION FOR A WRIT OF CERTIORARI

| | |
|---|---|
| Timothy J. Long | Robert M. Loeb |
| Lauri A. Damrell | *Counsel of Record* |
| ORRICK, HERRINGTON & | ORRICK, HERRINGTON & |
| SUTCLIFFE LLP | SUTCLIFFE LLP |
| 400 Capitol Mall | Columbia Center |
| Suite 3000 | 1152 15th Street, NW |
| Sacramento, CA 95814 | Washington, DC 20005 |
| | (202) 339-8400 |
| Rachel Wainer Apter | rloeb@orrick.com |
| ORRICK, HERRINGTON & | |
| SUTCLIFFE LLP | |
| 51 West 52nd Street | |
| New York, NY 10019 | |

*Counsel for Petitioners*

i

## QUESTION PRESENTED

The Federal Arbitration Act ("FAA") provides that an arbitration agreement shall be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. California law applies one rule of contract severability to contracts in general, and a separate rule of contract severability to agreements to arbitrate. The arbitration-only rule disfavors arbitration and applies even when the agreement contains an express severability clause. Its application in this case conflicts with binding precedent of this Court and with opinions of four other courts of appeals.

The question presented is whether California's arbitration-only severability rule is preempted by the FAA.

ii

## CORPORATE DISCLOSURE STATEMENT

Petitioner MHN Government Services, Inc. is a wholly owned subsidiary of MHN Services. MHN Services is a wholly owned subsidiary of Petitioner Managed Health Network, Inc. Petitioner Managed Health Network, Inc. is a wholly owned subsidiary of Health Net, Inc., a publicly held corporation.

iii

# TABLE OF CONTENTS

**Page**

QUESTION PRESENTED ....................................... i

CORPORATE DISCLOSURE STATEMENT .......... ii

TABLE OF AUTHORITIES ....................................v

INTRODUCTION .................................................... 1

OPINIONS BELOW................................................. 2

JURISDICTION....................................................... 3

CONSTITUTIONAL AND STATUTORY
    PROVISIONS INVOLVED ........................... 3

STATEMENT OF THE CASE.................................. 4

REASONS FOR GRANTING THE PETITION ..... 10

I.    California's Arbitration-Only Anti-
    Severance Rule Is Preempted By The
    FAA. .......................................................... 10

    A.    The FAA preempts state laws
        that discriminate against
        arbitration.......................................... 10

    B.    For contracts generally,
        California law takes a very
        liberal view of severability. ............... 12

    C.    For agreements to arbitrate,
        California law applies a different
        rule, disfavoring severance................ 14

II.    The Ninth Circuit's Contrary Holding
    Conflicts With This Court's Precedents
    And Decisions Of Other Circuits. ............... 16

iv

A.    The Ninth Circuit's holding
      conflicts with this Court's FAA
      precedents. ........................................ 16

B.    The Ninth Circuit's holding
      conflicts with decisions of other
      courts of appeals. .............................. 18

III.  This Is An Issue Of Exceptional
      Importance That Warrants This Court's
      Immediate Intervention. ............................. 22

CONCLUSION ...................................................... 27

APPENDIX A   9th Circuit Memorandum
             (Dec. 17, 2014) ..............................1a

APPENDIX B   Opinion Of Judge Gould,
             Concurring In Part And
             Dissenting In Part
             (Dec. 17, 2014) ..............................7a

APPENDIX C   District Court Order
             Denying Defendant's
             Motion To Compel
             Arbitration (April 3,
             2013) ............................................12a

APPENDIX D   9th Circuit Order
             Denying Petition For
             Rehearing En Banc
             (Feb. 9, 2015) ..............................31a

APPENDIX E   Provider Services Task
             Order Agreement........................33a

v

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adair v. Stockton Unified Sch. Dist.*,
    77 Cal. Rptr. 3d 62 (Cal. Ct. App. 2008) ............14

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995).......................................12, 25

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    6 P.3d 669 (Cal. 2000)..................................*passim*

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011)..................................*passim*

*Birbower, Montalbano, Condon & Frank v. Super. Ct.*,
    949 P.2d 1 (Cal. 1998).........................................13

*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005)...............................21

*Broughton v. Cigna Healthplans of Cal.*,
    988 P.2d 67 (Cal. 1999)......................................22

*Brown v. Super. Ct.*,
    157 Cal. Rptr. 3d 779 (Cal. Ct. App. 2013) .........24

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)............................................12

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
    171 Cal. Rptr. 3d 42 (Cal. Ct. App. 2014) ...........14

vi

*Chavarria v. Ralphs Grocery Co.,*
  733 F.3d 916 (9th Cir. 2013)................................9

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001)......................................22, 24

*Citizens Bank v. Alafabco, Inc.,*
  539 U.S. 52 (2003)..............................................24

*Cruz v. PacifiCare Health Sys., Inc.,*
  66 P.3d 1157 (Cal. 2003)...................................22

*DIRECTV, Inc. v. Imburgia,*
  No. 14-462, *cert. granted,*
  2015 WL 1280237 (Mar. 23, 2015) ......................23

*Doctor's Assocs., Inc. v. Casarotto,*
  517 U.S. 681 (1996)...........................................12

*Ferrer v. Preston,*
  51 Cal. Rptr. 3d 628 (Cal. Ct. App. 2007), *rev'd,*
  552 U.S. 346 (2008)...........................................23

*Fitz v. NCR Corp.,*
  13 Cal. Rptr. 3d 88 (Cal. Ct. App. 2004) .............14

*Gannon v. Circuit City Stores, Inc.,*
  262 F.3d 677 (8th Cir. 2001)...............................20

*Gen. Atomic Co. v. Felter,*
  436 U.S. 493 (1978)...........................................25

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991).........................................11, 25

vii

*Green Tree Fin. Corp.-Ala. v. Randolph,*
  531 U.S. 79 (2000)................................................24

*Green Tree Fin. Corp. v. Bazzle,*
  539 U.S. 444 (2003)............................................24

*Iskanian v. CLS Transp. of L.A.,*
  327 P.3d 129 (2014) ...........................................24

*James v. Conceptus, Inc.,*
  851 F. Supp. 2d 1020 (S.D. Tex. 2012)...............24

*Little v. Auto Stiegler, Inc.,*
  63 P.3d 979 (Cal. 2003)......................................22

*Marathon Entm't, Inc. v. Blasi,*
  174 P.3d 741 (Cal. 2008)....................................13

*Marmet Health Care Ctr., Inc. v. Brown,*
  132 S. Ct. 1201 (2012).........................................11

*In re Marriage of Facter,*
  152 Cal. Rptr. 3d 79 (Cal. Ct. App. 2013) .....14, 16

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
  514 U.S. 52 (1995)..............................................25

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,*
  473 U.S. 614 (1985)..................................20, 21, 25

*Morrison v. Circuit City Stores, Inc.,*
  317 F.3d 646 (6th Cir. 2003)...............................20

viii

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)....................................11, 19, 21

*Oblix, Inc. v. Winiecki*,
  374 F.3d 488 (7th Cir. 2004).........................18, 19

*Parada v. Super. Ct.*,
  98 Cal. Rptr. 3d 743 (Cal. Ct. App. 2009) .....15, 19

*Perry v. Thomas*,
  482 U.S. 483 (1987)......................................12, 23

*Preston v. Ferrer*,
  552 U.S. 346 (2008)......................................12, 23

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967).............................................25

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010).........................................11, 12

*Samaniego v. Empire Today, LLC*,
  140 Cal. Rptr. 3d 492 (Cal. Ct. App. 2012) .....9, 15

*Sonic-Calabasas A, Inc. v. Moreno*,
  247 P.3d 130 (Cal. 2011), *vacated*, 132 S. Ct. 496
  (2011)................................................................23

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984).........................................12, 23

*Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989)......................................20, 25

ix

*Wright v. Universal Mar. Serv. Corp.*,
  525 U.S. 70 (1998)...............................................24

## Constitutional and Statutory Provisions

U.S. Constitution, Art. VI, Cl. 2 ...................................3

9 U.S.C. § 2 ("Federal Arbitration Act") ...........*passim*

28 U.S.C. § 1254(1).......................................................3

Cal. Civil Code § 1598 ..............................................12

Cal. Civil Code § 1599 ..............................................12

Cal. Civil Code § 1670.5 ...........................................12

## Other Authorities

Lewis Maltby, *Employment Arbitration: Is It Really
  Second Class Justice?* 6 Disp. Resol. Mag. 23
  (1999) ...................................................................26

Mark Fellows, *The Same Result As In Court, More
  Efficiently: Comparing Arbitration And Court
  Litigation Outcomes*, Metro. Corp. Couns., July
  2006, *available at* http://www.metrocorpcoun-
  sel.com/articles/6988/same-result-court-more-effi-
  ciently-comparing-arbitration-and-court-
  litigation-outcomes. ............................................25

Michael H. LeRoy & Peter Feuille, *Happily Never
  After: When Final And Binding Arbitration Has
  No Fairy Tale Ending*, 13 Harv. Negot. L. Rev.
  167 (2008)..............................................................26

x

Stephen A. Broome, *An Unconscionable Application of the Unconscionability Doctrine: How the California Courts are Circumventing the Federal Arbitration Act*, 3 Hastings Bus. L.J. 39 (2006) .....23

Theodore Eisenberg & Elizabeth Hill, *Arbitration and Litigation of Employment Claims: An Empirical Comparison*, 48 Dispute Resolution J. 44 (Nov. 2003-Jan. 2004) ..............................25, 26

U.S. Census Bureau, http://quickfacts.census.gov/qfd/states/06000.html (last visited June 10, 2015) .................................25

1

## INTRODUCTION

Agreements to arbitrate can no longer be treated as the disfavored outcasts of the contract world. In *AT&T Mobility LLC v. Concepcion*, this Court held that the Federal Arbitration Act ("FAA") means exactly what it says: Agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 131 S. Ct. 1740, 1745 (2011) (quoting 9 U.S.C. § 2). The FAA preempts not only state laws that expressly disfavor arbitration agreements, but also state-law rules that purport to apply to all contracts but actually "have a disproportionate impact on arbitration agreements." *Id.* at 1747. Likewise, the FAA preempts "generally applicable contract defense[s]," that apply, in practice, "only to arbitration" or that "derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746.

In the present case, the parties agreed to arbitrate their disputes, and they further agreed that if any specific terms of the agreement were invalid, a court should simply excise the offending terms and still honor the parties' agreement. For contracts generally, California courts honor the parties' stated preference of severing invalid terms, as opposed to invalidating the entire agreement. They take a very pro-contract-enforcement stance, severing unconscionable or invalid terms unless doing so would be impossible without rewriting the agreement or unless the core purpose of the agreement is illegal. Quite a different rule applies, however, for agreements to arbitrate. California courts show a clear preference against enforcing an agreement to arbitrate. They hold that the existence

of more than one invalid provision can be read by a court to automatically indicate that the stronger party sought to use arbitration not simply as an alternative to litigation, but as a tool to steamroll the weaker party.  The court can therefore refuse severance and, instead, simply invalidate the entire agreement to arbitrate.

This arbitration-only anti-severance rule persists despite this Court's holding that the FAA preempts state-law contract defenses that "have a disproportionate impact on arbitration agreements," or that apply, in practice, "only to arbitration." *Id.* at 1746-47. In refusing to hold the California rule preempted, the Ninth Circuit majority ignored binding precedent from this Court and brought itself into conflict with at least four other courts of appeals.

This is not a one-time problem. California courts routinely display the flagrant hostility to arbitration that the FAA was designed to end. The Ninth Circuit routinely allows this to occur. And the severability issue presented here arises literally every time a court finds one or more provisions of an arbitration agreement to be invalid under California law. This Court's review is necessary to resolve the split of authority and to uphold the supremacy of federal law. The petition should be granted.

## OPINIONS BELOW

The district court's opinion (Pet. App. 12a-30a) is published at 936 F. Supp. 2d 1145. The Ninth Circuit's divided panel decision (Pet. App. 1a-11a) is not published in the *Federal Reporter*, but is available at

3

2014 WL 7174222 (Dec. 17, 2014). The Ninth Circuit's order denying rehearing en banc (Pet. App. 31a) is unpublished.

## JURISDICTION

The Ninth Circuit denied rehearing and rehearing en banc on February 9, 2015. Pet. App. 31a. Subsequently, Justice Kennedy extended the time for filing a petition for a writ of certiorari to June 10, 2015. This Court has jurisdiction pursuant to 28 U.S.C. § 1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The Supremacy Clause of the Constitution, Art. VI, Cl. 2, provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Section 2 of the Federal Arbitration Act ("FAA") provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract

4

> or transaction, or the refusal to perform
> the whole or any part thereof, or an
> agreement in writing to submit to
> arbitration an existing controversy
> arising out of such a contract,
> transaction, or refusal, shall be valid,
> irrevocable, and enforceable, save upon
> such grounds as exist at law or in
> equity for the revocation of any
> contract.

