**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC COBARRUVIAZ, et al., | Case No.  15-cv-00697-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| MAPLEBEAR, INC., | Docket No. 29 |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff Dominic Cobarruviaz brought this lawsuit on behalf of himself and a putative class of former and current shoppers and grocery delivery drivers who work for Defendant Maplebear, Inc., which does business as Instacart (hereafter, Instacart). *See* Docket No. 17 (First Amended Complaint) (FAC). "Instacart is a shopping and delivery service that provides shoppers and delivery drivers who are dispatched through a mobile phone application to shop, purchase, and deliver groceries to customers at their homes and businesses." *Id.* at ¶ 2. Plaintiffs were classified by Instacart as independent contractors. *Id.* at ¶ 3. They claim, however, that they are Instacart's employees, and thus are entitled to various protections for employees under the Fair Labor Standards Act (FLSA) and under the labor codes of various states where Plaintiffs worked, such as California, New York, and Colorado. *Id.* at ¶ 5. The California-based Plaintiffs have also pled a claim for civil penalties under California's Private Attorneys General Act (PAGA). *Id.* at ¶¶ 119-123.

Prior to working for Instacart, Plaintiffs were required to electronically sign identical Independent Contractor Agreements. *See* Docket No. 30 (Raman Decl.), Exh. A (Agreement). The fifth page of the seven-page agreement contains an arbitration clause that requires that "any

United States District Court
For the Northern District of California

controversy, dispute or claim arising out of or relating to the Services performed by the Contractor . . . be submitted to and determined exclusively by binding arbitration." *Id.* at § 7.1.  The Agreement further specified that arbitration "shall be administered by JAMS" under the JAMS rules, but the Agreement materially conflicted with the applicable JAMS rules.  In the event of such conflicts, the Agreement's terms applied.  *Id.* at § 7.2.  However, JAMS rules provide that "an arbitration demand will *not be accepted* unless there is full compliance" with JAMS procedures.  Based on this arbitration clause, Instacart brought the instant motion to compel arbitration.  Docket No. 29 (Mot.).

Instacart's motion came on for hearing before the Court on August 20, 2015.  The Court then ordered Instacart to file an arbitration demand with JAMS "for the *sole purpose* of obtaining a determination from JAMS whether it will accept such arbitration demand."  Docket No. 76. JAMS responded that because the Agreement did not comply with JAMS's Minimum Standards, it would "administer the cases only if the parties, by agreement or waiver, amend the arbitration agreement to comply with the Minimum Standards."  Docket No. 81 (Joint Status Report), Exh. T. The Court took the matter under submission at the October 1, 2015 status conference.  For the reasons set forth below, the Court GRANTS Defendant's motion to compel arbitration.

## II.    BACKGROUND

To become "Personal Shoppers" for Instacart, Plaintiff was required to apply online. Raman Decl. at ¶ 13.  As part of that application process, Plaintiffs were required to review and electronically sign Instacart's Independent Contractor Agreement.  *Id.* at ¶ 13-15.  The Agreement states that it is being entered into between Instacart and "an individual ('Contractor') (collectively referred to as the 'Parties'.)."  Agreement at 1.

Instacart uses an electronic signature service called HelloSign to process its contracts, and the HelloSign service allows Instacart to track, "using IP addresses and other identifying data, when each Personal Shopper applicant receives, views, and signs each Independent Contractor Agreement."  *Id.* at ¶ 15.  There is no dispute that each of the named Plaintiffs electronically signed the Agreement, and Plaintiffs do not argue that a valid contract was not formed between them and Instacart.

1   As previously noted, each of the Agreements contains an identical arbitration clause on its

2   fifth page in a section titled "Dispute Resolution."  *See* Agreement at § 7.  The arbitration

3   provision is reproduced in the same font as the surrounding contract provisions and in the same

4   sized typeface.  *Id.*  One sentence in the arbitration clause is bolded[1] -- the only bolded sentence in

5   the entire Agreement -- but otherwise no part of the arbitration clause is in any way set off from

6   the surrounding text.  It is undisputed that Plaintiffs had no opportunity to opt-out of the

7   arbitration clause, and that agreeing to the arbitration clause was a mandatory requirement for

8   Plaintiffs to perform work for Instacart.

9   The arbitration provision provides that "the Parties agree that to the fullest extent permitted

10  by law, any controversy, dispute or claim arising out of or relating to the Services performed by

11  the Contractor, this Agreement, the breach, termination, interpretation, enforcement, validity,

12  scope and applicability of any such agreement . . . which could otherwise be heard before any

13  court of competent jurisdiction (a 'Dispute'), shall be submitted to and determined exclusively by

14  binding arbitration."  *Id.* at § 7.1.  The clause further provides that the "arbitration shall be

15  administered by JAMS at its offices located [in] San Francisco" and that the arbitration will be

16  conducted "pursuant to [JAMS's] Employment Arbitration Rules and Procedures and subject to

17  JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness

18  (collectively, 'Rules') that are in effect when arbitration is demanded."  *Id.*  However, the