9 U.S.C. § 2.

## STATEMENT OF THE CASE

### *Respondents Join Petitioners' Military Consulting Program.*

Petitioners are military contractors. They partner with the U.S. Department of Defense to provide military service members and their families access to a global network of highly experienced, licensed consultants who offer confidential life-skills counseling. ER 449.[1] These consultants offer short-term, non-medical, financial, child services, and victim-advocacy counseling at U.S. military installations around the world. Pet. App. 12a-13a. The consultants are independent, highly trained professionals. To qualify, applicants must hold graduate degrees and professional licenses that require advanced training. ER 449. Respondents Thomas Zaborowski and Vanessa Baldini

---

[1] "ER" refers to the Excerpts of Record filed with the Ninth Circuit.

5

joined Petitioners' network as consultants.  Pet. App. 12a.

### Respondents Enter Into An Arbitration Agreement With Petitioners.

Prior to joining Petitioners' network, Zaborowski and Baldini reviewed and signed a contract called a Provider Services Task Order Agreement. *Id.* at 33a-60a. As part of this contract, both agreed to arbitrate any disputes. Captioned "**<u>Mandatory Arbitration</u>**" in bold underlined text, and written in the same typeface and typesize as the rest of the contract, the arbitration clause provides, in full:

> **<u>Mandatory Arbitration</u>**. The parties agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement. Such negotiation shall be a condition precedent to the filing of any arbitration demand by either party. The parties agree that any controversy or claim arising out of or relating to this Agreement … or breach thereof, whether involving a claim in tort, contract or otherwise, shall be settled by final and binding arbitration in accordance with the provisions of the American Arbitration Association. The parties waive their right to a jury or court trial. The arbitration shall be conducted in San Francisco, California. A single, neutral arbitrator who is licensed to practice law shall conduct

6

the arbitration. The complaining party serving a written demand for arbitration upon the other party initiates these arbitration proceedings. The written demand shall contain a detailed statement of the matter and facts supporting the demand and include copies of all related documents. MHN shall provide Provider with a list of three neutral arbitrators from which Provider shall select its choice of arbitrator for the arbitration. Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. At least thirty (30) days before the arbitration, the parties must exchange lists of witnesses, including any experts (one each for MHN and Provider), and copies of all exhibits to be used at the arbitration. Arbitration must be initiated within 6 months after the alleged controversy or claim occurred by submitting a written demand to the other party. The failure to initiate arbitration within that period constitutes an absolute bar to the institution of any proceedings. Judgement upon the award rendered by the arbitrator may be entered in any court having competent jurisdiction. The decision of the arbitrator shall be final and binding. The arbitrator shall have no authority to make material

7

errors of law or to award punitive damages or to add to, modify or refuse to enforce any agreements between the parties. The arbitrator shall make findings of fact and conclusions of law and shall have no authority to make any award that could not have been made by a court of law. The prevailing party, or substantially prevailing party's costs of arbitration, are to be borne by the other party, including reasonable attorney's fees.

*Id.* at 56a-57a.

Additionally, the contract contains an express severability clause. This term is captioned "**Severability**" and, like the various provisions in the arbitration clause, is written in the same typeface and typesize as the rest of the contract. Pet. App. 54a. It provides that if "any provision of this Agreement is rendered invalid or unenforceable … the remaining provisions of this Agreement shall remain in full force and effect." *Id.*

***The District Court Permits Respondents To Ignore Their Arbitration Agreement And File A Putative Class-Action Lawsuit Against Petitioners.***

Despite the "**Mandatory Arbitration**" provision, Respondents filed a putative class-action lawsuit in district court against Petitioners, alleging violations of the Fair Labor Standards Act. ER 52-104. Consistent with the Agreement, Petitioners

8

moved to compel arbitration. ER 417. Respondents opposed. ER 267. Applying California law, the district court concluded that multiple terms in the arbitration agreement were unconscionable. Pet. App. 17a-28a.

Though Respondents did not challenge the agreement's severability clause, the district court ignored the clause and refused to sever the purportedly unconscionable provisions. The district court observed that, under California law, a court may decline a request to sever a contract only when the contract "is permeated by unconscionability." *Id.* at 29a (internal quotation marks omitted). The court, however, went on to hold that when the contract at issue is an arbitration agreement, "[t]he finding of 'multiple unlawful provisions' allows a trial court to conclude that 'the arbitration agreement is permeated by an unlawful purpose'" and to deny severance. *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 697 (Cal. 2000)). The court thus invalidated the entire arbitration agreement. *Id.* at 30a.

### *A Divided Ninth Circuit Panel Affirms.*

A divided panel of the Ninth Circuit affirmed. The majority of the panel agreed that multiple provisions of the arbitration agreement were unconscionable. *Id.* at 2a-4a. It also upheld the district court's denial of severance. Like the district court, the panel majority relied on a California case that held: "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision …. Such multiple defects indicate a systematic effort to impose arbitration … not simply as an alternative to litigation, but as an inferior forum that

9

works to the [stronger party's] advantage." *Samaniego v. Empire Today, LLC*, 140 Cal. Rptr. 3d 492, 501 (Cal. Ct. App. 2012) (alteration in original), *cited in* Pet. App. 5a.

Moreover, the panel majority rejected "MHN's preemption arguments as foreclosed by" Ninth Circuit precedent, and held that the severability analysis was not "impermissibly unfavorable to arbitration." Pet. App. 5a-6a (citing *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 926-27 (9th Cir. 2013)).

Judge Gould dissented. He noted that two provisions "are arguably not unconscionable and apparently entered into in good faith." *Id.* at 10a, n.1. In any event, Judge Gould would have held that "[t]he reasoning in *Armendariz* [*v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 697 (Cal. 2000)] that multiple unconscionable provisions will render an arbitration agreement's purpose unlawful has 'a disproportionate impact on arbitration agreements' and should have been preempted." *Id.* at 8a (quoting *Concepcion*, 131 S. Ct. at 1747).

According to Judge Gould, "*Concepcion* and its progeny should create a presumption in favor of severance when an arbitration agreement contains a relatively small number of unconscionable provisions that can be meaningfully severed and after severing the unconscionable provisions, the arbitration agreement can still be enforced." *Id.* Applying the appropriate and arbitration-neutral test, Judge Gould found that severance should have been granted, and Respondents held to their basic promise to arbitrate rather than litigate. Judge Gould even included a

10

redline mark-up of the arbitration agreement, *id.* at 8a-10a, demonstrating graphically that "if all the unconscionable provisions of the arbitration agreement, as determined by the district court and affirmed by th[e] panel, were severed … the remainder of the arbitration agreement can still be enforced, and the district court need not assume the role of contract author." *Id.* at 8a (internal quotation marks omitted).

Over Judge Gould's vote to rehear the case en banc, the Ninth Circuit denied further review. *Id.* at 31a.

## REASONS FOR GRANTING THE PETITION

California applies one severability rule to contracts in general, favoring contract enforcement and severing invalid terms whenever possible. And the State improperly applies a distinct rule to agreements to arbitrate—a rule favoring the nonenforcement of such agreements. The Ninth Circuit's decision here upholding that rule is contrary to binding precedents from this Court construing the FAA, creates conflicts among the courts of appeals, and plainly warrants this Court's review.

## I.   California's Arbitration-Only Anti-Severance Rule Is Preempted By The FAA.

### A.   The FAA preempts state laws that discriminate against arbitration.

The FAA was enacted "in response to widespread judicial hostility to arbitration agreements," and "was

11

designed to promote arbitration." *Concepcion*, 131 S. Ct. at 1745, 1749. The Act reflects "both a 'liberal federal policy favoring arbitration' and the "fundamental principle that arbitration is a matter of contract."' *Id.* at 1745 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). In accord with the FAA's central mandate, courts must treat arbitration agreements "on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citation omitted).

States must at all times maintain "a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). While state courts may declare arbitration agreements unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, state law rules purporting to apply to all contracts are preempted by the FAA when they "have a disproportionate impact on arbitration agreements." *Concepcion*, 131 S. Ct. at 1747. So, too, when a "generally applicable contract defense," applies, in practice, "only to arbitration" or "derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746.

Though *Concepcion* provides the most recent word from this Court explaining the FAA's broad preemptive force, it is far from the Court's only such pronouncement. The Court has repeatedly emphasized that the FAA preempts state-law defenses that single out or otherwise burden arbitration agreements more than any other contract. *See, e.g., Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203-

12

04 (2012); *Rent-A-Center*, 561 U.S. at 67-68; *Preston v. Ferrer*, 552 U.S. 346, 356 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687-88 & n.3 (1996); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-71 (1995); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Southland Corp. v. Keating*, 465 U.S. 1, 16 & n.11 (1984).

### B. For contracts generally, California law takes a very liberal view of severability.

Like the laws of most states, California law, generally, expresses an overwhelming preference for contract enforcement. California law generally prohibits a court from voiding a contract unless the entire purpose of the contract is unlawful. If there are contract provisions that are deemed unlawful or unconscionable, it usually requires the court to sever the offending clauses and enforce the remainder. This rule is codified by statute: "Where a contract has but a single object, and such object is unlawful … the entire contract is void." Cal. Civil Code § 1598. However, "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civil Code § 1599; *see also* Cal. Civil Code § 1670.5 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of

13

any unconscionable clause as to avoid any uncon-
scionable result.").

California courts have noted that the preference
for severance applies even "when the parties have
contracted, in part, for something illegal." *Marathon
Entm't, Inc. v. Blasi*, 174 P.3d 741, 750 (Cal. 2008).
"Notwithstanding any such illegality," the California
rule, "preserves and enforces any lawful portion of a
parties' contract that feasibly may be severed." *Id.* at
750-51.

In deciding whether to sever, courts "look to the
various purposes of the contract." *Id.* at 754. "If the
illegality is collateral to the main purpose of the con-
tract, and the illegal provision can be extirpated from
the contract by means of severance or restriction, then
such severance and restriction are appropriate." *Id.*
(citation omitted). Only "[i]f the court is unable to dis-
tinguish between the lawful and unlawful parts of the
agreement" may the court invalidate the entire con-
tract. *Birbower, Montalbano, Condon & Frank v. Su-
per. Ct.*, 949 P.2d 1, 12 (Cal. 1998). That is, severance
is appropriate unless "the central purpose of the con-
tract is tainted with illegality." *Marathon*, 174 P.3d at
754 (citation omitted).

The severability inquiry is "equitable and fact
specific," and requires "case-by-case consideration."
*Id.* at 755. Moreover, outside of the arbitration con-
text, "California cases take a very liberal view of sev-
erability, enforcing valid parts of an apparently
indivisible contract where the interests of justice or
the policy of the law would be furthered." *In re Mar-
riage of Facter*, 152 Cal. Rptr. 3d 79, 95 (Cal. Ct. App.

14

2013) (quoting *Adair v. Stockton Unified Sch. Dist.*, 77 Cal. Rptr. 3d 62, 73 (Cal. Ct. App. 2008)).

### C. For agreements to arbitrate, California law applies a different rule, disfavoring severance.

In stark contrast, California courts have long applied a different rule, favoring the nonenforcement of agreements to arbitrate. In *Armendariz*, "the California Supreme Court held that more than one unlawful provision in an arbitration agreement weighs against severance." *Fitz v. NCR Corp.*, 13 Cal. Rptr. 3d 88, 106 (Cal. Ct. App. 2004). As the California Supreme Court explained, where an "arbitration agreement contains more than one unlawful provision," that by itself "indicate[s] a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz*, 6 P.3d at 696-97. A court may therefore determine that an arbitration agreement is "permeated by an unlawful purpose" based on the mere existence of two or more unconscionable provisions, and simply refuse to enforce it. *Id.* at 697.

*Armendariz's* arbitration-only anti-severance rule was applied here and continues to reign in California courts, notwithstanding this Court's most recent explanation of the preemptive force of the FAA in *Conception*. *See, e.g.*, *Carmona v. Lincoln Millennium Car Wash, Inc.*, 171 Cal. Rptr. 3d 42, 55 (Cal. Ct. App. 2014) ("When an arbitration agreement contains multiple unconscionable provisions, '[s]uch multiple defects indicate a systematic effort to impose arbitration

15

on an employee not simply as an alternative to litiga-
tion, but as an inferior forum that works to the em-
ployer's advantage.' Under such circumstances, a trial
court does not abuse its discretion in determining the
arbitration agreement is permeated by an unlawful
purpose." (quoting *Armendariz*, 6 P.3d at 697)). It en-
dures even in cases in which the defendant has ar-
gued that *Concepcion* stands for the proposition that
the FAA preempts state-law rules that disfavor arbi-
tration. *See Samaniego*, 140 Cal. Rptr. 3d at 501 (ap-
plying      the      *Armendariz*      arbitration-only      anti-
severance rule even where appellant argued that *Con-
cepcion* preempted each "unconscionability-based ra-
tionale that supported the trial court's refusal to
compel arbitration" (internal quotation marks omit-
ted)).