19  Agreement expressly provides that "[i]n the event of any conflict between the Rules and this

20  Agreement, this Agreement shall apply."  *Id.* at § 7.2.

21  The Agreement appears to conflict with the JAMS Rules in three ways.  First, the

22  Agreement provides that "[t]he parties will equally advance all of the arbitrator's expenses and

23  fees."  *Id.* at § 7.3.  In contrast, the JAMS Rules in effect at the time arbitration was demanded

24  provide that the "only fee that an employee may be required to pay is JAMS'[s] initial Case

25  Management Fee" of $400.  *See* JAMS Minimum Standards, Effective July 15, 2009 (Standards)

---

[1] That sentence reads: "The Parties each expressly waive the right to a jury trial and agree that the arbitrator's award shall be final and binding on the Parties."  Agreement at § 7.4.

United States District Court

For the Northern District of California

at Standard No. 6;[2] JAMS Employment Arbitration Rules at 3.  According to JAMS, "[a]ll other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services."  JAMS Standard No. 6.

Second, the Agreement provides that any arbitration "shall be administered by JAMS at its office" in San Francisco.  Agreement at § 7.2.  The JAMS Minimum Standards provide, however, that "[a]n employee's access to arbitration must not be precluded by the employee's inability to pay any costs *or by the location of the arbitration*."  JAMS Standard No. 6 (emphasis added).  The JAMS Employment Arbitration Rules further provide that "JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers," and further provides that "[t]he Arbitrator, after consulting with the Parties that have appeared, shall determine the . . . location of the Hearing."  *See* Arb. Rules at Rule 1(d), Rule 19(a).

Finally, the Agreement provides that "in his discretion, the arbitrator may award fees and costs to the prevailing party."  Agreement at § 7.2.  The JAMS Minimum Standards, however, provide that "[i]n California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party," and the Standards also provide that "the remedies available in arbitrations and court proceedings [should be] the same."  Standard Nos. 1 and 6.  The Agreement states that it "shall be governed by and construed in accordance with the laws of the State of California," and that "[t]he arbitrator shall apply California substantive law to the proceeding."  Agreement at §§ 7.4, 13.

The JAMS Minimum Standards provide that "[i]f an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment *only if* the proceeding complies with the 'Minimum Standards . . . .'"  Standard B (emphasis added).  "If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand *will not be accepted* unless there is full compliance with those standards."  Standard No. 8 (emphasis added).  Rule 2 of JAMS's Employment Arbitration Rules further

___

[2] The JAMS Minimum Standards have not changed since 2009, and thus the version attached to the Agreement is still the version that applies today.  *See* http://www.jamsadr.com/employment-minimum-standards/, last accessed October 3, 2015.

provides that while the "Parties may agree on any procedures not specified herein or in lieu of these Rules," such procedures must be "consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness . . . .)." Arb. Rules at Rule 2(a).

Following the hearing on Defendant's motion, this Court ordered Defendant to file an arbitration demand with JAMS to determine if JAMS would be willing to accept the instant arbitration. Docket No. 76. On September 14, 2015, the parties received a letter from JAMS's Executive Vice President and General Counsel, which stated:

> JAMS has received and reviewed the parties' submissions in this matter, including the Court's Order of August 21, 2015. The Court's Order provides that the arbitration demands be filed at JAMS for the sole purpose of obtaining a determination from JAMS whether it will accept such arbitration demands. With regard to this inquiry, please note that JAMS will accept the arbitration demands for administration, subject to application of the Employment Minimum Standards. The parties' arbitration agreement specifically provides that the JAMS Employment Rules and the JAMS Employment Minimum Standards will apply to any arbitration. However, the arbitration agreement as written does not comply with the Minimum Standards. Therefore, JAMS has determined that it will administer the cases only if the parties, by agreement or waiver, amend the arbitration agreement to comply with the Minimum Standards.

Joint Status Report, Exh. T. Plaintiffs do not consent or agree to any modification or amendment of the arbitration agreement. Joint Status Report at 4.

## III. DISCUSSION

A.   Failure of the Arbitral Forum

The Court finds that JAMS has clearly declined to arbitrate the claims. While JAMS states that it will accept the arbitration demands for administration, it is conditioned on "the parties, by agreement or waiver, amend[ing] the arbitration agreement to comply with the Minimum Standards." Joint Status Report, Exh. T. Plaintiffs are not obligated to waive or modify the offending contractual terms, and in fact Plaintiffs have chosen not to do so. Joint Status Report at 4. The fact that Instacart offers to waive the problematic terms is irrelevant; this Court has previously found that "[n]o existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it." *Mohamed v. Uber Techs.*, Case No. C-14-

5200 EMC, 2015 WL 3749716, at *16 (N.D. Cal. June 9, 2015).

The issue then is whether the selection of JAMS was integral to the parties' agreement to arbitrate such that inability to refer arbitration to JAMS vitiates the entire arbitration clause. The Ninth Circuit has held that where "the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern,'" then the "failure of the chosen forum [will] preclude arbitration."[3] *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006), *abrogated on other grounds by Atlantic Nat. Trust LLC v. Mat. Hawley Ins. Co.*, 621 F.3d 931, 940 (9th Cir. 2010). In so doing, the Ninth Circuit followed the Eleventh Circuit, which similarly held that arbitration should not be compelled where the selected arbitral forum is unavailable, but only where the chosen (and failed) arbitral forum is an "integral part of the agreement to arbitrate." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000); *see also Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1350 (11th Cir. 2014) (affirming the use of the "integral part" test because "it remains the majority rule among Circuit Courts").