And it persists even in cases such as this one,
where the parties agree to a severability clause ex-
pressing their clear intent to have the agreement en-
forced with any invalid terms excised. *See, e.g.*,
*Parada v. Super. Ct.*, 98 Cal. Rptr. 3d 743, 753, 768-
70 (Cal. Ct. App. 2009) (applying the *Armendariz* ar-
bitration-only anti-severance rule even despite the ex-
istence of a severability clause providing "[i]n the
event that any provision of this Agreement shall be
determined by a trier of fact of competent jurisdiction
to be unenforceable … the remainder of this Agree-
ment shall remain binding upon the parties as if such
provision was not contained herein").

Whereas in arbitration agreements, more than
one unconscionable provision automatically "indi-
cate[s] a systematic effort to impose arbitration on [a
weaker party] … as an inferior forum that works to

16

the [stronger party's] advantage," *Armendariz*, 6 P.3d at 697, and allows a court, without further inquiry, to decline to sever the two unconscionable provisions, no comparable rule exists for "other contracts." Instead, when it comes to contracts in general, "California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered." *In re Marriage of Facter*, 152 Cal. Rptr. 3d at 95 (citation omitted). Thus, California courts improperly apply a harsher standard—favoring nonenforcement—"only to arbitration" agreements, that they do not apply to "other contracts," *Concepcion*, 131 S. Ct. at 1745-46.

## II.  The Ninth Circuit's Contrary Holding Conflicts With This Court's Precedents And Decisions Of Other Circuits.

### A.  The Ninth Circuit's holding conflicts with this Court's FAA precedents.

The California court-created special rule disfavoring agreements to arbitrate cannot stand in light of the FAA. *See id.* at 1745-46. As Judge Gould noted, "[t]he reasoning in *Armendariz* that multiple unconscionable provisions will render an arbitration agreement's purpose unlawful," so as to presumptively justify refusal to sever, "has 'a disproportionate impact on arbitration agreements' and should have been preempted by the [FAA]." Pet. App. 8a (quoting *Concepcion*, 131 S. Ct. at 1747). In fact, the rule applies only to agreements to arbitrate, not to all contracts.

17

The Ninth Circuit majority's rejection of Petitioners' "preemption arguments" as foreclosed by Ninth Circuit precedent, and its insistence that its analysis was not "impermissibly unfavorable to arbitration," Pet. App. 5a-6a, thus conflicts with this Court's precedents. This Court has unambiguously held that the FAA preempts state law rules purporting to apply to all contracts when they "have a disproportionate impact on arbitration agreements," or when a "generally applicable contract defense" applies, in practice, "only to arbitration," or "derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746-47; *see supra*, § I.A. Here, California's arbitration-only anti-severance rule both applies only to agreements to arbitrate, and "derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." *Id.* As earlier noted (at § I.B.), there is simply no comparable rule for contracts generally that more than one unconscionable or illegal provision automatically indicates an intent to steamroll the weaker party and thus allows a court to refuse severance.

Judge Gould was thus correct in concluding that "the district court's decision not to sever the unconscionable provisions of the arbitration agreement relying on *Armendariz* is … based on an erroneous interpretation and an inaccurate view of *Concepcion* and the FAA." Pet. App. 11a. The *Armendariz* arbitration-only anti-severance rule is impossible to reconcile both with the text of the FAA and with this Court's precedents construing the FAA.

18

## B.    The Ninth Circuit's holding conflicts with decisions of other courts of appeals.

The Ninth Circuit's ruling not only conflicts with the FAA's clear mandate and this Court's precedents, it also puts the Ninth Circuit squarely in conflict with at least four other courts of appeals.

First, the Ninth Circuit's decision directly conflicts with the Seventh Circuit as to whether California may enforce rules that "treat[] arbitration differently." *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491-92 (7th Cir. 2004). In *Oblix*, the employee argued that the arbitration clause in her employment agreement was unconscionable under *Armendariz*, because it did not meet the "special requirements" for arbitration clauses established in that case. *Id.* at 492. The Seventh Circuit held that even if *Armendariz* did create "special hurdles for arbitration agreements," it was "irrelevant" whether the arbitration clause at issue met them, because the Supreme Court of California had no power to "apply to arbitration … any novel rule." *Id.* On the contrary, "if a state treats arbitration differently, and imposes on form arbitration clauses more or different requirements from those imposed on other [form] clauses, then its approach is preempted by" the FAA. *Id.* Thus, according to the Seventh Circuit, any portion of *Armendariz* that creates "special hurdles for arbitration agreements," is squarely preempted by the FAA. *Id.*

*Armendariz's* arbitration-only anti-severance rule is a "special hurdle[] for arbitration agreements," *id.*

19

Thus, had this case been litigated in the Seventh Circuit, the rule would have been preempted by the FAA. This Court should grant review to address this direct conflict and determine whether the "Supreme Court of California … [can] treat arbitration less favorably than other promises in form contracts," *Oblix, Inc.*, 374 F.3d at 492, as the Ninth Circuit has held, or whether such differential treatment is preempted by the FAA, as the Seventh Circuit has held.

Second, the application of California's arbitration-only rule even despite the express severability clause in Petitioners' contract conflicts with opinions of at least three other circuits.

As earlier noted (at 7), the parties in this case expressly agreed that any invalid terms of the contract would be severed. Captioned "Severability," the provision explicitly provides that if "any provision of this Agreement is rendered invalid or unenforceable … the remaining provisions of this Agreement shall remain in full force and effect." Pet. App. 54a. Respondents have never challenged this clause. Yet the Ninth Circuit majority failed to honor it or even give it any weight. California courts do the same, applying the arbitration-only anti-severance rule even to contracts that contain express severability clauses. *See, e.g.*, *Parada*, 98 Cal. Rptr. 3d at 753, 768-70. This conflicts with the holdings of at least three other courts of appeals.

The FAA reflects "a liberal federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Thus, "in applying general state-law principles" of

20

contract enforcement to the enforcement of an arbitration agreement under the FAA, "due regard must be given to the federal policy favoring arbitration." *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475-76 (1989). The FAA also recognizes that agreements to arbitrate are a matter of contract, and requires courts to enforce them "according to their terms." *Concepcion*, 131 S. Ct. at 1745. In cases in which the parties have expressly agreed to sever any invalid or unenforceable clause, severing not only respects the agreement of the parties but also recognizes the strong federal policy favoring enforcing arbitration agreements "according to their terms."

The Sixth Circuit has thus held that, "when the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003). To the contrary: "[W]hen [an] agreement includes [a] severability provision, [the] intent of the parties and [federal] policy in favor of arbitration dictate" that the remainder of the agreement be enforced. *Id.* This is especially so given the FAA's mandate to "resolve any doubts as to arbitrability in favor of arbitration." *Id.*

The Eighth Circuit agrees, noting that "'[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce agreements to arbitrate.'" *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682 (8th Cir. 2001) (quoting *Mitsubishi Motors Corp. v. Soler*

21

*Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985)). Therefore, not only do the parties' intentions, as expressed in a severability clause, control, but "those intentions are generously construed as to issues of arbitrability." *Id.* (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626). Courts that ignore severability clauses and "hold entire arbitration agreements unenforceable … represent the antithesis of the 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

The D.C. Circuit reasoned similarly in *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77 (D.C. Cir. 2005) (Roberts, J.). The court noted that enforcing a severability clause not only "honor[s] the intent of the parties reflected in the … agreement," but also is "faithful to the federal policy which 'requires that we rigorously enforce agreements to arbitrate.'" *Id.* at 85-86 (quoting *Mitsubishi Motors*, 473 U.S. at 626)).

Unlike the Ninth Circuit and the California courts, these three courts of appeals recognize that enforcing a contractual severability clause not only respects the parties' contractual agreement, but also adheres to the liberal federal policy favoring arbitration. In practical terms, that means severability clauses are generally enforced if a party moves to compel arbitration in Washington, DC, Michigan, Ohio, Missouri or Minnesota. But that same severability clause will generally be ignored if the same party moves to compel arbitration, under the same agreement, in California. This Court should grant review to resolve this conflict.

22

### III.   This Is An Issue Of Exceptional Importance That Warrants This Court's Immediate Intervention.

Review of the decision below is critical to stem the California state courts' ongoing effort to "'chip[] away at' [this Court's] precedents broadly construing the scope of the FAA …, despite [this Court's] admonition against doing so." *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 999 (Cal. 2003) (Brown, J., concurring and dissenting) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122 (2001)).

The California arbitration-specific severance rule illustrates a troubling pattern. Time and again, California courts have imposed conditions on the enforcement of arbitration agreements that reflect ongoing and repeated hostility towards arbitration. *See, e.g.*, *Broughton v. Cigna Healthplans of Cal.*, 988 P.2d 67 (Cal. 1999) (categorically prohibiting arbitration of claims for injunctive relief under California's Consumers Legal Remedies Act); *Cruz v. PacifiCare Health Sys., Inc.*, 66 P.3d 1157 (Cal. 2003) (extending *Broughton* to prohibit arbitration of claims for injunctive relief under California's unfair competition and misleading advertising laws); *Little*, 63 P.3d at 990 (holding that a common law claim for wrongful termination in violation of public policy is only arbitrable where the arbitration guarantees "availability of damages remedies equal to those available … in court, including punitive damages; discovery sufficient to adequately arbitrate [the] claims; a written arbitration decision and judicial review sufficient to ensure that arbitrators have complied with the law …; and allocation of arbitration costs so that they will

not unduly burden the employee"); *Ferrer v. Preston*, 51 Cal. Rptr. 3d 628, 634 (Cal. Ct. App. 2007) (refusing to enforce arbitration agreement for "controversies colorably arising under [California's] Talent Agencies Act"), *rev'd*, 552 U.S. 346 (2008); *Sonic-Calabasas A, Inc. v. Moreno*, 247 P.3d 130 (Cal. 2011) (invalidating, as contrary to public policy, arbitration agreement that waived certain administrative hearings before the California Labor Commissioner), *vacated*, 132 S. Ct. 496 (2011) (mem.); *see also* Stephen A. Broome, *An Unconscionable Application of the Unconscionability Doctrine: How the California Courts are Circumventing the Federal Arbitration Act*, 3 Hastings Bus. L.J. 39, 54, 66 (2006).

This Court's intervention is again required to address California's hostility to arbitration agreements.[2] Even after *Concepcion*, California law

---

[2] *See DIRECTV, Inc. v. Imburgia*, No. 14-462 (granting cert to determine whether the California Court of Appeal erred by holding that a reference to state law in an arbitration agreement governed by the FAA requires the application of state law preempted by the FAA); *Sonic-Calabasas A, Inc. v. Moreno*, 132 S. Ct. 496 (2011) (vacating California Supreme Court decision for further consideration in light of *Concepcion*); *Concepcion*, 131 S. Ct. at 1751 (reversing Ninth Circuit); *Preston*, 552 U.S. 346 (reversing California Court of Appeal and holding that FAA preempts California law lodging primary jurisdiction in administrative forum); *Perry*, 482 U.S. 483 (reversing California Court of Appeal and holding that FAA preempts provision of California Labor Law stating that wage collection actions could be maintained even despite an agreement to arbitrate); *Southland Corp.*, 465 U.S. 1 (reversing California Supreme Court and holding that FAA preempts provision of California Franchise Investment Law requiring judicial consideration of claims).

24

continues to display the type of hostility toward arbitration agreements that the FAA was designed to end. *See, e.g., Brown v. Super. Ct.*, 157 Cal. Rptr. 3d 779, 781 (Cal. Ct. App. 2013) (holding that claim under Private Attorneys General Act of 2004 is not subject to arbitration because it "is necessarily a representative action intended to advance a predominantly public purpose"), *vacated for reconsideration in light of Iskanian v. CLS Transp. of L.A.*, 327 P.3d 129 (2014), *by* 331 P.3d 1274 (2014); *James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020, 1036-37 (S.D. Tex. 2012) (concluding that, even after *Concepcion*, California courts continue to find arbitration forum-selection clauses unenforceable under a far more stringent test than that applicable to "forum-selection clauses outside of the arbitration context").