While the Ninth Circuit in *Reddam* did not explicitly define what makes a chosen arbitral forum "integral" to the parties' contract, it suggested that the "integral forum" determination should be made similarly to how the Ninth Circuit "approach[es] forum selection clauses which choose a particular court as the litigation arena. There we have not treated the selection of a specific forum as exclusive of all other fora, unless the parties have expressly stated that it was." 457 F.3d at 1061 (citing *Pelleport investors, inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984); *N. Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1036-37 (9th Cir. 1995) and *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76-78 (9th Cir. 1987)). That is, the *Reddam* court strongly suggested that a selected arbitral forum is "integral" to the arbitration agreement only where the contract clearly indicates that the selection of the arbitral forum is mandatory and exclusive, rather than "permissive." *Id.*

---

[3] California courts appear to be in agreement. *See, e.g.*, *Alan v. Superior Court*, 111 Cal. App. 4th 217, 227-28 (2003) ("If an arbitration agreement designates an exclusive arbitral forum (e.g., the NYSE), and the arbitration in that forum is not possible, courts may not compel arbitration in an alternate forum . . . ."); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 120-21 (2004) (holding that where the arbitral forum is "an integral term" of the contract, and the "forum selected by the parties declines to hear the matter, the dispute is to be tried in court") (internal modifications and citations omitted).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Applying *Reddam*, the district court in *Carideo v. Dell, Inc.* found that the parties' selection of the National Arbitration Forum (NAF) was integral to the arbitration clause.  Case No. C06-1772JLR, 2009 U.S. Dist. LEXIS 104600, at *19 (W.D. Wash. Oct. 26, 2009).  The arbitration clause provided that the parties' claims "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) UNDER ITS CODE OF PROCEDURE THEN IN EFFECT . . . ." *Id.* at *4, fn. 2.  Focusing on the "exclusively" term and the designation of the NAF's code of procedure as the applicable rules, the court concluded that the selection of the NAF was integral and that "[t]he unavailability of NAF as arbitrator presents compounding problems that threaten to eviscerate the core of the parties' agreement." *Id.* at *16-17, 19.

In contrast, the *Selby v. Deutsche Bank Trust Co. Americas* court determined that the selection of the NAF was not integral where the arbitration clause read: "Any claim, dispute or controversy of any nature whatsoever . . . shall at the election of you or us or any such third party be resolved by binding arbitration pursuant to this Arbitration Provision conducted by the National Arbitration Forum . . . ." Civil No.12cv01562 AJB (BGS), 2013 U.S. Dist. LEXIS 46101, at *27-28 (S.D. Cal. Mar. 28, 2013).  The arbitration clause further provided that it would be conducted pursuant to the NAF Code of Procedure, and that the Code was incorporated by reference. *Id.* at *28.  The court first noted that the NAF's designation "appears to be simply part of the standard credit card agreement used by Advanta Bank at the time Plaintiff opened her Account," and that "Plaintiff has not established, or even argued, that she would not have entered into the underlying Agreement in the event of NAF's unavailability to arbitrate the resulting disputes." *Id.* at *35. Second, the court found that there was nothing in the arbitration clause to suggest that the parties did not intend to arbitrate their disputes if the NAF was not available. *Id.* at *35-36.  Third, the court found that the severance clause, which was expressly referenced in the arbitration section, provided that if any part was unenforceable, "that fact will not invalidate the remaining portions of the agreement." *Id.* at *36.  Finally, the court emphasized that the agreement "does not include language to the effect that NAF would serve as the 'exclusive' or sole forum for arbitration." *Id.* at *37.  The court thus distinguished the arbitration clause from that in *Carideo*, which not only

1    included the "exclusively and finally" language, but also did not have a severability clause.  *Id.* at

2    *37-38, fn. 10.

3           Here, the selection of JAMS was not integral to the parties' arbitration clause.  Unlike the

4    arbitration clause in *Carideo* which stated that disputes would be resolved "*exclusively* and finally

5    by binding arbitration administered by the [NAF]," the arbitration clause at issue here lacks

6    language denoting exclusivity.  *See* 2009 U.S. Dist. LEXIS 104600, at *4, fn. 2 (emphasis added).

7    Moreover, as in *Selby*, the Agreement's severability clause permits the arbitrator or court to strike

8    any part that is unenforceable, which includes the selection of JAMS.  Finally, the Agreement

9    itself suggests that the selection of JAMS was not integral: it provides that in the event of any

10   conflict between the JAMS rules and the Agreement, the Agreement applies.  Agreement at § 7.2.