This Court's intervention on the severance issue is particularly important. Severance arises in literally every arbitration case in which one or more provisions is found to be unconscionable. And the sheer breadth of arbitration in today's business world makes that universe even larger still. As this Court is well aware, arbitration clauses appear in a dizzying array of contracts involving a myriad of goods and services.[3]

---

[3] *See, e.g., Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan agreement); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) (commercial construction debt restructuring agreement); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (employment agreement); *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79 (2000) (mobile-home financing and insurance agreement); *Wright v. Universal Mar. Serv. Corp.*, 525

25

Focusing specifically on employment agreements, the California arbitration-only severance rule, if left unreviewed, will continue to undermine the benefits of arbitration for a large number of employment disputes like the one at issue in this case. California, the country's most populous State, accounted for more than 11 percent of U.S. private-sector employees in 2012. *See* U.S. Census Bureau, http://quickfacts.census.gov/qfd/states/06000.html (last visited June 10, 2015) (showing that California had 13,401,863 private nonfarm employees out of 118,266,253 nationwide). And arbitration agreements in employment are widespread. *See, e.g.*, Theodore Eisenberg & Elizabeth Hill, *Arbitration and Litigation of Employment Claims: An Empirical Comparison*, 48 Dispute Resolution J. 44 (Nov. 2003-Jan. 2004) (noting the "massive," "well documented" increase in the use of employment arbitration agreements).

Like arbitration generally, employment arbitration benefits both employees and employers because it provides faster and more cost-effective dispute resolution. *See, e.g.*, Mark Fellows, *The Same Result As*

---

U.S. 70 (1998) (longshoremen's collective bargaining agreement); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) (securities brokerage account agreement); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995) (termite control contract); *Gilmer,* 500 U.S. 20 (registered securities representative registration/employment agreement); *Volt Info. Sci.,* 489 U.S. 468 (construction contract); *Mitsubishi Motors Corp.*, 473 U.S. 614 (automobile manufacturer distribution and sales agreement); *Gen. Atomic Co. v. Felter*, 436 U.S. 493 (1978) (uranium supply agreement); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) (paint manufacturing and sales consulting agreement).

26

*In Court, More Efficiently: Comparing Arbitration And Court Litigation Outcomes*, Metro. Corp. Couns., July 2006, at 32, *available at* http://www.metrocorpcounsel.com/articles/6988/same-result-court-more-efficiently-comparing-arbitration-and-court-litigation-outcomes. Empirical studies have shown that arbitration of employment disputes yields results comparable to litigation, but in less time and at lower cost. *See, e.g.*, Eisenberg & Hill at 45 (finding no statistically significant differences between arbitration and trial outcomes with regard to employee win rates or median or mean award levels for "higher paid employees" bringing "non-civil-rights-employment claims"); Michael H. LeRoy & Peter Feuille, *Happily Never After: When Final And Binding Arbitration Has No Fairy Tale Ending*, 13 Harv. Negot. L. Rev. 167, 184 (2008) (citing study showing that "[e]mployees won more often in arbitration than similar plaintiffs in court"); Lewis Maltby, *Employment Arbitration: Is It Really Second Class Justice?* 6 Disp. Resol. Mag. 23, 24 (1999) (article by the director of the ACLU's National Task Force on Civil Liberties in the Workplace finding that "far more employees win in arbitration than in court, and, overall, employees who take their disputes to arbitration collect more than those who go to court").

The California arbitration-specific severance rule that the Ninth Circuit majority held not preempted by the FAA increases the likelihood that these basic benefits will be thrown away in any given case. After all, the rule allows courts to invalidate an entire arbitration agreement simply upon a showing that it contains more than one unconscionable provision, because "multiple defects indicate a systematic effort

27

to impose arbitration … not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage." *Armendariz*, 6 P.3d at 697. No similar rule applies to "any contract." This Court should grant certiorari and hold the California arbitration-only severability rule preempted by the FAA.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

Timothy J. Long
Lauri A. Damrell
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
400 Capitol Mall
Suite 3000
Sacramento, CA 95814

Robert M. Loeb
   *Counsel of Record*
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
Columbia Center
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400
rloeb@orrick.com

Rachel Wainer Apter
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

June 10, 2015

1a

## APPENDIX A

## NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

[FILED DEC 17 2014 MOLLY C. DWYER, CLERK U.S. COURT OF APPEALS]

| | |
|---|---|
| THOMAS ZABOROWSKI; VANESSA BALDINI; KIM DALE; NANCY PADDOCK; MARIA HOWARD; TIM PLATT, on behalf of themselves and all others similarly situated, | No. 13-15671<br><br>D.C. No. 3:12-cv-05109-SI<br><br>MEMORANDUM* |
| Plantiffs - Appellees | |
| v. | |
| MHN GOVERNMENT SERVICES, INC.; MANAGED HEALTH NETWORK, INC., | |
| Defendants- Appellants | |

―――――――――――――――――

*This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

2a

Appeal from the United States Court for
the Northern District of California Susan
Illston, Senior District Judge, Presiding

Argued and Submitted November 18,
2014 San Francisco, California

Before: GOULD and WATFORD, Circuit Judges, and
MARTINEZ, District Judge.**

MHN Government Services, Inc. (MHN) appeals
from the district court's order denying its motion to
compel arbitration. We affirm.

**1.** The district court correctly held that the
arbitration provision is procedurally unconscionable.
*See Chavarria v. Ralph's Grocery Co.,* 733 F.3d 916,
922–23 (9th Cir. 2013). The district court found that
MHN was in a superior bargaining position, the
arbitration provision was a condition of employment,
and plaintiffs were not given a meaningful
opportunity to negotiate. These findings are not
clearly erroneous, and they support the conclusion
that the contract is oppressive. *See Ellis v. McKinnon
Broad. Co.,* 23 Cal. Rptr. 2d 80, 83 (Ct. App. 1993)
(defining oppression as the absence of real negotiation
and meaningful choice resulting from inequality of
bargaining power). Contrary to MHN's contention, the
contract's modification provision did not invite
negotiation, and California law does not require
plaintiffs to have attempted to negotiate in order to

---

** The Honorable Ricardo S. Martinez, District Judge for
U.S. District Court for the Western District of Washington,
sitting by designation.

3a

show oppression. *See, e.g., Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101, 1106–07 (9th Cir. 2003); *A&M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 125 (Ct. App. 1982).

**2**. The district court also correctly held that multiple aspects of the arbitration provision are substantively unconscionable.

First, the arbitrator-selection clause is substantively unconscionable. *See Chavarria*, 733 F.3d at 923–26. The clause gives MHN the power to control arbitrator candidates so long as those arbitrators are licensed to practice law and are purportedly "neutral." Granting MHN near-unfettered discretion to select its three preferred arbitrators is "unjustifiably one-sided," *Chavarria*, 733 F.3d at 923, and unreasonably reallocates risks to the weaker bargaining party. *Samaniego v. Empire Today LLC*, 140 Cal. Rptr. 3d 492, 497 (Ct. App. 2012).

Second, the contract's sixth-month limitations period is substantively unconscionable. California law permits contractually shortened limitations periods so long as they "provide a party sufficient time to effectively pursue a judicial remedy." *Ellis v. U.S. Sec. Assocs.*, 169 Cal. Rptr. 3d 752, 757 (Ct. App. 2014) (internal quotation marks omitted). The district court correctly noted that violations of labor laws are not discovered overnight: It takes time to recognize the violation, investigate it, and file a claim. Given the nature of plaintiffs' claims, the sixth-month limitations period works as a "practical abrogation of

4a

the right of action." *Ellis*, 169 Cal. Rptr. 3d at 757 (internal quotation marks omitted).

Third, the costs-and-fee-shifting clause is substantively unconscionable. The clause awards fees and costs to the "prevailing party, or substantially prevailing party[]," which means that even if plaintiffs prevail on some of their claims but not all, they may still be required to pay MHN's attorney's fees and costs. This provision is contrary to the applicable statutory cost-shifting regimes provided by California and federal law, which entitle only the prevailing plaintiff to an award of costs and fees. *See* 29 U.S.C. § 216(b); Cal. Lab. Code § 1194(a). "There is no justification to ignore a [statutory] cost-shifting provision, except to impose upon the employee a potentially prohibitive obstacle to having her claim heard." *Chavarria*, 733 F.3d at 925. The costs-and-fee-shifting clause results in an "unreasonable" and "unexpected" allocation of risks. *Samaniego*, 140 Cal. Rptr. 3d at 497. Its effect is to chill employees from seeking vindication of their statutory rights by pursuing claims in arbitration.

Finally, we agree with the district court that, to at least a limited degree, the filing fees and punitive damages waiver are substantively unconscionable. The $2600 filing fee imposed by the commercial arbitration rules hampers one party—the employee— much more than the other. Likewise, the punitive damages waiver "improperly proscribes available statutory remedies" afforded to plaintiffs bringing employment claims. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003).

5a

**3.** The district court did not abuse its discretion by declining to sever the unconscionable portions of the arbitration provision. *See* Cal. Civ. Code § 1670.5(a); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005–06 (9th Cir. 2010) (holding that the district court did not abuse its discretion in refusing to enforce an unconscionable arbitration clause in its entirety). Although the Federal Arbitration Act expresses a strong preference for the enforcement of arbitration agreements, the Act does not license a party with superior bargaining power "to stack the deck unconscionably in [its] favor" when drafting the terms of an arbitration agreement. *Ingle*, 328 F.3d at 1180. Under generally applicable severance principles, California courts refuse to sever when multiple provisions of the contract permeate the entire agreement with unconscionability. *See Samaniego*, 140 Cal. Rptr. 3d at 1149. The district court found that to be the case here, because striking the five unconscionable clauses would require it to "assume the role of contract author rather than interpreter." *Ingle*, 328 F.3d at 1180. While we may have reached a different conclusion on that score had we been conducting the analysis in the first instance, we cannot say that the district court's determination is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

**4.** We reject MHN's preemption arguments as foreclosed by recent case law. *See Chavarria*, 733 F.3d at 926–27. *Chavarria* applied the same general principles of California unconscionability law we have applied here. Application of those principles does not

6a

result in an analysis that is impermissibly unfavorable to arbitration.

**AFFIRMED.**

7a

## APPENDIX B

[FILED DEC 17 2014 MOLLY C. DWYER, CLERK U.S. COURT OF APPEALS]

*Zaborowski v. MHN Government Services, Inc.,* No. 13-15671

GOULD, Circuit Judge, concurring in part, and dissenting in part:

I concur in paragraphs 1 and 2 of the memorandum disposition but dissent from the majority's conclusion in paragraphs 3 and 4 of the memorandum disposition that the district court did not abuse its discretion in not severing the unconscionable provisions of the arbitration agreement. I would reverse the district court on this issue, requiring severance and leaving the arbitration agreement in place.

A district court abuses its discretion when it erroneously interprets a law, *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9th Cir. 1994), or when it rests its decision on an inaccurate view of the law, *Richard S. v. Dep't of Dev. Servs.*, 317 F.3d 1080, 1085–86 (9th Cir. 2003). In determining whether to sever the unconscionable provisions of the arbitration agreement, the district court relied on a California state court decision holding that "multiple unlawful provisions" allow a trial court to conclude that "the arbitration agreement is permeated by an unlawful purpose." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 697 (Cal. 2000).

8a

But *Armendariz* was decided more than a decade before the Supreme Court's decision *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011). The United States Supreme Court has vindicated a liberal federal policy favoring arbitration. The reasoning in *Armendariz* that multiple unconscionable provisions will render an arbitration agreement's purpose unlawful has "a disproportionate impact on arbitration agreements" and should have been preempted by the Federal Arbitration Act ("FAA"). *Concepcion,* 131 S. Ct. at 1747.