11   Thus, the Agreement downplays the importance of the JAMS forum by favoring the terms of the

12   Agreement over JAMS rules.  For these reasons, the Court concludes that the selection of JAMS

13   was not integral to the arbitration clause, and that arbitration is not defeated by the failure of the

14   chosen arbitral forum.

15   B.     Authority to Determine Arbitrability

16          The next question is whether arbitrability of the dispute herein is to be determined by the

17   court or the arbitrator.  Under the Federal Arbitration Act (FAA), the enforceability of an

18   arbitration agreement is normally determined by the court.  *Rent-A-Center, W., Inc. v. Jackson*,

19   561 U.S. 63, 70 n.1 (2010).  While the parties may agree that the enforceability issue will be

20   delegated to the arbitrator, "[t]o establish this exception, it must be shown by 'clear and

21   unmistakable' evidence that the parties intended to delegate the issue to the arbitrator."  *Ajamian*

22   *v. Cantor CO2e*, 203 Cal. App. 4th 771, 781 (quoting *First Options of Chicago, Inc. v. Kaplan*,

23   514 U.S. 938, 944 (1995).  The "clear and unmistakable" requirement imposes a "heightened

24   standard."  *Rent-A-Center*, 561 U.S. at 70 n.1.  This is because the "'who (primarily) should

25   decide arbitrability' question is rather arcane.  A party often might not focus upon that question or

26   upon the significance of having arbitrators decide the scope of their own powers."  *First Options*,

27   514 U.S. at 945.  Thus, "whether the parties have submitted a particular dispute to arbitration, *i.e.*,

28   the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and

unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986).

Here, in its motion to compel arbitration, Instacart did not argue that the Agreement delegates the question of an arbitration agreement's enforceability to the arbitrator. Instead, Instacart assumed that the Court would decide arbitrability. It was not until after Plaintiffs contended that the arbitrator should decide the scope of the arbitration -- specifically whether arbitration could proceed on a class basis -- that Instacart argued that, based on Plaintiffs' "concession," the Court must permit the arbitrator to determine the validity and enforceability of the arbitration provision. Docket No. 52 (Opp.) at 20-21; Docket No. 59 (Reply) at 1.

In the face of the parties' shifting positions, the Court proceeds to analyze the question. The Court finds that the language of the purported delegation clause is not "clear and unmistakable." The clause states that "any controversy, dispute, or claim arising out of or related to . . . this Agreement, the breach, termination, interpretation, enforcement, validity, scope and applicability of any such agreement . . . shall be submitted to and determined exclusively by binding arbitration." Agreement at § 7.1. While in isolation this language may appear to be clear, it is inconsistent with the severability clause in section 10, which states that "any arbitrator *or court*" could declare or determine that a provision of the Agreement is invalid or unenforceable. Agreement at § 10 (emphasis added).

In *Baker v. Osborne Development Corp.*, the California Court of Appeal refused to enforce an express delegation clause that read "[a]ny disputes concerning the interpretation or enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause . . . shall be decided by the arbitrator." 159 Cal. App. 4th 884, 888-89 (2008). Despite such seemingly clear and unmistakable language, the Court of Appeal concluded that the issue of delegation was ambiguous in light of another clause in the arbitration provision that allowed for severance if "any provision of this arbitration agreement shall be determined by the arbitrator or *by any court* to be unenforceable." *Id.* at 891. Thus, "although one provision of the arbitration agreement stated that issues of enforceability of voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable." *Id.*

United States District Court
For the Northern District of California

1    at 893.  Because "the arbitration agreement did not 'clearly and unmistakably' reserve to the

2    arbitrator the issue of whether the arbitration agreement was enforceable," the Court of Appeal

3    determined that the court should adjudicate the question of whether the agreement was

4    unconscionable.  *Id.* at 894.

5         As in *Baker*, the delegation language here is inconsistent with the severability clause,

6    which states: "If any provision of this Agreement, or any provision thereof, be declared or

7    determined by any arbitrator or court to be illegal, invalid or unenforceable and are therefore

8    stricken or deemed waived, the remainder of the provision and the Agreement shall nonetheless

9    remain binding in effect . . . ."  Agreement at § 10.  *See also Parada v. Superior Court*, 176 Cal.

10    App. 4th 1554, 1566 (2009); *Ajamian*, 203 Cal. App. 4th at 792 ("As a general matter, where one

11    contractual provision indicates that the enforceability of an arbitration provision is to be decided

12    by the arbitrator, but another provision indicates that the *court* might also find provision in the

13    contract unenforceable, there is no clear and unmistakable delegation of authority to the

14    arbitrator."); *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1445 ("the

15    Agreement's statement in the severability provision that a *court* may decide the question of

16    enforceability creates an ambiguity as to whether an arbitrator should decide if an arbitration

17    contract is enforceable.").

18         Thus, given the absence of clear and unmistakable language delegating the question of

19    arbitrability to the arbitrator, the Court must adjudicate Plaintiffs' argument that the arbitration

20    clause is unconscionable and unenforceable.

21    C.     <u>Unconscionability</u>

22         "Federal law provides that arbitration agreements generally shall be valid, irrevocable, and

23    enforceable except when grounds exist at law or in equity for the revocation of any contract."