In my view, *Concepcion* and its progeny should create a presumption in favor of severance when an arbitration agreement contains a relatively small number of unconscionable provisions that can be meaningfully severed and after severing the unconscionable provisions, the arbitration agreement can still be enforced. *Id*.; *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) (holding that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). Here, if all the unconscionable provisions of the arbitration agreement, as determined by the district court and affirmed by this panel, were severed (as shown by the strikeouts in the paragraph below), the remainder of the arbitration agreement can still be enforced, and the district court need not "assume the role of contract author," *Ingle*, 328 F.3d at 1180:

> ***Mandatory Arbitration.*** The parties agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement. Such

9a

negotiation shall be a condition precedent to the filing of any arbitration demand by either party. The parties agree that any controversy or claim arising out of or relating to this Agreement (and any previous agreement between the parties if this Agreement supersedes such prior agreement) or breach thereof, whether involving a claim in tort, contract or otherwise, shall be settled by final and binding arbitration in accordance with the provisions of the American Arbitration Association. The parties waive their right to a jury or court trial. The arbitration shall be conducted in San Francisco, California. A single, neutral arbitrator who is licensed to practice law shall conduct the arbitration. The complaining party serving a written demand for arbitration upon the other party initiates these arbitration proceedings. The written demand shall contain a detailed statement of the matter and facts supporting the demand and include copies of all related documents. [~~MHN shall provide Provider with a list of three neutral arbitrators from which Provider shall select its choice of arbitrator for the arbitration.~~] Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. At least

10a

thirty (30) days before the arbitration, the parties must exchange lists of witnesses, including any experts (one each for MHN and Provider), and copies of all exhibits to be used at the arbitration. [~~Arbitration must be initiated within 6 months after the alleged controversy or claim occurred by submitting a written demand to the other party. The failure to initiate arbitration within that period constitutes an absolute bar to the institution of any proceedings.~~] Judgment upon the award rendered by the arbitrator may be entered in any court having competent jurisdiction. The decision of the arbitrator shall be final and binding. The arbitrator shall have no authority to make material errors of law [~~or to award punitive damages~~] or to add to, modify or refuse to enforce any agreements between the parties. The arbitrator shall make findings of fact and conclusions of law and shall have no authority to make any award that could not have been made by a court of law. [~~The prevailing party, or substantially prevailing party's costs of arbitration, are to be borne by the other party, including reasonable attorney's fees.~~][1]

---

[1] Although for purpose of illustrating severance, all unconscionable provisions of the arbitration agreement, as found by the district court and affirmed by this panel, were severed,

11a

The district court's decision not to sever the unconscionable provisions of the arbitration agreement relying on *Armendariz* is in my view based on an erroneous interpretation and an inaccurate view of *Concepcion* and the FAA. *Beltran-Gutierrez*, 19 F.3d at 1289; *Richard S.*, 317 F.3d at 1085–86. Accordingly, in my view the district court's decision not to sever the unconscionable provisions of the arbitration agreement should have been reversed, preserving to the parties their basic agreement to arbitrate disputes, and furthering the policies of the FAA as implemented in *Concepcion*. I respectfully dissent in part as to the disposition's affirmance of the district court on the severance issue.

---

some of these provisions are arguably not unconscionable and apparently entered into in good faith, such as the six-month limitations period and the punitive damages waiver provisions. The provisions to be severed constitute a relatively small portion of the arbitration agreement and should not be used to eliminate the parties' ability to arbitrate their disputes. I recognize that one can imagine an arbitration agreement where the number and content of unconscionable provisions are so pervasive that they rebut the presumption in favor of severance. If that were so, it would then be within a district court's discretion not to sever the unconscionable provisions and not to enforce the arbitration agreement. But I do not view the challenged provisions here as being sufficient to rebut a presumption in favor of severance that I urge should arise under *Concepcion* on the facts here.

12a

## APPENDIX C

### IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS ZABOROWSKI, et. al, on behalf of themselves and a putative class, | No. C 12-05109 SI |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| v. | |
| MHN GOVERNMENT SERVICES, INC. and MANAGED HEALTH NETWORK, INC., | |
| Defendants, | |

On March 15, 2013, the Court heard argument on defendants' motion to compel arbitration. Having carefully considered the arguments of counsel and the papers submitted, the motion is DENIED, for the reasons set forth below.

### BACKGROUND

Defendants hired plaintiffs to provide counseling to military service members and their families. Plaintiffs, as Military Family Life Consultants ("MFLCs" or "MFL Consultants"), provide financial counseling, child services, and

13a

victim advocacy counseling at U.S. military installations across the country and internationally. Plaintiffs have professional licenses and are rotated on short-term assignments to different locations. Plaintiffs filed this suit alleging that MHN Government Services, Inc. and Managed Health Network, Inc. (collectively "MHN") misclassified them as independent contractors, and that they should be classified as employees and entitled to overtime compensation. They assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and similar state labor laws.

The standard counseling services contract between MHN and an MFL Consultant is called a Provider Services Task Order Agreement ("Agreement"). The Agreement contains an express mandatory arbitration clause. The arbitration clause states in pertinent part:

> The parties agree that any controversy or claim arising out of or relating to this Agreement . . . or the breach thereof, whether involving a claim in tort, contract or otherwise, shall be settled by final and binding arbitration in accordance with the provisions of the American Arbitration Association. The parties waive their right to a jury or court trial.

First Amended Complaint ("FAC"), Ex. A ¶ 20. Some of the procedural rules set forth in the Agreement include: the provisions of the American Arbitration Association ("AAA") govern; the arbitration shall be conducted in San Francisco, California; the arbitrator

14a

must be licensed to practiced law; MHN shall choose three arbitrators, and the MHN Consultant shall choose one amongst them; each party may depose one individual and any opposing expert witness; arbitration must be initiated within six months of the claim's occurrence; the arbitrator may not modify or refuse to enforce any agreements; the parties may not be awarded punitive damages; and the prevailing party or substantially prevailing party's costs are borne by the other party. *Id.*

Plaintiffs argue that the arbitration clause is both procedurally and substantively unconscionable, and therefore they should not be compelled to arbitrate their claims.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall*

15a

*Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements may be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Accordingly, the Court reviews arbitration agreements in light of the "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," and therefore the Court "must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S. Ct. at 1745-46 (quotations and citations omitted).

16a

**DISCUSSION**

## I.    Unconscionable Arbitration Agreement

In *Concepcion*, the lower courts had relied on a California Supreme Court case, *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), which created a rule that prohibited as unconscionable class action waivers in arbitration agreements. The *Concepcion* Court explained that when a rule "prohibits outright the arbitration of a particular type of claim," then it is preempted by the FAA. 131 S. Ct. at 1747. However, *Concepcion* explicitly reaffirmed California's general contract defense of unconscionability as applied to arbitration agreements. Only "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" are preempted by the FAA, and therefore invalid. *Concepcion*, 131 S. Ct. at 1746.

Under California law,[1] a contract is not enforceable if it is found to be unconscionable. *See, e.g., Armendariz v. Found. Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83, 91 (2000). In order for a court to find an arbitration agreement unconscionable as a whole, the court must find that the agreement is both procedurally and substantively unconscionable. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (citing *Armendariz*, 24 Cal. 4th at 99). "Courts use a 'sliding scale' in analyzing these two elements: '[T]he more substantively oppressive the

---

[1] The parties do not dispute that California law governs this case.

17a

contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 99).

## A.    Procedural Unconscionability

Under California law, a contract is procedurally unconscionable if there is "oppression" or "surprise." *Armendariz*, 24 Cal. 4th at 114. Additionally, "California law treats contracts of adhesion . . . as procedurally unconscionable to at least some degree." *Lau v. Mercedes-Benz USA, LLC*, CV 11-1940 MEJ, 2012 WL 370557, at *8 (N.D. Cal. Jan. 31, 2012) (quoting *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010)). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)) (quotations omitted).

Here, the Agreement is a contract of adhesion because it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113; *see* FAC ¶

18a

83; Baldini Decl. ¶¶ 3-4; Zaborowski Decl. ¶ 25.[2] The Court in *Concepcion* explicitly recognized that California is "free to take steps addressing the concerns that attend contracts of adhesion." 131 S. Ct. at 1750 n.6. Adhesion alone, however, is insufficient to find a contract unconscionable.

Additionally, the Agreement contains elements of oppression. MHN is in a superior bargaining position to the individual MFL Consultants. It is a sophisticated business entity whose lawyers drafted the agreement, while the employees generally do not retain attorneys to review their contracts. Although the disparity in bargaining power is diminished because MFL Consultants are well-educated

---

[2] On March 28, 2013, about two weeks after the hearing on this motion, MHN filed a motion for administrative relief, seeking leave to file a supplemental declaration on the arbitration issue. The declaration, executed by a vice-president of MHN, attaches MHN's "Policy and Procedure" concerning "non-standard Provider contracts." The declarant states that "on at least one occasion" an MFL Consultant requested and received a change in contract language concerning indemnification. No explanation was offered why this information was not provided in a timely manner, prior to the hearing, and the administrative motion to file the supplemental declaration is DENIED on that account. Had it been timely provided, the declaration's assertions could have been explored at argument; issues such as how many MFL Consultants have been employed by MHN over the years, how many changes have been requested, how many changes have been rejected, etc. could have been discussed. In any event, it is not clear that this "Policy and Procedure," with its many levels and layers of required approval, was made known to plaintiff MFL Consultants or that it provided the opportunity for "real negotiation" and "meaningful choice." *Nagrampa*, 469 F.3d at 1280; *Flores*, 93 Cal. App. 4th at 853.

19a

professionals, it is not fully dispelled. Moreover, signing the Agreement was a condition of employment with MHN, and MFL Consultants were given no general opportunity to renegotiate the terms. *Compare Kilgore*, 673 F.3d at 964 (finding no procedural unconscionability because there was a 60-day opt-out provision), *with Lau*, 2012 WL 370557, at *8 (finding a contract oppressive when it was presented on a take-it-or-leave it basis and there was no opportunity to negotiate any of the pre-printed terms).

Furthermore, surprise is present in the Agreement. The arbitration clause appears in paragraph twenty of twenty-three paragraphs. It is not set apart from the rest of the agreement in any way, such as highlighting or outlining; the signature line is on the following page, and it does not require a separate signature. *See Lau*, 2012 WL 370557, at *8 (finding the element of surprise when the arbitration clause was not set apart from the rest of the contract and was not on the same page where a signature was required).

Accordingly, the Court finds that the arbitration clause was procedurally unconscionable because the agreement was a contract of adhesion, was oppressive, and created an unfair surprise.

## B.    Substantive Unconscionability

An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "'one-sided' results." *Armendariz*, 24 Cal. 4th at 114; *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d

20a

1165, 1172 (9th Cir.2003) (defining substantive unconscionability as whether the terms of an agreement are so one-sided as to shock the conscience). This can be shown if the disputed provisions of the agreement fall outside the reasonable expectations of the party of inferior bargaining power in an adhesion contract. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981).

Plaintiffs argue that eight terms in the Agreement are substantively unconscionable. The Court need not find all eight terms overly harsh or one-sided to find that there is substantive unconscionability in the Agreement.

### 1. Six-month Statute of Limitations

First, the Agreement provides that "[a]rbitration must be initiated within 6 months after the alleged controversy or claim occurred." FAC, Ex. A ¶ 20. California courts generally uphold a contractually shortened statute of limitations, as long as the shortened period is "reasonable." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003). However, California courts understand "reasonable" as a sufficient time period to discover and pursue remedies; contractually shortening a statute of limitations is generally not accepted in cases other than a "breach of a contract or for the accrual of a right [that] is immediate and obvious." *Id.* (finding that a one-year statute of limitations from accrual instead of discovery in a home inspection contract is unconscionable). The issue of delayed discovery is especially relevant in an employment context, where the cause of action may not be discovered for long

21a

periods of time. The difficulty of discovery is true whether the MFL Consultants are determined to be employees or contractors. California courts have generally disapproved of contractually limiting the statute of limitations in the employment context, especially if doing so would foreclose statutory remedies to which the plaintiff may be otherwise entitled. *See, e.g., Ingle*, 328 F.3d at 1175 (finding a one-year statute of limitations unconscionable because it would deprive plaintiffs of the benefit of the continuing violation doctrine available in FEHA suits). The six-month limitation here is not sufficient for plaintiffs to discover the alleged FLSA violations, which rely on the treatment of MFL Consultants over time.

Therefore, the Court finds that this provision is unconscionable under California law.

### 2. MHN's Choice of the Pool of Arbitrators

Second, the arbitration clause allows MHN to unilaterally choose the pool of arbitrators. The arbitration agreement provides that "MHN shall provide Provider [MFLC] with a list of three neutral arbitrators from which Provider shall select its choice of arbitrator for the arbitration." FAC, Ex. A ¶ 20. This allows for creation of a very one-sided arbitration process, since MHN has the opportunity to choose the three most sympathetic arbitrators it can find, and the MFL Consultant will not be presented with a meaningful choice. MHN argues that this clause should be construed to mean that the MFL Consultant would choose an arbitrator from the

AAA's list. However, that is not what the terms of the clause state. Under the plain meaning of the Agreement, MHN can select any three arbitrators it wishes, as long as the arbitrators are licensed to practice law. This term is substantively unconscionable. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1003 (9th Cir. 2010) (finding an arbitrator selection process substantively unconscionable where the employer hand-selected a pool of five arbitrators that it had specially trained, from which the plaintiff could choose its arbitrator).

### 3.  Limited Discovery

Third, plaintiffs argue that the limited discovery provided under the Agreement is unconscionable. The Agreement allows each party to depose one individual and the opposing expert witness. The parties must exchange witness lists 30 days before arbitration, and each is limited to a single expert witness. Plaintiffs argue that this in [sic] inadequate, because the issues are complex, and because they frequently change locations, so they may need many witnesses. FAC, Ex. A ¶ 20.