24    *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003) (citations omitted).  Thus,

25    in California, the courts may refuse to enforce an arbitration agreement if is unconscionable, as

26    unconscionability is a general contract defense.  *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996

27    (9th Cir. 2010).

28         "Because unconscionability is a contract defense, the party asserting the defense bears the

**United States District Court**
For the Northern District of California

1  burden of proof." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).  In

2  determining unconscionability, "the core concern of unconscionability doctrine is the absence of

3  meaningful choice on the part of one of the parties together with contract terms which are

4  unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109,

5  1145 (2013).   While both procedural and substantive unconscionability are required, "they need

6  not be present to the same degree." *Pokorny*, 601 F.3d at 996.  Instead, a sliding scale is applied,

7  such that "the more substantively oppressive the contract term, the less evidence of procedural

8  unconscionability is required to come to the conclusion that the term is unenforceable, and vice

9  versa." *Armendariz v. Found. Health Psychcare Servs, Inc.*, 24 Cal. 4th 83, 114 (2000).

10       1.   Procedural Unconscionability

11       As the California Supreme Court has explained, procedural unconscionability focuses on

12  "oppression" and "surprise." *Armendariz*, 24 Cal. 4th at 114.  "'Oppression arises from an

13  inequality of bargaining power which results in no real negotiation and an absence of meaningful

14  choice.  Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are

15  hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'"

16  *Tompkins v. 23andMe, Inc.*, Case No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *14 (N.D. Cal.

17  June 25, 2014) (quoting *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 245 (2014).)

18       The oppression element is nearly always satisfied when the contract is one of adhesion.

19  *Armendariz*, 24 Cal. 4th at 113.  An adhesion contract is a "standardized contract, which, imposed

20  and drafted by the party of superior bargaining strength, relegates the subscribing party *only the*

21  *opportunity to adhere to the contract or reject it.*" *Id.* (emphasis added) (citation omitted).  Here,

22  there is no dispute that the Agreement was an adhesion contract that Plaintiff was required to sign

23  in order to perform services for Instacart.  Moreover, there is no dispute that Plaintiffs had no right

24  to opt-out of the Agreement.  Thus, the oppression element is easily met.

25       The surprise element is likewise satisfied.  The arbitration clause appears on the fifth page

26  of the Agreement, in text the exact same size as the surrounding text and with nothing to call

27  particular attention to the clause.  Thus, the Court finds that there is a moderate degree of

28  procedural unconscionability here.

**United States District Court**
For the Northern District of California

2.      Substantive Unconscionability

Substantive unconscionability arises when a provision is overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided.  *See Sanchez*, 61 Cal. 4th at 911-12 (explaining that the California Supreme Court does not "see any conceptual difference among these formulations" of substantive unconscionability, and further explaining that "unconscionability requires a substantial degree of unfairness *beyond a simple old-fashioned bad bargain*") (citation omitted).

Plaintiffs argue that there are three substantively unconscionable terms: the forum selection provision, the fee-splitting provision, and the fee-shifting provision that purports to allow the arbitrator to award fees and costs to Instacart if it prevails in arbitration.  Opp. at 8.

The Court finds that as applied to particular facts in this case, the forum selection clause is not substantively unconscionable.  The Ninth Circuit has held that requiring arbitration "at the location of a defendant's principal place of business" is "presumptively enforceable."  *Polimaster Ltd. v. RAE Sys.*, 623 F.3d 832, 837 (9th Cir. 2010).  Similarly, California law "favors forum selection agreements . . . so long as they are procured freely and voluntarily, with the place chosen having some logical nexus to one of the parties or the dispute . . . ."  *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12 (2001).  Here, the parties agree that Instacart maintains its headquarters in San Francisco.  Opp. at 12; Reply at 9.  Thus, there is a logical nexus between the forum selection clause and Instacart's principal place of business.  While a different calculus should arguably apply to an employment dispute (as opposed to, *e.g.*, a commercial dispute between two comparably sized businesses), wherein an employee may claim undue burden resulting from a distant forum, here, Plaintiffs have chosen to file the instant lawsuit in San Francisco.  In *Zaborowski*, Judge Illston concluded that the forum selection clause was not unconscionable, particularly when the "plaintiffs chose to file their suit in San Francisco, exactly where the forum selection clause would have them undergo arbitration."  *Zaborowski v. MHN Gov't Servs, Inc.*, 936 F. Supp. 2d 1145, 1156 (N.D. Cal. 2013) ("It also appears that the Hawaii, Kentucky, and Nevada plaintiffs similarly did not find it prohibitively difficult to assert their claim in San Francisco"); *see also Tompkins*, 2014 WL 2903752, at *16 (rejecting argument that forum

United States District Court
For the Northern District of California

1   selection clause requiring arbitration in San Francisco was unconscionable where putative class

2   action was brought in San Francisco).  The forum selection clause here is not substantively

3   unconscionable under the facts of this case.