As the Supreme Court has recognized, arbitration typically involves limited discovery rights. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). Limited discovery, in itself, cannot be the basis for finding an arbitration agreement unconscionable, because such a rule would impermissibly rely on the fact that an agreement to arbitrate is at issue. Rather, for the discovery provisions to be unconscionable, they must be so limited as to "prove insufficient to allow [plaintiffs] a

23a

fair opportunity to present their claims." *Id.*; *see also Armendariz*, 24 Cal. 4th at 106 (holding that plaintiffs "are entitled to discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses"). Moreover, the discovery provisions cannot be one-sided. *See Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 786 (9th Cir. 2002) (finding the discovery provision one-sided because it only placed limits on the number of corporate representatives that could be deposed, but no comparable limits for the plaintiff).

The Court finds that plaintiffs have not met their burden in showing that the limited discovery is so one-sided or inadequate that it is unconscionable.

### 4. Filing Fees

Next, plaintiffs argue that the term requiring AAA filing fees is unconscionable. MHN argues that the AAA commercial arbitration rules govern. Under these rules, the required forum fees increase with the amount in controversy. For claims up to $10,000, the filing fee is $775; if the claim is between $75,000 and $150,000, the fee is $2,600 (an initial fee of $1,850 and a final fee of $750). Plaintiffs argue that they will be subject to the $2,600 fee, which is prohibitively expensive and creates a one-sided contract (in contrast, the AAA filing fee for employment disputes is $175, and the filing fee for cases filed in the Northern District of California is $375). MHN argues that plaintiffs have not adequately shown that they will not be subject to the lowest filing fee. They argue that the $775 fee is "only" $400 more than this district's fee, and that this slightly higher fee will be

24a

offset by the cost-savings due to the efficiency of arbitration.

Plaintiffs have pled in good faith that their claims exceed $75,000. *See* Zaborowski Decl. ¶ 34; Badini Decl. ¶ 10. Thus, they would be subject to the $2,600 fee, which is over seven times greater than the fee in this district, and almost fifteen times greater than the AAA fee for employment disputes. Under California law, significant forum fees, especially in suits against employers, are unconscionable. *Armendariz*, 24 Cal. 4th at 111-12. Accordingly, the Court finds this provision unconscionable.

## 5. Fees and Costs

Additionally, plaintiffs argue that the allocation of attorneys' fees and costs in the Agreement is unconscionable. Both California law and the FLSA require an award of fees and costs to the prevailing plaintiff, but not to the prevailing defendant. 29 U.S.C. § 216(b); Cal. Labor Code § 1194(a). The Agreement, however, has a fee shifting provision which provides that "[t]he prevailing party, or substantially prevailing party's costs of arbitration, are to be borne by the other party, including reasonable attorney's fees." FAC, Ex. A ¶ 20. Thus, contrary to California and federal law, if the employer prevails in a wage dispute, then the plaintiffs will be liable for the employer's costs and fees under the Agreement.

California and federal law recognize that contractor/employee plaintiffs are generally individuals, and often cannot afford to pay for the

25a

sophisticated and expensive legal costs of a business employer. To allow attorney fee and cost shifting from the business employer back onto the contractor/employee could be disproportionately burdensome to plaintiffs, creating an advantage for employers. *See Armendariz*, 24 Cal. 4th at 110-11 (holding that an arbitration agreement is substantively unconscionable if it "require[s] the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court") (emphasis in original); *see also Laughlin v. VMware, Inc.*, 5:11-CV-00530 EJD, 2012 WL 298230, at *6 (N.D. Cal. Feb. 1, 2012) (finding unconscionable provisions that prevented the employee from recovering fees or costs if she prevailed). Thus, under California law, the fee shifting provision is unconscionable.

## 6. Punitive Damages

"California courts have repeatedly refused to enforce contractual limitations on statutorily imposed remedies such as punitive damages as unconscionable, based primarily on the rationale that the remedies are important to the effectuation of that statute's policy." *Captain Bounce, Inc. v. Bus. Fin. Services, Inc.*, 11-CV-858 JLS WMC, 2012 WL 928412, at *10 (S.D. Cal. Mar. 19, 2012) (citing *Armendariz*, 24 Cal. 4th at 103). This is especially true in the employment context, because an employer may be subject to substantial punitive damages that would likely not be assessed against an individual employee or contractor. Enforcing such a provision would thwart the legislative decision to use punitive

26a

damages as a method of ensuring compliance from employers.

The Agreement provides that "[t]he arbitrator shall have no authority . . . to award punitive damages." FAC, Ex. A ¶ 20. MHN argues that the Agreement should be interpreted to preclude only common law punitive damages, not statutory punitive damages. However, this is contrary to the plain language of the Agreement, which does not qualify what type of punitive damages are prohibited. Under the terms of the Agreement, the MFL Consultants would not be able to recover any punitive damages they are seeking.

The Court finds that the limitation of punitive damages is one-sided in this context, and therefore unconscionable.

### 7. Enforcement of the Agreement

The Agreement provides that "[t]he arbitrator shall have no authority to . . . add to, modify, or refuse to enforce any agreements between the parties." FAC, Ex. A ¶ 20. Plaintiffs argue that, because the Agreement labels the MFL Consultants as "independent contractors," an arbitrator will have no choice but to follow the definition provided in the contract. This is in direct contradiction to the FLSA, under which "[e]conomic realities, not contractual labels, determine employment status." *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979). Therefore, plaintiffs argue, this provision is unconscionable because it does not afford them their rights under the law.

27a

However, the Agreement also states that "[t]he arbitrators shall have no authority to make material errors of law" and "shall have no authority to make any award that could not have been made by a court of law." In reading these provisions together, the Court interprets the Agreement to require the arbitrator to interpret the contract under the law, including the FLSA. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (holding that a court must choose amongst reasonable interpretations the one that allows for arbitration). Therefore, under the Agreement, the arbitrator would not and could not be bound by the contractual label of "independent contractor," and would be required to apply the economic reality test.

Thus, the Court finds that this provision of the Agreement is not unconscionable.

### 8. Forum in San Francisco

Finally, plaintiffs argue that the Agreement's requirement that "[t]he arbitration shall be conducted in San Francisco, California" is unconscionable. They point to the fact that MFL Consultants work for MHN across the country and throughout the world, and therefore travel to San Francisco is unduly oppressive. Under California law, a forum selection clause is analyzed by taking into account the "respective circumstances of the parties." *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 908 (2001) (finding the forum selection provision "unduly oppressive" where small "Mom and Pop" franchisees located in California were required to travel to Utah to arbitrate their claims against an international

28a

carpet-cleaning franchisor); *see also Nagrampa*, 469 F.3d at 1288-90 (finding Boston forum unconscionable because it was so prohibitively expensive that the individual plaintiff was essentially unable to litigate her claim).

Although plaintiffs are able to assert a compelling hypothetical argument as to why this provision would be unconscionable to an MFL Consultant stationed in Germany (or in Djibouti, as was argued at the hearing), the facts here do not support this claim. After all, plaintiffs chose to file their suit in San Francisco, exactly where the forum selection clause would have them undergo arbitration. This clause did not "diminish in any way the substantive rights afforded California [plaintiffs] under California law." *Id*. at 1289 (quoting *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 10-11 (2001)). It also appears that the Hawaii, Kentucky, and Nevada plaintiffs similarly did not find it prohibitively difficult to assert their claim in San Francisco.

Therefore, the Court finds that plaintiffs have not met their burden in showing that the forum selection clause is unconscionable.

## II.   Severability

California law allows courts to sever an unconscionable contract provision or strike the contract in its entirety. *See* Cal. Civ. Code § 1670.5(a). The California Supreme Court has construed § 1670.5(a) as giving "a trial court some discretion as to whether to sever or restrict the unconscionable

29a

provision or whether to refuse to enforce the entire agreement." *Armendariz*, 24 Cal. 4th at 122. "The question is whether the offending clause or clauses are merely 'collateral' to the main purpose of the arbitration agreement, or whether the [arbitration agreement] is 'permeated' by unconscionability." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1084 (9th Cir. 2007) (citing *id.* at 123-24).

The Court has found that the contract is procedurally unconscionable and contains multiple substantively unconscionable provisions. The finding of "multiple unlawful provisions" allows a trial court to conclude that "the arbitration agreement is permeated by an unlawful purpose." *Armendariz*, 24 Cal. 4th at 124. *Compare Davis*, 485 F.3d at 1084 (finding four unconscionable provisions unseverable because they "cannot be stricken or excised without gutting the agreement"), *and Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994) (finding an arbitration clause that waived punitive damages and attorneys' fees remedies available to plaintiff as unenforceable), *with Lara v. Onsite Health, Inc.*, CV 12-3337 MEJ, 2012 WL 4097712, at *13 (N.D. Cal. Sept. 17, 2012) (finding the single substantively unconscionable provision barring injunctive relief severable because the provision is "collateral to the main purpose of the contract" and not even implicated by the plaintiff's case), *and Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (finding that the arbitration agreement is not "permeated with unconscionability" and the three substantively unconscionable provisions may be severed).

30a

The Court finds that the Agreement is so permeated with unconscionability that it is not severable. It is an adhesive contract that contains oppression and surprise. The Agreement's substantively unconscionable provisions range from the method of selecting the arbitrator, the shortened statute of limitations, and limits on statutory remedies, to the filing fees and the allocation of fees and costs. The Court could not "attempt to ameliorate the unconscionable aspects" of the Agreement without being required to "assume the role of contract author rather than interpreter." *Ingle*, 328 F.3d at 1180.

Accordingly, the Court finds that the unconscionable provisions of the arbitration agreement are not severable.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to compel arbitration. Docket No. 15.

**IT IS SO ORDERED.**


Dated: April 3, 2013          _____

                              SUSAN ILLSTON
                              United States District
                              Judge

31a

**APPENDIX D**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

[FILED FEB 09 2015 Molly C. Dwyer, Clerk U.S.
COURT OF APPEALS]

| | |
|---|---|
| THOMAS ZABOROWSKI; et al., | No. 13-15671 |
| Plaintiffs - Appellees, | D.C. No. 3:12-cv-05109-SI |
| v. | Northern District of California, San Francisco |
| MHN GOVERNMENT SERVICES, INC.; MANAGED HEALTH NETWORK, INC., | ORDER |
| Defendants-Appellants. | |

Before: GOULD and WATFORD, Circuit Judges, and
MARTINEZ, District Judge.*

Judge Gould votes to grant the petition for
rehearing en banc.

---

* The Honorable Ricardo S. Martinez, District Judge for
the U.S. District Court for the Western District of Washington,
sitting by designation.

32a

Judge Watford votes to deny the petition for rehearing en banc, and Judge Martinez so recommends.

The full court has been advised of the petition for rehearing en banc, and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc, filed January 14, 2015, is DENIED.

33a

## APPENDIX E

## PROVIDER SERVICES TASK ORDER AGREEMENT

This Agreement is made by and between the provider named on the signature page of this Agreement ("Provider") and MHN Government Services, Inc., (hereinafter referred to as "MHN"). The effective date of this Agreement is set forth on its signature page.

### Recitals:

**WHEREAS**, the Provider has the legal authority to enter into this Agreement and to deliver or arrange for the delivery of short term, situational, problem solving non-medical counseling support services and **WHEREAS**, the Provider acknowledges and accepts that the location of the performance of Services may be under a travel warning issued by the United States Department of State or other similar agency and may be an area of long-term, protracted conditions that make a country or region dangerous or unstable and **WHEREAS**, MHN desires to engage the Provider to provide counseling services.

**NOW**, **THEREFORE**, in consideration of the premises and the mutual covenants and promises contained herein, and intending to be bound hereby, the parties agree as follows:

1.  **Provider Services.**

    (a) **Services**. During the term of this Agreement, Provider shall deliver or arrange the services set forth in the Task Orders attached hereto or

34a

issued in the future and made a part of this Agreement (the "Services").

(b) **<u>No Additional Work Obligation.</u>** Provider agrees that MHN is not obligated to issue new assignments or any additional assignments for work by Provider under this Agreement. Furthermore, MHN's issuance of an assignment does not guarantee that Provider will be permitted to initiate or carry such assignment out until completion. Provider acknowledges and agrees that his or her Services may be terminated at any time with or without cause as provided in this Agreement.

(c) **<u>Additional Duties</u>.** Provider shall perform such additional duties in furtherance of the subject matter of this Agreement as may be requested by MHN from time to time upon mutual written agreement between the parties.