4         Instacart does not dispute that the fee-splitting provision, which requires that the parties

5   "equally advance all of the arbitrator's expenses and fees," is substantively unconscionable under

6   *Armendariz*.  The Court finds that it is.  *See Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 925-

7   26 (9th Cir. 2013) (finding that arbitration term which "require that the arbitrator impose

8   significant costs on the employee up front, regardless of the merits of the employee's claims," was

9   substantively unconscionable).

10        Instacart does argue that the third Agreement's provision allowing "the arbitrator [to]

11  award fees and costs to the prevailing party" is not substantively unconscionable because the

12  Agreement also requires that the arbitrator not "commit errors of law or legal reasoning."

13  Agreement at § 7.3.  As California law generally permits only the prevailing *plaintiff* in an

14  overtime or minimum wage case to recover his or her fees or costs (*see Aleman v. Airtouch

15  Cellular*, 209 Cal. App. 4th 556, 580 (2000) ("Section 1194, on the other hand, is a 'one-way' fees

16  statute that allows only a prevailing *plaintiff* to recover fees; a prevailing defendant does not get

17  the same benefit."), Instacart argues that the arbitrator would never actually be free to exercise his

18  "discretion" to award fees and costs to the prevailing party.  Reply at 10-11.  The Court rejects this

19  argument.  This interpretation would not only render the prevailing party language surplusage, but

20  would permit Instacart to deter potential plaintiffs -- who may not understand their rights under

21  California labor law -- from pursuing their claims in fear that they would be required to pay

22  Instacart's fees and costs should they not prevail.  Thus, the Court determines that this provision is

23  also substantively unconscionable.

24        Thus, the Agreement contains two substantively unconscionable terms.[4]  However, the

25  Court concludes that severance of the two challenged clauses is appropriate.[5]  Both the FAA and

26  _____

27  [4] Instacart does not assert any determination of unconscionability is preempted by the
    FAA.

28  [5] Instacart has filed an administrative motion to file a statement of recent decision,

                                            13

California law favor severance when the contract is not "permeated" with unconscionability. *See Armendariz*, 24 Cal. 4th at 121, 123. No such permeation exists here. Moreover, there is a severance clause in the Agreements. The offending provisions may easily be grammatically severed without reforming the Agreements. *See Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1478 (2009). Finally, severance here would not result in a situation where the parties are left with a "mere agreement to arbitrate" pursuant to unspecified terms; after severing the two unconscionable fee-related terms, it would appear that the JAMS rules would then apply,[6] and Plaintiffs do not challenge the JAMS rules as unconscionable.

Having severed the two challenged clauses, the Court finds that arbitration may be compelled. However, two issues remain: whether the arbitration must be compelled on an individual basis or class-wide basis, and whether Plaintiffs' PAGA claims must also be arbitrated.

D.    Class-wide Arbitration

Plaintiffs argue that class arbitration is permissible in the instant case. A threshold question is whether the availability of class action arbitration is decided by the arbitrator or the Court. The Supreme Court "has not yet decided whether the availability of class arbitration is a

_____

specifically the United States Supreme Court's grant of *certiorari* in *MHN Government Services v. Zaborowski*. See Docket No. 83. There, the Ninth Circuit upheld the district court's refusal to sever the unconscionable portions of the arbitration provision, finding that "[u]nder generally applicable severance principles, California courts refuse to sever when multiple provisions of the contract permeate the entire agreement with unconscionability." *Zaborowski v. MHN Gov't Servs.*, 601 Fed. Appx. 461, 464 (9th Cir. 2014). The Petition for a writ of *certiorari* sought review on whether California law applies a separate rule of contract severability to agreements to arbitrate, which disfavors arbitration.

While the rules permit a party to submit a motion for administrative relief to seek leave to submit new authority after a hearing, "it is a right that should be exercised sparingly." *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 909 (N.D. Cal. 2011). In determining whether to permit leave to submit additional authority, the Court weighs the relevance of the authority and considers factors such as whether the decision is controlling, persuasive on an important issue, or cumulative of cases already submitted. *Id.* In this case, the grant of *certiorari* is neither controlling nor persuasive, as it does not necessarily mean that the Supreme Court disagrees with the lower court's decision. The Court therefore denies Instacart's administrative motion.

[6] While the venue provision of the Agreement could conflict with JAMS' venue rules, it would appear not to conflict here for the reasons stated above.

United States District Court
For the Northern District of California

question of arbitrability." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 fn. 2 (2013). Of the two circuit courts to address the issue, both have held that the availability of class arbitration is a gateway question of arbitrability for the court to decide in the absence of clear and unmistakable delegation to the arbitrator. *See Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 332 (3d Cir. 2014) ("the availability of class arbitration is a question of arbitrability for a court to decide unless the parties unmistakably provide otherwise"); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("whether an arbitration agreement permits classwide arbitrability is a gateway question, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise") (citation omitted).[7]

In the instant case, although Plaintiffs originally contended that the delegation clause is unambiguous, they then argued in their sur-reply that "the delegation clause as it relates to the threshold questions of validity and *scope* is unenforceable because it is ambiguous and unconscionable." Opp. at 20; Docket No. 79 (Sur-reply) at 1 (emphasis added). The Court has already determined that the delegation clause is not clear and unmistakable, due to inconsistency between the delegation clause and the severability clause. In the absence of a clear and unmistakable delegation, the Court decides the gateway question of whether class arbitration is permitted by the Agreement.