(d) **<u>Professional Liability Insurance.</u>** Provider shall maintain professional liability insurance in the amount of one million dollars ($1,000,000) per claim and one million dollars ($1,000,000) in the aggregate of all claims per policy year. Provider agrees to provide MHN with written evidence, acceptable to MHN, of such insurance coverage in accordance with MHN's credentialing and recredentialing requirements and naming MHN, and the U.S. federal government, as additional insureds. Provider also agrees to notify, or to ensure that its insurance carriers notify, MHN at least

35a

thirty (30) days prior to any proposed termination, cancellation or material modification of any policy for all or any portion of the coverage required herein. Notwithstanding any insurance coverages of Provider, nothing in Section 1(d) shall be deemed to limit or nullify Provider's indemnification obligations under this Agreement. Provider agrees to waive any rights of subrogation that Provider may have against MHN, or the U.S. federal government under applicable insurance policies related to the work performed by Provider. Indemnification by Provider shall not be limited or reduced by any insurance coverage limitations. Provider shall make certain that any and all subcontractors hired by Provider are insured in accordance with this Agreement. If any subcontractor's coverage does not comply with the provisions herein, Provider shall indemnify and hold MHN harmless of and from any damage, loss, cost or expense, including attorneys' fees, incurred by MHN as a result thereof.

(e) **<u>No or Limited Liability of MHN and Other Insurance Coverage.</u>** MHN may, in some instances, maintain certain insurance coverage the benefit of which may extend to Provider. MHN's liability to Provider or any third party is limited to the extent of such coverage. As such, Provider acknowledges that there may be a need for Provider, at Provider's discretion, to further obtain and maintain other insurance policies as MHN or Provider may reasonably

36a

deem necessary, including without limitation medical, disability, worker's compensation, home owner's, and rescue/evacuation insurance in the event of medical emergency or death. In the instance, where no insurance coverage is maintained by MHN the benefit of which may extend to Provider, MHN shall have no liability to Provider or any third party including acts of negligence on the part of provider or damage or theft of Provider's personal property. Nothing contained herein shall be interpreted or construed to require that MHN have any such insurance coverage, or if it has it, to continue to retain it or otherwise prevent MHN from modifying or eliminating such coverage in the future. Further, MHN shall have no obligation to provide insurance to Provider, or, if it maintains insurance that does cover Provider, from making any changes or otherwise terminating such coverage as it may pertain to Provider.

(f) **Credentialing**. Provider shall comply with MHN's credentialing and recredentialing requirements.

(g) **Professional Provider**. If Provider is a group practice, Professional Providers are the health care providers who contract with Provider, or are employed by Provider, and who have been credentialed and accepted by MHN to provide the Services described herein. Professional Providers accepted by MHN are limited to the Professional Providers named in the Task

37a

Orders. Furthermore, Provider has the unqualified authority to and hereby binds itself, and any Professional Providers covered by this Agreement (referred to herein collectively as "Provider"), to the terms and conditions of this Agreement and the Task Order(s) referenced herein.

(h) **Military and Family Lite Consultant (MFLC) Provider Manual**. The MFLC Provider Manual issued by MHN, as updated from time to time, is incorporated into this Agreement by this reference and available on MHN's website or on hardcopy upon request. Provider agrees to be contractually bound to comply with the MFLC Provider Manual, and any updates or revisions to such, which arc effective as of the date of each respective Task Order accepted hereunder. In the event that any provision in the MFLC Provider Manual or any updates thereto are clearly inconsistent with the terms of this Agreement, the terms of this Agreement, including any amendments, shall prevail.

(i) **MFLC Quality Assurance Surveillance Plan (QASP).** The QASP is designed to meet MHN standards approved by the Department of the Defense, and is designed to monitor the quality and appropriateness of the Services provided hereunder. Relevant provisions of the QASP requirements and procedures are included in the MFLC Provider Manual, which should be reviewed by Provider upon execution of this Agreement.

38a

2.    **Task Orders.**

(a) MHN, solely at its discretion, may issue Task Orders under this Agreement to the Provider calling for the provision of the Services. The Task Order will include the following minimum information:

2.a.1 Task Order Number and MHN's Contract/Subcontract Number.

2.a.2 Description of ordered Services.

2.a.3 Location where Services are to be performed by Provider.

2.a.4 Period of performance.

2.a.5 Invoicing and Payment Terms.

2.a.6 Rate of payment for the services, applicable Non-Labor expenses, and Ceiling Price.

2.a.7 Professional Provider(s) approved for assignment.

2.a.8 Appendix A specifying the terms and conditions for the assignment(s) covered by the Task Order.

(b) Prior to the issuance of a Task Order, MHN shall advise the Provider of the details of required performance (as depicted in 2.a.2 thru 2.a.4 above. Provider shall detail the name(s) of the Professional Providers(s) that Provider

39a

proposes to use to conduct the services. All Professional Providers named by Provider must be credentialed and approved by MHN. Provider shall not substitute named Professional Providers without the express written authorization of MHN.

(c) MHN will issue the Task Order to the Provider and shall name the Professional Provider agreed upon. Upon receipt of the Task Order, Provider agrees to notify MHN within two (2) business days via email of the Provider's decision to "decline" all Task Orders issued hereunder. If WIN does not receive such a written declination within two (2) business days, this shall constitute Provider's acceptance of the Task Order and Provider's agreement to performance thereunder.

(d) **Rate of Payment.** During the term of this Agreement, MHN shall pay to Provider as full compensation for the Services provided the Rate of Payment specified in the Task Order issued hereunder. The Rate of Payment is for labor only and excludes compensation for business expenses and if applicable per diem payments and payment for travel time.

3.    **Invoicing and Payment.**

(a) **Services.** MHN shall pay to Provider as full compensation for the Services provided under any resulting Task Order, the Rate of Payment stated in such Task Order for such services. MHN, however, may pay for partial delivery of

40a

services, based upon Provider's submission of a properly prepared invoice, as stated below. In addition, MHN may pay for necessary and reasonable business expenses incurred by Provider directly related to performance of Services, if such expenses are expressly allowed under the individual Task Orders issued hereunder and are in accordance with requirements set forth in the MFLC Provider Manual. If applicable, and if stipulated in the individual Task Orders issued hereunder, air travel arrangements, hotels and rental cars must be booked by MHN through MHN's travel office, in accordance with MHN's Travel Expense Policy. Relevant portions of the Travel Expense Policy are included in the MLFC Provider Manual, which should be reviewed by Provider upon execution of this Agreement. In the event that the Task Order does provide for payment of such expenses, the nature and type of the same shall be as identified by the Task Order.

(b) **Invoice and Expense Report Submissions.** Provider shall submit invoices and expense reports ("Invoices") in accordance with the terms and conditions set forth in the Task Order and MFLC Provider Manual. Consistent submission of timely Invoices is a condition of continued participation under this Agreement.

(c) **Timely Filing of Invoices**. Payment under this Agreement and any assignment hereunder shall be conditioned upon Provider submitting complete, timely and accurate invoices and

41a

expense reports for services performed and allowable expenses incurred, in accordance with the submission requirements hereunder. Provider expressly acknowledges its understanding and agreement, that a Final Invoice must be submitted within thirty (30) calendar days from the Assignment Period End Date set forth in the Task Order, in order to be considered timely submitted. Such Final Invoice shall be so marked, and shall include all previously unbilled amounts, if any. In the event that Provider fails to submit a timely Final Invoice, MHN shall consider the last invoice submitted by Provider, under the respective Task Order, as the Provider's Final Invoice, and once paid by MHN, no further amounts will be considered due nor owed the Provider, and MHN shall have no obligation for further payments. Notwithstanding the foregoing, in the event that MHN denies an invoice submitted after the 30-day deadline on the basis that it was not submitted timely, upon demonstration by Provider of good cause for the delay through the provider dispute resolution process specified in the MFLC Provider Manual, MHN will reprocess the invoice as if it were timely.

(d) **<u>Form W-9.</u>** Payment under this Agreement and any assignment hereunder shall be conditioned upon Provider submitting a completed and signed "Form W-9," Taxpayer Identification Number Request, as set forth in the MFLC Provider Manual.

42a

4.    **Term and Termination.**

(a) **Effective Date.** This Agreement shall become effective as of the date set forth on the signature page and shall remain in full force and effect, unless otherwise terminated as provided herein.

(b) **Termination Without Cause.** This Agreement may be terminated without cause by either party at any time upon thirty (30) calendar days prior written notice to the other party. Prior to the assigned assignment start date set forth in the Task Order, MHN may terminate the assignment under such Task Order without cause upon five (5) calendar days written notice. Notwithstanding the foregoing, MHN or DoD may cancel any assignment under a Task Order at any time for any reason or no reason at all. In the event that MHN cancels an assignment under a Task Order without cause less than five days prior to the Assignment Start Date, MHN agrees to pay Provider the equivalent of one week's pay based on the Payment Rate and estimated number of hours per week specified in the applicable Task Order.

(c) **Cancellation for Default.** Either party may terminate this Agreement or any assignment under a Task Order upon fourteen (14) calendar days prior written notice to the other party if the party to whom such notice is given is in material breach of this Agreement and/or such Task Order. The party claiming the right

43a

to terminate hereunder shall set forth in the notice of intended termination the facts underlying its claims that the other party is in material breach of this Agreement and/or such Task Order. Remedy of such breach to the satisfaction of the party giving notice of intended termination within fourteen (14) calendar days of receipt of such notice shall revive the Agreement and/or such Task Order. Provider may not perform Services during any cure period.

(d) **<u>Immediate Termination</u>**. This Agreement and/or an assignment under a Task Order shall immediately terminate upon notice to the effected party in the event of the occurrence of any of the following:

4.d.1   Either party's violation of law or regulation pertinent to this Agreement and/or such Task Order, upon notice of said violation;

4.d.2   any act or conduct for which any of Provider's license, certifications or accreditation, to provide Services may be revoked or suspended or for which Provider's ability to provide Services in accordance with this Agreement and/or such Task Order is otherwise materially impaired;

4.d.3   any misrepresentation or fraud by either party, upon notice to such party;

44a

4.d.4    Provider's failure to adhere to MHN's credentialing requirements as determined by the MHN Credentialing Committee or failure to maintain professional liability insurance in accordance with this Agreement;

4.d.5    MHN's determination that the health, safety or welfare of any participant may be in jeopardy if this Agreement and/or such Task Order is not terminated;

4.d.6    MHN's determination in its sole discretion that Provider is not able to perform according to the standards of MHN and the Department of Defense; or

4.d.7    Provider voluntarily or involuntarily terminates from the MHN commercial network; or

4.d.8    MHN's customer's cancellation, or failure to renew/extend, the MHN contract and/or assignment named in Task Order.

4.d.9    Any act or conduct by the Provider which results in any violation of applicable U.S., or state law or regulations, or the law of any country where the Provider is providing services, including, but not limited to the U.S. Foreign Corrupt Practices Act, Export Administration Act, Foreign Asset Control Act and regulations, Arms Export Control Act

45a

and regulations, or any breach of any covenant condition or representation and warranty contained herein.

5.   **Records and Audits.** As a condition of payment for Services Provider shall maintain and submit accurate reports and records, in accordance with the MFLC Provider Manual and as provided and requested by the Supervisor or another representative of MHN.

6.   **Confidential and Proprietary Information.**

(a) **Work for Hire.** The parties agree that all reports, documents, materials and other works originated, created, prepared or produced by Provider in providing Services under this Agreement and all ideas, concepts, know-how, show-how, techniques, software, computer code, algorithms, inventions, discoveries or improvements developed, conceived, created or first reduced to practice in the performance of this Agreement shall be the sole and exclusive property of MHN and shall constitute "work for hire."

(b) **Department of Defense Premises.** Provider is hereby expressly prohibited from entering area(s) other than the work area(s) designated by MHN. Any failure to adhere to this requirement shall constitute a material breach of this Agreement by the Provider.

46a

(c) **<u>Confidentiality Provisions.</u>** The parties hereby agree to hold all confidential or proprietary information or trade secrets of each other in trust and confidence and agree that such information shall be used only for the purposes contemplated herein, and shall not be used for any other purpose. Moreover, it is understood that Provider and MHN shall release patient-related behavioral health information and records that contain individual identifying information and Provider-specific information only in accordance with applicable state and federal laws. Provider also shall keep strictly confidential all compensation arrangements set forth in this Agreement and its addenda.

(d) **<u>No Client Contact.</u>** Provider agrees that under no circumstances shall Provider contact any MHN client, including without limitation, the Department of Defense, without the express prior written consent of MHN. For the purpose of this Agreement, TRICARE beneficiaries are not considered an MHN client. Provider further acknowledges that member and client group medical and financial information shall remain the property of MHN, shall be deemed confidential, and shall not be disclosed or removed from Department of Defense facilities without the express prior written consent of MHN.

(e) Provider understands that any information obtained by Provider from a victim of domestic abuse is protected by the Privacy Act of 1974

47a

and any unauthorized disclosures of client information may result in the imposition of possible criminal penalties.

(g) Provider shall follow appropriate administrative and physical safeguards to ensure the security and confidentiality of client records and to protect against any anticipated threats or hazards to their security or integrity that could result in substantial harm, embarrassment, inconvenience, or unfairness to the client.