This conclusion is bolstered by the fact that the delegation gives the arbitrator the authority to decide only "the breach, termination, interpretation, enforcement, validity, scope and applicability" of the Agreement. Agreement at § 7.1. It does not purport to decide issues of validity or scope as to individuals who are *not* parties to the Agreement. If arbitration were to proceed on a class basis, it would have the effect of binding parties who are not signatories to the agreement. *See Soto v. Am. Honda Motor Co.*, 946 F Supp. 2d 949, 954 (N.D. Cal. 2012) ("the

---

[7] In an unpublished decision, the Ninth Circuit likewise held that the district court did not err in striking the plaintiff's claims because "[i]ssues that contracting parties would likely have expected a court to have decided are considered gateway question of arbitrability for courts, and not arbitrators, to decide," and that "[t]he Supreme Court has made is clear that class action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Eshagh v. Terminx Int'l Co.*, 588 Fed. Appx. 703, 704 (9th Cir. 2014) (citations omitted).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

threshold issue of whether the delegation clause is even applicable to a certain party must be decided by the Court" because "[t]he provisions granting authority to the arbitrator to decide issues of scope are by definition are only applicable to the parties of the agreement"). *Cf. Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013) (holding that Toyota could not compel the plaintiffs to arbitration where it was a nonsignatory to the Purchase Agreements between the plaintiffs and various dealerships under principles of equitable estoppel); *Murphy v. DirecTV*, 724 F.3d 1218, 1230 (2013) (holding that Best Buy could not invoke an arbitration clause in a contract between the plaintiff and DirecTV because the claims against Best Buy did not rely on the contract and there was no agency relationship between DirecTV and Best Buy). A class action "is a procedural device for resolving the claims of *absent* parties on a representative basis." *Sakkab v. Luxottica Retail N. Am., Inc.*, -- F.3d --, 2015 WL 5667912, at *7 (9th Cir. 2015) (emphasis added). This further confirms that the court should decide the gateway issue of class arbitrability -- which in effect determines whether non-signatories to the Agreements between Instacart and the individual Plaintiffs may be bound by an arbitrator's decision -- in the absence of a clear and unmistakable delegation. *See Bd. of Trs. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) (finding that whether a non-signatory is bound by an arbitration agreement is for the court to resolve "unless the parties have clearly delegated to the arbitrator responsibility for this determination").

As to the merits of class arbitration, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). While in some instances, it is appropriate to presume that the parties have implicitly authorized class arbitration:

> [a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator. In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert

16

**United States District Court**
For the Northern District of California

> adjudicators to resolve specialized disputes. [Citations]  But the
> relative benefits of class-action arbitration are much less assured,
> giving reason to doubt the parties' mutual consent to resolve
> disputes through classwide arbitration.

*Id.* at 685-86.

Here, there is no evidence that the parties contemplated or agreed to class-wide arbitration. The arbitration clause does not mention the possibility of class-wide arbitration, but instead focuses its scope on disputes that arise out of or are related to "services performed by the *Contractor*" or the Agreement, which is specifically between Instacart and the *individual* Contractor.  Agreement at 1, § 7.1 (emphasis added).

Plaintiffs' arguments that there are contractual bases for supporting class-wide arbitration are unavailing.  First, the fact that the arbitration agreement generally refers to the arbitration agreement proceeding "to the fullest extent permitted by law" or the preservation of a party's legal rights do not support a conclusion that the parties actually agreed to class-wide arbitration.  Such terms are general and do not suggest that the parties specifically considered the possibility of class-wide arbitration, as opposed to bilateral arbitration between the parties.

Second, the Agreement's incorporation by reference of the JAMS Employment Arbitration Rules and JAMS Policy on Employment Arbitration Minimum Standards does not evidence an agreement to class-wide arbitration.  Neither the JAMS Employment Arbitration Rules and Procedures nor the JAMS Policy on Employment Arbitration Minimum Standards mentions the JAMS Class Action Procedures; instead, the JAMS Class Action Procedures exist as a separate set of rules, which the Agreement does not identify, let alone incorporate.  This situation is thus comparable to *Lopez v. Ace Cash Express, Inc.*; there, the plaintiff had likewise argued that by incorporating the AAA National Rules, the Defendant had also incorporated the AAA's Supplementary Rules, which provided for class-wide arbitration.  No. LA CV11-04611 JAK (JCx), 2012 WL 1655720, at *8 (C.D. Cal. May 4, 2012).  The district court rejected this argument, finding that although the AAA National Rules were expressly incorporated, the Supplementary Rules were not.  *Id.*  Instead, the district court held that the arbitration agreement was silent on class-wide arbitration, and that the defendant could not be compelled to arbitrate on a class-wide basis.  *Id.*  Similarly, the fact that JAMS Rule 6(e) permits the consolidation of

United States District Court

For the Northern District of California

1    arbitrations into a single arbitration is a distinct issue from whether class-wide arbitration is

2    permitted in the first place.  Absent invocation of JAMS' Class Action Procedures, those rules do

3    not come into play.  The incorporation of the JAMS Employment Arbitration Rules and

4    Procedures and JAMS Policy on Employment Arbitration Minimum Standards above do not

5    support a finding that the parties implicitly agreed to class-wide arbitration.