(h) Provider agrees to protect the confidentiality of Government records, client or otherwise, which are not public information.

(i) Information made available to Provider by MHN for the performance or administration of this effort shall be used only for those purposes and shall not be used in any other way without the written agreement of MHN.

(j) If public information is provided to Provider for use in performance or administration of this effort, except with the written permission of MHN, Provider may not use such information for any other purpose. If Provider is uncertain about the availability or proposed use of information provided for the performance or administration, Provider will consult with MHN regarding use of that information for other purposes.

48a

(k) Provider agrees to protect the confidentiality of Government records that are not public information.

(l)  Performance of this effort may require Provider to access and use data and information proprietary to a Government agency or Government contractor which is of such a nature that its dissemination or use, other than in performance of this effort, would be adverse to the interests of the Government and/or others.

(m) Provider shall not divulge or release data or information developed or obtained in performance of this effort, until made public by the Government, except to authorized Government personnel or upon written approval of MHN. Provider shall not use, disclose, or reproduce proprietary data that bears a restrictive legend, other than as required in the performance of this effort. Nothing herein shall preclude the use of any data independently acquired by Provider without such limitations or prohibit an agreement at not [sic] cost to the Government between Provider and the data owner that provides for greater rights to Provider.

(n) All data received, processed, evaluated, loaded, and/or created as a result of this Agreement or resulting Task Orders, shall remain the sole property of MHN or the Government unless specific exception is granted by MHN, or the Contracting Officer directly through MHN.

49a

(o) This Section 5 shall survive the termination of this Agreement for any reason.

(p) Failure to comply with the requirements of this Section 6 shall constitute a material breach of this Agreement.

**7.** **<u>Warranties.</u>**

(a) Provider represents and warrants that it has the full right and authority to execute and deliver this Agreement and to perform its obligations under this Agreement, and that neither the execution nor delivery of this Agreement by Provider nor consummation of the transactions contemplated hereby will result in a breach or default under the terms and conditions of any contract, Task Order, license, charter document or other agreement by which Provider is bound.

(b) Provider represents and warrants that the Services provided under this Agreement or any Task Order will be performed in a professional and workman-like manner by qualified personnel, and that Provider is appropriately licensed, certified and qualified to provide the Services.

(c) Provider affirms that to the best of Provider's knowledge, there exists no actual or potential conflict between Provider's family, business, or financial interest and performance of the Services under this Agreement, and in the event of change in either Provider's private

50a

interest or Services under this Agreement, Provider will raise with MHN any question regarding possible conflicts of interest which may arise as a result of such change. Treatment of TRICARE beneficiaries in the Provider's private practice does not constitute a conflict of interest.

(d) Provider represents and warrants that each person providing Services under this Agreement is physically fit and in good physical condition and has been screened to identify any medical conditions that might limit his or her ability to perform Services in the location(s) where Services must be performed. It is the responsibility of Provider's medical examiner to use sound medical judgment to determine fitness of each person to provide Services. If any medical condition is identified that may limit his or her ability to perform Services, but which condition is not considered disqualifying by Provider's physician, the Provider shall obtain from the examining physician, in writing, a statement of the reasons why the finding is not likely to limit performance or cause undue risk to the Provider or others in the performance of Services.

(e) Provider represents and warrants that each Provider and Provider's physician has reviewed the required and recommended vaccinations, which requirements and recommendations are issued by the United States Department of State, the Centers for

51a

Disease Control and Prevention, and/or other similar agency/resource for each location where Services are to be performed, and that each Provider has received such required and recommended vaccinations in a timely manner prior to being deployed to or performing any Services in such location.

(f) Provider represents and warrants that each person providing Services under this Agreement has not and will not violate the any law or regulation of the United States or any state, including, but not limited to the Foreign Corrupt Practices Act, Export Administration Act, Foreign Asset Control Act and regulations, Arms Export Control Act and regulations or any law of any country where the Provider is providing Services.

(g) Provider represents and warrants that each person providing Services under this Agreement has reviewed the travel warnings and security advice as issued by the United States Department of State or other similar agencies and understands the reported risks of each location where Services will be performed.

8. **Indemnification by Provider.** Provider shall indemnify MHN, its directors, officers, agents, and employees from and against any and all liabilities, suits, claims, losses, damages, costs, attorneys' fees, and expenses whatsoever arising from any breach of a representation or warranty hereunder or any act or omission of Provider, its agents, or

52a

employees during the performance of any of its obligations under this Agreement. Upon request of and at no expense to MHN, Provider shall defend any suit asserting a claim for any loss, damage or liability specified above, and Provider shall pay any such costs incurred in enforcing the indemnity granted above; provided that Provider shall not enter into a settlement of any such suit or claim without the prior written consent of MHN. Provider and its employees shall comply with all applicable laws, ordinance(s), codes and regulations; and Provider hereby indemnifies and agrees to hold MHN harmless from and against all liabilities and penalties imposed or failure to do so.

9.   **Relationship of Parties.** MHN and Provider are independent contractors in relation to one another and no joint venture, partnership, employment, agency or other relationship is created by this Agreement. Neither MHN nor Provider is authorized to represent the other for any purposes. Neither of the parties hereto, nor any of their respective officers, agents or employees shall be construed to be the officer, agent or employee of the other party.

10.   **Headings.** The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

53a

11. **Assignment.** Provider shall not assign, sell or transfer this Agreement or any interest therein without the prior written consent of MHN, and any unauthorized assignment or transfer of this Agreement or any interest therein shall be null and void. MHN reserves the right to assign this Agreement or any Task Order to any present or future affiliate, subsidiary or parent corporation. MHN Government Services is an affiliate of Managed Health Network, Inc., and MHN at its sole discretion may assign this Agreement to Managed Health Network, Inc. Subject to the provisions of this Section 10, this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns, of any of the parties hereto. Provider shall not assign this Agreement without the prior written authorization of MHN; such authorization shall not be unreasonably withheld.

12. **Waiver.** Waiver of a breach of any provision of this Agreement shall not be deemed a waiver of any other breach of the same or different provision.

13. **Severability**. In the event that any provision of this Agreement is rendered invalid or unenforceable by any valid law or regulation of the State of California or of the United States, or declared void by any tribunal of competent jurisdiction, the remaining provisions of this Agreement shall remain in full force and effect.

54a

**14.**   **Modification.** This Agreement or any part or section of it can be amended only by mutual written consent of the parties.

**15.**   **Notices.** Any notice required or desired to be given under this Agreement shall be in writing. Notices shall be deemed given five (5) days post deposit in the U.S. mail, postage prepaid. If sent by hand delivery, overnight courier, or facsimile, notices shall be deemed given upon documentation of receipt. All notices to the Provider shall be addressed to the applicable address appearing on the signature page of the Agreement. The addresses to which notices are to be sent may be changed by written notice given in accordance with this Section. All notices to MHN shall be as follows:_____

MHN Services
Professional Relations Department
P.O. Box 10086
San Rafael, CA 94912
Fax: (866) 581-9533
Ann: Vice President Professional Relations

**16.**   **No Third Party Beneficiary.** Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon any person, firm, or corporation other than the parties hereto and their respective successors or assigns, any remedy or claim under or by reason of this Agreement or any term, covenant, or condition hereof, as third party

55a

beneficiaries or otherwise, and all of the terms, covenants, and conditions hereof shall be for the sole and exclusive benefit of the parties hereto and their successors and assigns.

17. **Compliance with Applicable Laws.** Provider and its employees shall comply with all applicable laws, regulations, ordinances and codes, including the procurement of permits and licenses when required, in the performance of this Agreement. Provider shall hold harmless and indemnify MHN against any loss, damage, penalties or liabilities that may occur by reason of Provider's failure to comply with such laws, regulations and codes.

18. **Survival.** The provisions contained in this Agreement that by their nature and context are intended to survive the completion and performance, cancellation or termination of this Agreement or any Task Order hereunder, shall so survive.

19. **Governing Law.** This Agreement shall be governed by and construed according to the laws of the State of California.

20. **Mandatory Arbitration.** The parties agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement. Such negotiation shall be a condition precedent to the filing of any arbitration demand by either party. The parties agree that any controversy or claim arising out of or relating to this Agreement (and any

56a

previous agreement between the parties if this Agreement supersedes such prior agreement) or the breach thereof, whether involving a claim in tort, contract or otherwise, shall be settled by final and binding arbitration in accordance with the provisions of the American Arbitration Association. The parties waive their right to a jury or court trial. The arbitration shall be conducted in San Francisco, California. A single, neutral arbitrator who is licensed to practice law shall conduct the arbitration. The complaining party serving a written demand for arbitration upon the other party initiates these arbitration proceedings. The written demand shall contain a detailed statement of the matter and facts supporting the demand and include copies of all related documents. MHN shall provide Provider with a list of three neutral arbitrators from which Provider shall select its choice of arbitrator for the arbitration. Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. At least thirty (30) days before the arbitration, the parties must exchange lists of witnesses, including any experts (one of each for MHN and Provider), and copies of all exhibits to be used at the arbitration. Arbitration must be initiated within 6 months after the alleged controversy or claim occurred by submitting a written demand to the other party. The failure to initiate arbitration within that period constitutes an absolute bar to the institution of any proceedings. Judgment upon the award

57a

rendered by the arbitrator may be entered in any court having competent jurisdiction. The decision of the arbitrator shall be final and binding. The arbitrator shall have no authority to make material errors of law or to award punitive damages or to add to, modify or refuse to enforce any agreements between the parties. The arbitrator shall make findings of fact and conclusions of law and shall have no authority to make any award that could not have been made by a court of law. The prevailing party, or substantially prevailing party's costs of arbitration, are to be borne by the other party, including reasonable attorney's fees.

21. **Entire Agreement.** This Agreement, inclusive of any Task Orders that may be issued hereunder, constitutes the entire Agreement of the parties with respect to the subject matter hereof. No promises, terms, conditions, or obligations other than those contained herein shall be valid or binding. Any prior agreements, statements, promises, either oral or written, made by any party or agent of any party that are not contained in this Agreement are of no force or effect.

22. **No Press or Public Contact.** Provider will not speak with the press or make any other public statement, press release or other announcement relating to the terms of or existence of this Agreement without the prior written approval of MHN, which approval may be withheld in MHN' sole discretion.

58a

**23.** **<u>Federal Acquisition Regulations (FAR).</u>** Task Orders resulting from this Agreement shall constitute subcontracts issued under a U.S. federal government contract. All issued Task Orders are subject to the following requirements, as applicable, which are hereby incorporated by reference with the same force and effect as if set forth herein in full text. The full text of these clauses is available at: http://farsite.hill.dmilivffara.htm

(a) FAR 52.219-8, Utilization of Small Business Concerns (May 2004). [Applicable to subcontracts expected to exceed $100,000].

(b) FAR 52.222-26, Equal Opportunity (Apr 2002) (E,O. 11246). [Applicable if the value a single subcontract, or the combination of all Federally funded subcontracts in last 12 months, total $10,000 or more].

(c) FAR 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Dec 2001) (38 U.S.C. 4212). [Applicable if Expected Subcontract Value is $25,000 or more].

(d) FAR 52.222-36, Affirmative Action for Workers with Disabilities (June 1998) (29 U.S.C. 793). [Applies if subcontract is expected to exceed $10,000].

(e) FAR 52.222-39, Notification of Employee rights Concerning Payment of Union Dues or Fees

59a

(Dec 2004) (E.O. 13201). [Applicable to subcontracts expected to exceed $100,000].

(f) FAR 52.222-41, Service Contract Act of 1965, as Amended (Jul 2005), flow down required for all subcontracts subject to the Service Contract Act of 1965 (41 U.S.C. 351, *et seq*.) [Applicable to subcontract expected to exceed $100,000).

(Signatures following on the next page)

In witness whereof, the parties have caused this Agreement to be executed by their respective duly authorized representatives as of the date first written above.

**EFFECTIVE DATE.** This agreement is effective on_____.

**IN WITNESS WHEREOF**, the parties hereto have entered into this agreement on the effective date specified.

**PROVIDER NAME:**          **MHN**

_____          **GOVERNMENT**

(Legal name/business that          **SERVICES, INC.**

matches Tax ID# of SSN below)

_____          P.O Box 10086_____

Address

_____          San Rafael, CA 94912

TEL:(__)_____          TEL: (800)688-8877

60a

FAX:(__)_____        FAX: (866)581-9533

By:_____        By:_____

   (Authorized Signature)           (Authorized Signature)

Name:_____        Name: Denise Young

   (Print Name)

Title:_____        Title:  Manager,  MHN
                               Support Contacts

Date:_____        Date:_____

Federal Tax ID# or SSN:_____

(This is the number to which MHN will pay for services)