6        For these reasons, the Court determines that class arbitration was not specifically agreed

7    upon by the parties, and will compel arbitration on an individual basis only.

8    E.    PAGA Representative Claim

9        Finally, the Court must address whether the PAGA representative claims, which are not

10   waivable per *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014) and

11   *Sakkab*, 2015 WL 5667912, at *5, must be adjudicated in court or arbitrated.  As with the issue of

12   class arbitration, the Court has the authority to determine the arbitrability of the PAGA claim;

13   because a PAGA representative claim binds the interests of a non-party -- the state of California

14   which is effectively the real party in interest, *see Iskanian*, 59 Cal. 4th at 381 and *Sakkab*, 2015

15   WL 5667912, at *3 -- arbitrability is a gateway question appropriate for the Court absent clear and

16   unmistakable delegation.  As found above, such delegation is absent here.

17       Again, the Court finds that there was no intent to arbitrate the PAGA representative claim

18   because the arbitration agreement was drafted as specifically between Instacart and the individual

19   Contractor only.  Agreement at 1.  Nothing in the Agreement suggests the parties contemplated the

20   claims of non-parties such as the State's labor law enforcement agencies -- for whom an employee

21   plaintiff acts in a PAGA representative claim, *see Arias v. Superior Court*, 46 Cal. 4th 969, 986

22   (2009) -- would be subject to arbitration.  The Court will not assume, absent evidence to the

23   contrary, that an Agreement which explicitly focuses on claims between Instacart and the

24   *individual* contractor would require arbitration of the claims on behalf of the State, particularly

25   when the Supreme Court has recognized that "[t]he FAA does not mention enforcement by public

26   agencies; it ensures the enforceability of private agreements to arbitrate, but otherwise does not

27   purport to place any restriction on a nonparty's choice of a judicial forum."  *E.E.O.C. v. Waffle*

28   *House, Inc.*, 534 U.S. 279, 289 (2002).  The Court agrees with the conclusion reached in *Valdez v.*

United States District Court
For the Northern District of California

1  *Terminix Int'l Co.*, Case No. CV 14-09748 DDP (Ex), 2015 U.S. Dist. LEXIS 92177, at \*27-28

2  (C.D. Cal. July 14, 2015):  "if the claim belongs primarily to the state, it should be the state and

3  not the individual defendant that agrees to waive the judicial forum.  In the PAGA statute, the

4  Legislature has explicitly selected a judicial forum as the default forum."

5          This does not mean that in no instance can a PAGA representative claim be compelled to

6  arbitration.  *Sakkab*, 2015 WL 5667912 at \*8 ("Nothing prevents parties from agreeing to use

7  informal procedures to arbitrate representative PAGA claims.").  However, as the Court has

8  concluded with respect to the non-availability of class arbitration, the specific language of the

9  Agreement here underscores the parties' intent to arbitrate disputes that arose between Instacart

10  and the specific individual who signed the Agreement, and there is no clear and unmistakable

11  intent to arbitrate PAGA representative claims.  *Contrast with Cunningham v. Leslie's Poolmart,*

12  *Inc.*, CV 13-2122 CAS (CWx), 2013 U.S. Dist. LEXIS 90256, at \*37 (C.D. Cal. June 25, 2013)

13  (finding an agreement to arbitrate a representative PAGA claim could be inferred from an

14  agreement to arbitrate, where the arbitration clause encompassed claims "whether or not arising

15  out of my employment (or its termination).").

16          The PAGA representative claim therefore will be severed from the individual claims and

17  remain before this Court.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## IV.    CONCLUSION

For the reasons stated above, the Court concludes that the agreement to arbitrate is enforceable, subject to severance of the fee-splitting and fee-shifting provision.  Accordingly, the Court **GRANTS** Instacart's motion to compel arbitration on an individual basis,[8] except for the PAGA representative claim.  However, the Court will grant Instacart's request to stay this litigation, including the PAGA representative claim, pending the outcome of the arbitration.[9]  *See* 9 U.S.C. § 3; *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057 (9th Cir. 2013) ("9 U.S.C. § 3 . . . require[s] stay of civil action during arbitration").

This order disposes of Docket No. 29.

**IT IS SO ORDERED**.

Dated: November 3, 2015

_____
EDWARD M. CHEN
United States District Judge

---

[8] The parties are directed to initiate arbitration before JAMS.  If for some reason, JAMS refuses to accept the arbitration, the parties shall agree on an alternative venue.

[9] The PAGA claim asserted by Plaintiff is a representative claim.  As stated in their opposition brief, Plaintiffs stated their "PAGA claims are representative in nature."  Opp. at 17.

United States District Court
For the Northern District of California