KEKER & VAN NEST LLP
RACHAEL E. MENY - #178514
rmeny@kvn.com
BENJAMIN BERKOWITZ - #244441
bberkowitz@kvn.com
NIKKI K. VO - #239543
nvo@kvn.com
RYAN K. WONG - #267189
rwong@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415-391-5400
Facsimile:     415-397-7188

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC COBARRUVIAZ, ARLIN GOLDEN, JOHN REILLY, CHRISTOPHER RUSSELL, SUSAN BANNON, BATYA WEBER, AND DEREK WILLIAMS, Individually, and On Behalf of All Others Similarly Situated Employees,<br><br>        Plaintiffs,<br><br>    v.<br><br>MAPLEBEAR, INC., dba INSTACART; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. C 15-cv-00697 EMC<br><br>**DEFENDANT INSTACART'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Judge:     Hon. Edward M. Chen<br>Date:      September 22, 2016<br>Time:      1:30 p.m.<br>Courtroom: 5<br><br>Date Filed:  January 9, 2015 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND .....................................................................................................3

    A.    The *Cobarruviaz* Litigation ........................................................................3

    B.    The *Sumerlin* Litigation .............................................................................4

    C.    Individual Arbitrations.................................................................................8

III.    ARGUMENT ...........................................................................................................8

    A.    Legal Standard .............................................................................................8

    B.    Instacart and its Counsel Complied with this District's Civil Local Rules ............9

        1.    The *Sumerlin* litigation is not an "other action or proceeding" under the Civil Local Rules. ...........................................................9

        2.    The *Sumerlin* case is not "related" under the Civil Local Rules................12

    C.    Instacart and its Counsel Acted in Good Faith and with Candor...........................13

    D.    Sanctions Are Not Warranted Even if Instacart's Reading of the Rules Was Incorrect. .................................................................................................15

    E.    Plaintiffs Fail to Articulate Any Improper Motive or Advantage to Instacart....................................................................................................16

    F.    Plaintiffs' Claims for Attorneys' Fees Are Unsupported and Exaggerated...........18

IV.    CONCLUSION........................................................................................................23

**Federal Cases**

*Chalmers v. City of Los Angeles*
796 F.2d 1205 (9th Cir. 1986) ............................................................... 18, 19

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*
122 F.3d 1211 (9th Cir. 1997) ............................................................... 18, 19

*Hart v. Massanari*
266 F.3d 1155 (9th Cir. 2001) ............................................................... 16

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ............................................................................. 18, 19

*In re Sutter*
543 F.2d 1030 (2d Cir. 1976) ................................................................ 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
No. M 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011) ........................................... 10

*Kilgore v. KeyBank, N.A.*
718 F.3d 1052 (9th Cir. 2013) ............................................................... 4

*Miller v. City of Los Angeles*
661 F.3d 1024 (9th Cir. 2011) ............................................................... 18

*Miranda v. S. Pac. Transp. Co.*
710 F.2d 16 (9th Cir. 1983) ................................................................. 16

*Morris v. Ernst & Young LLP*
No. CV C-12-04964 RMW, 2013 WL 3460052 (N.D. Cal. July 9, 2013) .............................. 10

*O'Connor v. Uber*
-- F.Supp.3d ................................................................................. 17

*Real Estate Training Int'l, LLC v. Nick Vertucci Cos., Inc.*
124 F. Supp. 3d 1005, 1006 (C.D. Cal. 2015) ................................................. 14

*Saleh v. Titan Corp.*
353 F. Supp. 2d 1087 (S.D. Cal. 2004) ...................................................... 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
559 U.S. 662 (2010) ......................................................................... 4

*Tan v. GrubHub, Inc.*
No. 15-cv-05128-JSC 2016 WL 1110236 (N.D. Cal. 2016) ....................................... 17

*Zambrano v. City of Tustin*
885 F.2d 1473 (9th Cir. 1989) ......................................................... *passim*

*Zepeda v. United States Immigration and Naturalization Serv.*
753 F.2d 719 (9th Cir. 1983) ............................................................... 10

ii

**Federal Statutes**

9 U.S.C. § 3 ...................................................................................................... 4

Fair Labor Standards Act ("FLSA") ........................................................... *passim*

**State Statutes**

California Business & Professions Code § 17200 ........................................... 4

**N.D. Civil Local Rules**

Local Rules 1-4 .................................................................................. 8, 9, 18

Local Rules 1-5 .................................................................................. 8, 9, 18

Local Rule 3-12 ..................................................................... 1, 12, 13, 14, 15

Local Rule 3-13 ..................................................................................... *passim*

Local Rule 16-9 ................................................................................ 1, 12, 15

Local Rule 37-4 ......................................................................................... 18

**State Rules**

California Rule of Court 3.769(f) ................................................................ 17

DEFENDANT INSTACART'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case No. C 15-cv-00697 EMC

1102351

# I.    INTRODUCTION

Plaintiffs Golden and Cobarruviaz's[1] motion for sanctions is yet another unfounded and transparent attempt to seek payment of their attorneys' fees.  Indeed, as recently as June 2016, Plaintiffs tried to use a case management conference to ask this Court for an order that Instacart would be "responsible for all attorneys' fees" that they had incurred or planned to incur in individual arbitrations against Instacart.[2]  Having been unsuccessful in that request, Plaintiffs now attempt to seek *hundreds of thousands of dollars in attorneys' fees* by making a baseless claim that Instacart and its counsel should be sanctioned for failing to file a notice of a public state-court proceeding.  Plaintiffs' motion is wrong under the law, wrong on the facts, and should be denied in its entirety.

First, the premise of Plaintiffs' motion—that the *Sumerlin* and *Cobarruviaz* cases are "related cases" or "other actions or proceedings" under the Civil Local Rules—is simply incorrect.  This Court's "Related Case" Rule—Civil Local Rule 3-12—applies only to cases that are "filed in or removed to this district" and is intended for purposes of *intra-district* coordination.  Neither Civil Local Rule 16-9 nor the Standing Order for All Judges of the Northern District alters these definitional requirements, and Instacart has found no authority (and Plaintiffs have cited none) for Plaintiffs' novel argument that they do.  Thus, because the *Sumerlin* litigation is a state-court proceeding, it is not a "related case" under the Civil Local Rules.  Similarly, *Sumerlin* is not an "other action or proceeding" as defined by Civil Local Rule 3-13, because it does not meet both required standards under the rule – involving (a) "all or substantially all of the same parties" *and* (b) "all or a material part of the same subject matter." *See* Civil L.R. 3-13(a).  To the contrary, the *Sumerlin* litigation (which was filed only *after* the

---

[1] Plaintiffs' motion for sanctions is brought only by named plaintiffs Cobarruviaz and Golden, who are defined as "Plaintiffs" in this motion (*see* Plaintiffs' Motion for Sanctions ("Mot."), ECF 107 at 1:5.  To be clear, Golden and Cobarruviaz are only a small subset of the named plaintiffs remaining in this action.  Indeed, in the June 2016 case management conference statement, Plaintiffs recognized that they still represent numerous individual plaintiffs, most of whom live outside California.  *See* ECF 97 (filed on behalf of all seven plaintiffs and seeking numerous forms of relief on their behalf).  However, for purposes of this motion, Instacart adopts the use of the term "Plaintiffs" to refer only to the plaintiffs Cobarruviaz and Golden who bring this motion.

[2] *See* ECF 97 (Joint CMC Statement, June 2, 2016) at 9 (demanding attorneys' fees to cover individual arbitrations with Instacart).

class-action allegations in the *Cobarruviaz* litigation were dismissed) involves different parties and substantially narrower allegations than the nationwide claims pled in *Cobarruviaz*. Indeed, unlike *Sumerlin*, the *Cobarruviaz* litigation now involves seven individual plaintiffs (five of whom are from outside California and not covered by the *Sumerlin* putative class) and numerous claims under non-California state law or federal law that are not pled in *Sumerlin*. Thus, the *Sumerlin* and *Cobarruviaz* cases are not "related cases" or "other actions or proceedings" under the Civil Local Rules.

Second, contrary to Plaintiffs' *ad hominem* and baseless attacks, Instacart and its counsel have acted in good faith and with candor at all times. Like virtually every company, Instacart is subject to lawsuits from time to time alleging employment law violations. When, as with *Sumerlin*, these lawsuits are filed in state or federal courts, they are public proceedings that can be monitored by counsel through routine and ordinary means utilized by law firms. Instacart has never sought to conceal the *Sumerlin* case or any other litigation that has been publicly filed against it. However, it is simply not the law in this District that Instacart is required to file a notice each time a new employment lawsuit is filed against it on behalf of different plaintiffs, even where those different plaintiffs include some overlapping allegations. In fact, when *Cobarruviaz* was a pending putative class action, Plaintiffs' counsel was aware of at least one other similar putative class action in a different state, but Plaintiffs never took the position that such cases should be considered "related cases" or "other actions or proceedings" for purposes of the Civil Local Rules.

Third, while Plaintiffs accuse Instacart and its counsel of engaging in "undisclosed negotiations" and "concealing" the *Sumerlin* litigation, those allegations are simply untrue. Instacart has never "concealed" the *Sumerlin* action from Plaintiffs. The *Sumerlin* litigation was publicly filed in Los Angeles Superior Court on December 2, 2015, was the subject of press releases and publicity (including through social media) by the *Sumerlin* plaintiffs, and was readily available on the court's website and in the ordinary course through traditional litigation monitoring services. Moreover, on multiple occasions between January 28, 2016 and July 6, 2016, Instacart and the *Sumerlin* plaintiffs publicly filed stipulations noting the fact that they were

2

discussing settlement, including identifying the date of a planned mediation, and that post-mediation settlement discussions were ongoing.  Once the proposed settlement was publicly filed, Instacart promptly informed Mr. Cobarruviaz and Mr. Golden's counsel of the pending motion, so they could consider whether to stay Mr. Golden's arbitration (and the other California arbitrations), and would have plenty of time to consider whether to join the settlement, object to it or opt out.  Lastly, there was no procedural or other advantage to concealing the *Sumerlin* litigation, which was a matter of public record.  Even if Instacart had filed the notice Plaintiffs base this motion upon, Instacart could still have engaged in settlement discussions with the *Sumerlin* plaintiffs and those discussions would have been protected by confidentiality requirements until the settlement became public.  And, Plaintiffs do not (and cannot) submit any evidence that a filed notice of the *Sumerlin* litigation would have changed what has occurred – Mr. Cobarruviaz would still never have filed any arbitration, Mr. Golden would have continued his arbitration and they both would have objected to the *Sumerlin* settlement as they now have done.

Lastly, Plaintiffs' request for sanctions in the form of attorneys' fees cannot be granted without proof of clear evidence of "bad faith misconduct" or "willful disobedience" that is not present here.  No matter how analyzed, Instacart's interpretation of the Civil Local Rules was reasonable and consistent with their plain language.  The reality is that the *Sumerlin* litigation simply was not a "related case" or "other action or proceeding" as defined by the notice provisions of the Civil Local Rules.

## II. BACKGROUND

### A. The *Cobarruviaz* Litigation

As this Court is aware, Plaintiffs in the instant action are seven individuals who filed a ***nationwide*** putative class action against Instacart under the Fair Labor Standards Act ("FLSA") and subclasses under various state laws.  *See* ECF 17.  Five of the seven named Plaintiffs here performed services as independent contractors for Instacart outside of California and never performed services in California.  *Id*.  Specifically, in addition to their nationwide class claims, Plaintiffs Reilly and Russell asserted putative class claims on behalf of a class of New York

contractors under New York law, Plaintiffs Bannon and Weber asserted claims on behalf of Pennsylvania contractors under Pennsylvania law, and Plaintiff Williams asserted claims on behalf of Colorado contractors under Colorado law. *Id.* In total, the *Cobarruviaz* complaint asserted twenty-five separate causes of action on behalf of various subclasses of plaintiffs, the majority of which arose under non-California law. *Id.*

On November 3, 2015, this Court stayed these claims, compelled Plaintiffs to individual arbitrations before JAMS, and dismissed all putative class-wide claims under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684–86 (2010). ECF 93. During the pendency of the individual arbitrations, the Court stayed the entire litigation, "including the [California Private Attorneys General Act ("PAGA")] representative claim, pending the outcome of the arbitration." *Id.* at 20. In doing so, the Court quoted the Ninth Circuit's decision in *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057 (9th Cir. 2013), which held that "9 U.S.C. § 3 . . . require[s] stay of civil action during arbitration." *Id.* Pursuant to the stay, the Court retained jurisdiction over all seven of the Plaintiffs, who remain parties to and have continued to participate in the litigation. Indeed, in the parties' June 2016 case management conference statement, Plaintiffs made clear that they continue to represent all seven of the named Plaintiffs, including the non-California Plaintiffs, sought advancement of attorney fees for both their California and non-California Plaintiffs, and sought to have a "corrective notice" issued to the former putative nationwide class members in connection with nationwide claims. *See* ECF 97.

**B.    The *Sumerlin* Litigation**

On December 2, 2015, one month after this Court's order compelling arbitration and dismissing the class action claims, five different plaintiffs filed a putative class action against Instacart in Los Angeles Superior Court. *See* Declaration of Rachael Meny ("Meny Decl.") ¶ 4, Ex. B (*Sumerlin* Complaint). In December 2015, the *Sumerlin* plaintiffs asserted claims under California Business & Professions Code Section 17200 and under the California Labor Code on behalf of a putative ***California-only*** class. They did ***not*** assert any claims under the FLSA, New York law, Pennsylvania law, Colorado law, or under PAGA. The *Sumerlin* plaintiffs filed a first amended complaint on January 26, 2016, adding a representative claim for violation of PAGA,

after providing notice to the California Labor and Workforce Development Agency ("LWDA") on December 14, 2015.[3] *Id.* ¶ 5, Ex. C (*Sumerlin* Amended Complaint). This amended complaint still only pleads California Labor Code claims on behalf of a putative **California-only** class. *Id.*

As compared to the twenty-five claims asserted in *Cobarruviaz*, the *Sumerlin* plaintiffs asserted only six claims in their original complaint, and added a PAGA claim in January 2016. *Compare* ECF 17 to Meny Decl., Ex. C. Thus, the *Sumerlin* claims comprise only a small fraction of the *Cobarruviaz* claims and a small subset of the *Cobarruviaz* plaintiffs:

| ***Cobarruviaz* Amended Complaint** | ***Sumerlin* Amended Complaint** |
|---|---|
| Two named Plaintiffs from **New York**<br><br>Two named Plaintiffs from **Pennsylvania**<br><br>One named Plaintiff from **Colorado**<br><br>Two named Plaintiffs from **California** | Named Plaintiffs from **California** |
| **FLSA claims** on behalf of a putative nationwide class | None |
| **Fraud claim** under CA law on behalf of a putative nationwide class | None |
| **Meal and rest break claim** under CA law on behalf of a putative nationwide class | None |
| **Willful misclassification claim** under CA law on behalf of a putative nationwide class | None |
| **Advice regarding misclassification claim** under CA law on behalf of a putative nationwide class | None |
| **Four claims under Colorado law** on behalf of a putative Colorado-only class | None |
| **Four claims under Pennsylvania law** on behalf of a putative Pennsylvania-only class | None |
| **Five claims under New York law** on behalf of a putative New York-only class | None |
| None | **"Failure to provide wages when due"** claim under CA law on behalf of a putative **California-only** class |

---

[3] Plaintiffs' motion claims, without support, that the *Sumerlin* plaintiffs "presumably" added the PAGA claim "after having held settlement discussions" with Instacart. *See* Mot. at 5:1–3. Plaintiffs' claim is baseless. The *Sumerlin* plaintiffs' PAGA notice to LWDA is dated in mid-December 2015, before Instacart was served with the initial complaint. *See* Meny Decl. ¶¶ 5–6.

| PAGA claim on behalf of a putative *nationwide* class | PAGA claim on behalf of a putative *California-only* class |
|---|---|
| UCL, minimum wage, overtime pay, wage statement, and reimbursement claims under CA law on behalf of a putative *nationwide* class | UCL, minimum wage, overtime pay, wage statement, and reimbursement claims under CA law on behalf of a putative *California-only* class |

While Plaintiffs' motion characterizes the *Sumerlin* litigation as "concealed" and "undisclosed," the *Sumerlin* litigation was publicly filed in Los Angeles County Superior Court and available on the court's website, and was published by traditional court monitoring and wire services, including Westlaw and Lexis, as is routine in the ordinary course. *See* Meny Decl. ¶¶ 4–5, 7. In addition, counsel for the *Sumerlin* plaintiffs issued a press release regarding the filing and further publicized the lawsuit using social media.[4] *Id.* ¶¶ 8–9, Exs. D (December 17, 2015 press release), E (Blumenthal twitter). Indeed, Keker and Van Nest learned of the *Sumerlin* litigation via traditional court monitoring and wire services. *Id.* ¶ 7, 20.

Further, while Plaintiffs claim that Instacart engaged in "undisclosed negotiations with the *Sumerlin* Plaintiffs," *see* Mot. at 1:15–16, this accusation is simply false. The truth is that both Instacart and the *Sumerlin* plaintiffs openly and repeatedly disclosed that they were engaged in mediation discussions in public court filings. *See* Meny Decl. ¶ 11, Ex. G (January 28, 2016 Stipulation) ("WHEREAS, the Parties have agreed to engage in an early mediation to discuss potentially resolving their disputes and have scheduled such a mediation for March 25, 2016."); *id.* ¶ 13, Ex. H (April 25, 2016 Stipulation) ("WHEREAS, the Parties have agreed to engage in further discussions during the next few months regarding a potential resolution of this action").

On March 25, 2016, the *Sumerlin* parties conducted an arms-length mediation with a highly respected mediator (and employment law specialist), Mark Rudy. Meny Decl. ¶ 12. At this mediation, the parties entered into a memorandum of understanding ("MOU") regarding

---

[4] Although Plaintiffs now claim that they were unaware of the *Sumerlin* litigation, in the *Sumerlin* proceedings, the Arns Law Firm stated that they previously spoke with two of the *Sumerlin* named plaintiffs, Denise Sealey and Era Alta, and apparently knew that these plaintiffs were planning to file an employment misclassification lawsuit against Instacart. *See* Meny Decl. ¶ 10, Ex. F at n.2 (Arns Law Firm's Opposition to *Sumerlin* Preliminary Approval Motion). The Arns Law Firm's discussions with Ms. Sealey and Ms. Alta were apparently substantive enough that they felt justified in asking the *Sumerlin* court to provide them with discovery into why Ms. Sealey and Ms. Alta are named *Sumerlin* plaintiffs. *Id.* Such discussions make it even odder that Plaintiffs would not have known, at a minimum, that another putative class action in California was likely to be filed, even if they had missed the press on the filing. *See id.* ¶¶ 7–9, Exs. D, E.

certain principal terms of a settlement. The mediation and the MOU were subject to California's mediation and settlement privileges and contained routine confidentiality provisions that prevented public disclosure of the settlement until it was finalized. *Id.*

The *Sumerlin* parties then spent several months negotiating a proposed final settlement agreement for the *Sumerlin* litigation, which was fully executed on July 5, 2016, and submitted by the *Sumerlin* plaintiffs to the court that same day, accompanied by plaintiffs' motion for preliminary approval. *Id.* ¶ 14, Ex. I.[5] Instacart did nothing to conceal this preliminary approval motion from the *Cobarruviaz* plaintiffs. To the contrary, on July 8, 2016, after confirming that the documents had been fully executed and publicly filed with the court, Instacart sent copies of the motion papers and the proposed settlement agreement to Mr. Golden's counsel, asking if they would agree to stay Mr. Golden's pending arbitration during the pendency of the settlement approval process. *Id.* ¶ 15. Mr. Golden's counsel ultimately agreed. *Id.*

On July 26, 2016, Mr. Cobarruviaz and Mr. Golden submitted an *ex parte* application seeking leave to intervene in the *Sumerlin* litigation, as well as an opposition to the *Sumerlin* plaintiffs' motion for preliminary approval. Meny Decl. ¶¶ 16, 24. Mr. Cobarruviaz and Mr. Golden's proposed complaint in intervention for the *Sumerlin* litigation seeks to expand the litigation to include numerous claims not previously pled by the *Sumerlin* plaintiffs and to expand the putative class from a California-only class to a nationwide class. Meny Decl. ¶ 17, Ex. J.[6] Although the *Sumerlin* hearing on preliminary approval was originally set for August 5, 2016, it was moved to August 26, 2016 in light of Plaintiffs' counsel's filings in *Sumerlin*. *Id.*

Only after seeking to intervene in and expand the *Sumerlin* litigation did the *Cobarruviaz* plaintiffs file a notice under Local Rule 3-13 in the instant action on July 29, 2016. ECF 105. Instacart filed an opposition to the Rule 3-13 Notice on August 12, 2016. *See* ECF 106.

---

[5] Contrary to Plaintiffs' motion, Instacart's efforts to finalize a settlement agreement with the *Sumerlin* plaintiffs were still ongoing as of the June 23, 2016 Case Management Conference before this Court. *Compare* Mot. at 11 to Meny Decl. ¶ 14.

[6] Plaintiffs have since claimed that their attempt to intervene on behalf of a nationwide class in *Sumerlin* was a "typo," but they have never submitted a corrected complaint in intervention and have not otherwise withdrawn this request. Meny Decl. ¶ 17.

## C.  Individual Arbitrations

Following the Court's November 3, 2015 order compelling the parties to initiate individual arbitration before JAMS, *see* ECF 93 at 20, Instacart contacted JAMS on November 5, 2015 and asked JAMS to immediately commence individual arbitrations for the seven named Plaintiffs.  *See* ECF 97 at 11.  On November 6, 2015, Plaintiffs' counsel instructed JAMS to "refrain from acting on the demands for arbitration" so that Plaintiffs could file revised demands. *Id* at 11:11–12.

To date, only two of the named Plaintiffs here have submitted arbitration demands to JAMS: Arlin Golden, who performed services in California, submitted an individual arbitration demand on December 31, 2015, and Batya Weber, a Pennsylvania contractor, submitted an arbitration demand on April 1, 2016.  Meny Decl. ¶ 21.  Because she did not perform services in California, Ms. Weber is ***not*** a member of the putative *Sumerlin* class.  The five remaining *Cobarruviaz* plaintiffs—Cobarruviaz, Reilly, Russell, Bannon, and Williams—have never filed demands for arbitration against Instacart.  *Id*. at ¶ 17.

## III.  ARGUMENT

### A.  Legal Standard

Plaintiffs here ask the Court to impose one sanction on Instacart and its counsel – hundreds of thousands of dollars in attorneys' fees.  *See* Mot. 1:6–8, 3:2–3.  Plaintiffs ask the Court to impose such sanctions "under its local rules and pursuant to its inherent authority."  *Id.* at 12:7–8.  Specifically, Plaintiffs rely on Civil Local Rules 1-4 and 1-5 as providing the Court's authority to issue such sanctions, *see id.*at 12, and cite generally to the Court's inherent power to sanction as discussed in the case law.  *Id.* at 13.  Plaintiffs' motion must be denied because there is simply no evidence of any wrongful action, much less the "bad faith actions or willful disobedience of court orders or rules" that is required to impose the attorneys' fees sanctions that Plaintiffs seek.  *Zambrano v. City of Tustin,* 885 F.2d 1473, 1481 (9th Cir. 1989).

Although Plaintiffs' motion claims that sanctions here can be imposed for "recklessness, gross negligence, repeated flouting of court rules or misconduct," Plaintiffs are wrong.  Mot. at 12:14–15.  Sanctions in the form of attorneys' fees that Plaintiffs seek here are only permitted

where there is *clear evidence* of "bad faith actions or willful disobedience of court orders or rules." *Zambrano,* 885 F.2d at 1481. This "is an even higher threshold . . . than for leveling direct fines against members of the bar." *Id.* . As the Ninth Circuit has recognized, this high bar of "bad faith or willful disobedience" is necessary when seeking attorneys' fees as a sanction because "the federal courts cannot, absent specific statutory authority or one of the three enumerated exceptions listed by the Supreme Court,[7] alter the uniform system of cost-bearing created by Congress." *Id.* Here, just like the local rule at issue in *Zambrano,* the Court's authority to impose sanctions under Civil Local Rules 1-4 and 1-5 "is premised not on a 'specific and explicit' statutory right to impose fees but on a general delegation of rulemaking authority." *See id.* Therefore, awarding attorneys' fees as a sanction must be supported by "the factual prerequisites of bad faith misconduct or willful disobedience." *Id.* at 1482; *see also id.* at 1484 ("We conclude that appellants did not act in bad faith or engage in willful misconduct when they failed to apply for admission to the . . . bar. Consequently, the award of attorneys' fees to the defendants was improper[.]").

Ninth Circuit law is also clear that "[a]ttorneys should ***not*** be 'disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment.'" *Zambrano,* 885 F.2d at 1480 (citing *In re Sutter*, 543 F.2d 1030, 1035 (2d Cir. 1976)) (emphasis added). As the Ninth Circuit explained in *Zambrano*: "[W]e do not think that the imposition of financial sanctions for mere negligent violations of the local rules is consistent with the intent of Congress or with the restraint required of the federal courts in sanction cases." *Zambrano,* 885 F.2d at 1480.

**B.     Instacart and its Counsel Complied with this District's Civil Local Rules**

**1.     The *Sumerlin* litigation is not an "other action or proceeding" under the Civil Local Rules.**

In light of these legal standards, Plaintiffs' motion for sanctions must be denied because there is no evidence of any improper action here, much less the "bad faith action or willful disobedience of a court order" required to impose the requested sanctions. Indeed, Plaintiffs first

---

[7] The only three exceptions to the American Rule are: "bad faith or abusive litigation, willful disobedience of a court order, and common fund cases[.]" *Zambrano,* 885 F.2d. at 1481 n.25.

claim that Instacart and its counsel should be sanctioned because they did not file a notice of the *Sumerlin* litigation under Civil Local Rule 3-13(a). *See* Mot. at 6:15–8:24. But, as set forth in Instacart's Opposition to Notice of Pendency of Other Action or Proceeding, *see* ECF 106, the *Sumerlin* litigation is not an "other action or proceeding" as defined by Local Rule 3-13, because it does not satisfy both required parts of the rule: (a) "all or substantially all of the same parties" *and* (b) "all or a material part of the same subject matter." *See* Civil L.R. 3-13(a).

    *First*, there can be no dispute that the *Cobarruviaz* and *Sumerlin* actions do not involve "all or substantially all of the same parties" as required under Local Rule 3-13(a). None of the seven plaintiffs in *Cobarruviaz* are parties in the *Sumerlin* litigation. The only party to both actions is Instacart. Thus, the cases do not involve "all or substantially all of the same parties."

    Moreover, to the extent the Court were to consider the *Cobarruviaz* putative class action claims (which it should not), these claims were dismissed on November 3, 2015, nearly a month *before* the *Sumerlin* litigation was filed. Thus, the putative class actions, which involved different classes, were never pending at the same time. And, in any event, the rule in the Ninth Circuit is that "putative class members are not parties to an action prior to class certification." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) (citation omitted).[8] Because no class has been certified in either *Cobarruviaz* or *Sumerlin*, the only party common to both actions prior to class certification is Instacart.

    Further, the *Cobarruviaz* case was filed as a *nationwide* class action and asserted claims not only on behalf of a California class, but also on behalf of a nationwide class under the FLSA, and on behalf of subclasses in New York, Colorado, and Pennsylvania. Only two of the seven *Cobarruviaz* plaintiffs ever performed services in California. Five of the seven named plaintiffs in this case do *not* fall within the purported class definition in *Sumerlin*, as they allege claims only for services performed outside California. *See* ECF 17 ¶¶ 14–18. Plaintiffs Reilly, Russell,

---

[8] *See also, e.g., Zepeda v. United States Immigration and Naturalization Serv.*, 753 F.2d 719 (9th Cir. 1983); *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004) ("Clearly, the Ninth Circuit in *Zepeda* concluded that putative class members are not parties to an action prior to class certification."); *Morris v. Ernst & Young LLP*, No. CV C-12-04964 RMW, 2013 WL 3460052, at *7 (N.D. Cal. July 9, 2013) ("[U]ntil a class is certified and the opt-out period has expired, unnamed Class members are not parties to this action, and their claims are not at issue.") (citation and quotation omitted) (reversed and vacated on unrelated grounds).

Bannon, Weber, and Williams allege claims based on services performed outside of California and assert causes of action under New York, Pennsylvania, and Colorado labor law—claims that are not at issue in, and have no bearing on, the *Sumerlin* proceedings. *See id.* & ¶ 140. Because these five named Plaintiffs are not even purported class members in the *Sumerlin* case, the two cases clearly do not involve "all or substantially all of the same parties," as expressly required by Civil Local Rule 3-13.

While Plaintiffs' motion argues that the analysis should be different here, because "Plaintiffs Cobarruviaz and Golden stand in the shoes of the California Labor and Workforce Development Agency ("LWDA") on behalf of all other California Instacart Shoppers to bring this claim against Instacart," *see* Mot. at 7, Plaintiffs cite no authority for the proposition that claims under PAGA should be treated differently for purposes of defining the parties under the Civil Local Rules. Nor can there be any claim that the LWDA was not properly on notice of the *Sumerlin* litigation. The California Legislature has provided for a separate statutory framework for notice under the PAGA statute, and the *Sumerlin* plaintiffs assert that they properly served PAGA notices on the LWDA. *See* Meny Decl. ¶ 5, Ex. C. Finally, Plaintiffs' PAGA claim was brought only on behalf of a subset of the seven plaintiffs in this action¸ which is a far cry from "all or substantially all" of the parties. *See* ECF 17.

*Second*, while there is some overlap between the "subject matter" of the *Sumerlin* putative class-action claims and the individual and PAGA claims asserted by the two California plaintiffs, the vast majority of claims asserted in *Cobarruviaz* are simply not at issue in *Sumerlin* because the *Sumerlin* plaintiffs have not pursued nationwide claims, claims under the FLSA, claims under Pennsylvania, New York, or Colorado law, or even several of the California claims asserted by the *Cobarruviaz* plaintiffs, such fraud or willful misclassification. Moreover, *Sumerlin* is a putative class action that involves issues of proof on a class-wide basis, which raise different issues of proof and procedure than are at issue in the *Cobarruviaz* action, where no class-action claims remain. Thus, the majority of the issues to be litigated in each of the actions involve

different substantive legal claims, different procedural issues, and different facts.[9]

*Lastly,* Plaintiffs submit absolutely no evidence showing that their claimed violation of any rule was, in fact, willful. Indeed, Plaintiffs' motion is utterly devoid of any evidence that Instacart's actions were willful, they simply use the word "willful" without support. *See e.g.* Mot. But, claiming that actions were "willful" does not make it so, nor does it supply the type of clear evidence required to impose attorney fees-based sanctions. *See Zamora,* 885 F.2d at 1481. Moreover, Plaintiffs cannot establish that Instacart's behavior was willful because its counsel acted properly and believes that Local Rule 3-13 does not require the notice Plaintiffs demand. *See* Meny Decl.¶ 19. Plaintiffs' motion must be denied.

### 2. The *Sumerlin* case is not "related" under the Civil Local Rules.

Plaintiffs also claim that Instacart violated the Local Rules by not disclosing the *Sumerlin* litigation as a "related case" under Local Rules 3-12, 16-9 and the Standing Order for All Judges of the Northern District of California. *See* Mot. at 8:25–9:25. Although Plaintiffs apparently admit that the *Sumerlin* litigation is not a "related case" under Rule 3-12, they appear to argue that the definition of "related case" is broadened beyond the definition in Civil Local Rule 3-12 by operation of Civil Local Rule 16-9. *Id.* Plaintiffs cite to no authority for this novel proposition. *Id.*

As Plaintiffs' motion does not directly argue that the *Sumerlin* litigation is a "related case" under Rule 3-12; this fact appears to be undisputed. *See* Mot. at 8:25–9:25 (conspicuously omitting any argument that the *Sumerlin* lawsuit is "related" under Civil Local Rule 3-12). Indeed, the *Sumerlin* litigation is clearly not a "related case" under Rule 3-12 because it has not been "filed in or removed to this district."[10] *See* Civil L.R. 3-12(b). But, Plaintiffs try to expand the definition of "related cases" in this District (without case support) by arguing that Local Rule

---

[9] A notice filed under Civil Local Rule 3-13 must state "whether proceedings should be coordinated to avoid conflicts, conserve resources and promote an efficient determination of the action." Civil L.R. 3-13(b)(3)(C). Tellingly, Plaintiffs' notice does not request coordination or suggest that coordination would have any case management benefits (nor could it given the marked differences between the *Cobarruviaz* and *Sumerlin* proceedings). *See* ECF 105.

[10] Indeed, the purpose of Local Rule 3-12 is to consider whether cases should be "related" for purposes of ***intra-district*** coordination. Plaintiffs have not sought intra-district consolidation under Civil Local Rule 3-12 (nor could they given that the *Sumerlin* action is pending in California state court).

12

16-9 and the Standing Order for All Judges of the Northern District of California significantly broaden the scope of what is considered a "related case" in this District. *See* Mot. at 8-9. Plaintiffs' argument must be rejected. A plain reading of this District's Standing Order is that its reference to the inclusion of "related cases" in the parties' Joint Case Management Statement is a reference to the Civil Local Rules, and in particular to Local Rule 3-12, which is entitled "Related Cases." The Standing Order contains no independent definition of "related case," and Instacart and its counsel are aware of no case that has held that the language in the Standing Order modifies, or significantly expands, the definition of "related case" in the Civil Local Rules.[11] Plaintiffs' request for sanctions must be denied.

### C. Instacart and its Counsel Acted in Good Faith and with Candor.

Plaintiffs' last argument is that Instacart and its counsel breached a "duty of candor" to this Court. Mot. at 9:26-12:2. Plaintiffs' argument is wrong, on both the facts and the law. Indeed, despite Plaintiffs' repeated, personal attacks on Instacart and its counsel regarding their honesty and candor throughout their motion, the truth is that Instacart and its counsel have acted, and will continue to act, at all times honestly and consistently with their understanding of the requirements of the Civil Local Rules and the Standing Orders of this District. Instacart never sought to conceal the *Sumerlin* action—which had been publicly filed and was subject to publicity by the *Sumerlin* plaintiffs—but rather made a reasonable (and correct) assessment that the *Sumerlin* and *Cobarruviaz* cases are not "related" or "other actions" under the plain language of these Rules. *See e.g.,* Meny Decl. ¶ 19.

*First*, Plaintiffs' argument that Instacart and its counsel acted inconsistently with their duties of candor by "fail[ing] to disclose the *Sumerlin* case" in the June 2, 2016 Case

---

[11] Under Plaintiffs' reading of the Standing Order, the term "related case" includes almost any proceeding pending anywhere that might arguably be "related" in some way, without much restriction. *See* Mot. at 8–9. But in practice, Plaintiffs have never read that standard so broadly. Indeed, when the *Cobarruviaz* case was pending in this Court as a putative class action, the Arns Law Firm was aware of another putative class action arbitration that had been filed against Instacart in JAMS's Boston office. *See* Meny Decl. ¶ 22; *see, e.g.*, ECF 63 at 3. And, since the *Cobarruviaz* case has become an individual action with one representative claim, Plaintiffs have filed other arbitrations. Meny Decl. ¶ 23. But Plaintiffs have never before argued that such proceedings should be disclosed and have never filed any such notices. *Id.* at ¶¶ 22, 23.

1102351

Management Statement and during the June 23, 2016 Case Management Conference is wrong. As discussed above, the *Sumerlin* and *Cobarruviaz* cases are not related cases for purposes of the Local Rules, and Instacart never had any duty to disclose them. *See supra.* Thus, Instacart never "fail[ed] to disclose information to the tribunal when required by law to do so." Mot. at 10 (citing ABA Model Rule of Prof. Conduct, Rule 3.3, comments 2 & 12). [12] Moreover, Instacart's interpretation of those rules was a reasonable interpretation, and its statement that there were no "related cases" as defined by Local Rule 3-12 was consistent with both the objective plain text of that Rule and also with counsel's own interpretation of the Rules. *See* Meny Decl. ¶ 19.

*Second*, although Plaintiffs' primary argument here is that Instacart violated its duty of candor by "misleading the Court to believe that the arbitrations and PAGA claims would proceed," this is flatly incorrect. Indeed, nothing in what Plaintiffs cite to the Court about the June 2016 case management conference demonstrates any misstatement or misleading statement on these issues. *See* Mot. at 9–12. Furthermore, as noted above, Instacart and its counsel never sought to conceal the publicly filed *Sumerlin* litigation in any way or the fact that settlement negotiations had been occurring in that case. *See supra* at 6. Also, even if Instacart had filed a notice of the *Sumerlin* litigation's existence, that would not have changed the actions in the Golden arbitration (unless Mr. Golden would have withdrawn that demand in light of *Sumerlin,* which he does not assert) or this litigation and Plaintiffs do not have any viable argument that it would have done so. *See infra* at 16-18. Moreover, even if Instacart had disclosed the fact of the *Sumerlin* litigation at the June 2016 case management conference (which was not necessary), Instacart still would not have been able to disclose the fact of an approaching settlement in that action due to the routine confidentiality restrictions in place. Meny Decl. ¶¶ 12, 14.

Lastly, Plaintiffs have also put forward ***no evidence whatsoever*** that Instacart was motivated by some perceived strategic or procedural advantage, because there is none. The reality is that Instacart has always had the ability to settle its claims with other plaintiffs and never

---

[12] While Plaintiffs' motion is predicated on a violation of ABA Model Rule of Professional Conduct 3.3, "California has not adopted the ABA model rules." *Real Estate Training Int'l, LLC v. Nick Vertucci Cos., Inc*., 124 F. Supp. 3d 1005, 1006 (C.D. Cal. 2015). Nonetheless, even if the ABA Model Rule applied, Instacart and its counsel in fact acted at all times with candor to the Court and to opposing counsel.

hid this possibility.[13]  Moreover, as soon as a final proposed class settlement agreement was

reached in the *Sumerlin* lawsuit on July 6, 2016, and once Instacart's counsel had confirmed that

the settlement approval papers had been publicly filed with the court, Instacart promptly notified

Mr. Golden's counsel of the settlement because it arguably affected Mr. Golden's then-pending

arbitration claims and asked him to agree to stay his arbitration (which he did).  Meny Decl. ¶ 15.

This notice also gave Plaintiffs Cobarruviaz and Golden an early opportunity to consider whether

to join the settlement, to object to it, or to opt out, and they used that opportunity to file an

opposition to the proposed settlement and seek to intervene personally in the *Sumerlin* litigation.

*Id.* at  ¶¶ 16, 17.  Critically, as to Mr. Golden's individual arbitration and the Arns Law Firm's

significant attorney fees associated with that arbitration, nothing prevents Mr. Golden from

continuing to pursue his claims on an individual basis in arbitration if he decides to opt out of the

settlement.  Thus, Plaintiffs' argument that Instacart acted improperly must be denied.

      **D.**     **Sanctions Are Not Warranted Even if Instacart's Reading of the Rules Was Incorrect.**

As explained above, Instacart did not violate any of the Northern District's Civil Local

Rules regarding "related case" notices under Civil Local Rules 3-12 and 16-9, or regarding "other

action or proceeding" notices under Civil Local Rule 3-13.  For that reason alone, Plaintiffs'

request for sanctions should be denied.

But even in the unlikely event that this Court disagreed with Instacart's reading of those

Civil Local Rules, that disagreement would not be sufficient evidence of "bad faith" misconduct

or "willful disobedience" by Instacart or its counsel which warrants attorneys' fees-based

sanctions.  *See Zambrano,* 885 F.2d. at 1481.  Indeed, Instacart's interpretation of the Civil Local

Rules, and this District's Standing Order was reasonable and in good faith.  *See supra* at 10-15.

Moreover, sanctions would not be warranted for Instacart's decision not to file a notice about a

lawsuit that has been on a public court docket, and has been publicized in press releases and

social media, since December 2015.  *See supra* at 6-7.  Indeed, Plaintiffs cite no cases in which

---

[13]  Indeed, Plaintiffs' counsel was well aware that there was at least one other putative class action pending against Instacart but did not ask Instacart for updates on that action or ask Instacart about any other such pending actions.  *See* Meny Decl. ¶ 22.

any court has (1) interpreted the Northern District's Civil Local Rules or Standing Order for All Judges in a manner that differs from Instacart's interpretation; or (2) imposed sanctions on a party based on Instacart's interpretation of the disputed Civil Local Rules.  In fact, to Instacart's knowledge, no court has ever adopted Plaintiffs' interpretation of the Civil Local Rules or the Standing Order.  Plaintiffs' inability to cite to any such case is fatal to its claim for sanctions.

Furthermore, the law is clear that imposing sanctions for an alleged violation of a court rule should be done in very limited circumstances, none of which exist here.  Even under the lower (and non-applicable) standard that Plaintiffs cite and that applies to non-attorney fee monetary sanctions, even small amounts of monetary sanctions should only be imposed for "repeated flouting of court rules." *Id.* at 1481; *see also Miranda v. S. Pac. Transp. Co.*, 710 F.2d 16, 518–19 (9th Cir. 1983) (imposing $250 sanction on attorney for violation of pre-trial order but only after explicit, advance warning that they would be fined for future violation).  Additionally, even an intentional violation of court rules should not result in sanctions if done in good faith. *See Hart v. Massanari*, 266 F.3d 1155, 1180 (9th Cir. 2001) (declining to sanction an attorney who, in good faith, erroneously believed a local rule to be unconstitutional before violating it). Lastly, attorneys also should not be sanctioned for reasonably testing the bounds of the court's rules.  *See, e.g.*, *id.* ("Our rules are obviously not meant to punish attorneys who, in good faith, seek to test a rule's constitutionality. We therefore conclude that the violation was not willful and exercise our discretion not to impose sanctions.").  Here, Instacart had no intent to violate any Civil Local Rules, and should not be sanctioned.

### E.  Plaintiffs Fail to Articulate Any Improper Motive or Advantage to Instacart.

While Plaintiffs' motion characterizes Instacart's "motives" as "dubious," *see* Mot. at 20, Plaintiffs articulate no advantage whatsoever that Instacart actually obtained or sought to obtain through its alleged "concealment" of the public (and publicized) *Sumerlin* litigation or through the manner in which Instacart provided notice to Messrs. Cobarruviaz and Golden of the proposed settlement.  The unexciting reality is that Instacart never sought to conceal the *Sumerlin* litigation, and, because Mr. Golden had an arbitration pending, Instacart ***promptly*** notified Mr. Golden's counsel of the July 5, 2016 settlement ***within three business days*** after its public filing, even

1102351

though Instacart had no obligation to do so.[14]  Meny Decl. ¶ 15.  Instacart's motives were not "dubious".

Without any evidence of bad faith of prejudice, Plaintiffs resort to speculative arguments that, had they been aware of the *Sumerlin* litigation, they ***may have*** sought leave from this Court to lift the stay of the PAGA claim in this action or leave from the *Sumerlin* court for those two Plaintiffs to intervene in the *Sumerlin* litigation.  Mot. at 14–19.  However, these arguments are wrong on the law.  *First*, Plaintiffs cite to no authority for why this Court would have lifted the PAGA stay before the conclusion of the individual arbitrations and Instacart is not aware of any authority for such an argument.[15]  *Second*, even if the court had lifted the stay in this action, Instacart would still have been free to settle the PAGA claim in the context of the *Sumerlin* class settlement.  *See Tan v. GrubHub, Inc.*, No. 15-cv-05128-JSC  2016 WL 1110236, at *8 (N.D. Cal. 2016) ("Defendants do not cite a single case in which the court held that two PAGA representatives cannot pursue the same PAGA claims at the same time. The Court declines to be the first to so hold.").

Plaintiffs' additional argument that the timing of Instacart's disclosure is "suspect" because Instacart sought a stay of the Golden arbitration pending preliminary approval also makes little sense.  The stay of the Golden arbitration proceedings was pursuant to stipulation with Plaintiffs' counsel.  *See* Meny Decl. ¶ 15.  Since then, Mr. Golden (along with Mr. Cobarruviaz, who to date has never filed any arbitration demand against Instacart) has moved to intervene in the *Sumerlin* litigation (which the *Sumerlin* plaintiffs and Instacart have opposed).  *Id.* ¶ 25.  Neither of these two Plaintiffs was prejudiced in any way by Instacart's motion for a stay of the Golden arbitration—which Mr. Golden consented to and to which Mr. Cobarruviaz was not a party.  Moreover, once again, Instacart advised Mr. Golden and his counsel of the settlement

---

[14] Under the California Rules of Court, as with the Federal Rules, notice to putative class members is typically provided only ***after*** preliminary approval.  *See* California Rule of Court 3.769(f).  However, Instacart nevertheless provided Plaintiffs Cobarruviaz and Golden notice of the proposed settlement ***prior*** to preliminary approval.

[15] If anything, this Court's decision in *O'Connor* suggests that the existence of parallel PAGA cases should not impact a stay request prior to judgment.  *Cf. O'Connor v. Uber*, -- F.Supp.3d --, (N.D. Cal. 2016) ("[N]one of those cases explain why section 2699(h) should be read to include deferring to a suit brought by private plaintiffs (as opposed to the LWDA) when the statutory language makes no such provision.").

agreement promptly within three business days after it was finalized and made public on July 5, 2016. Mr. Golden was not prejudiced by the timing of Instacart's notice of that settlement.

### F. Plaintiffs' Claims for Attorneys' Fees Are Unsupported and Exaggerated

Even if Plaintiffs had presented evidence of "bad faith actions or willful disobedience of court orders or rules" to justify sanctions in the form of attorneys' fees (which they have not), their request for attorney fees must still be denied. This is because "any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power" and courts must "consider the usefulness of more moderate penalties before imposing a monetary sanction." *See Zambrano*, 885 F.2d at 1480–81. Consistent with that rule, a party seeking attorneys' fees as a sanction "bears the burden of submitting ***detailed time records*** justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986) (emphasis added); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Moreover, if attorneys' fees are awarded to compensate a party for harm caused by an alleged violation, the court must "link" the alleged violation "to the harm suffered" and "the amount awarded ha[s] to compensate the" requesting party "for the damage actually caused by [the misconduct]." *See Miller v. City of Los Angeles*, 661 F.3d 1024, 1029 (9th Cir. 2011). Indeed, where, as here, a party in this District claims that unnecessary expenses were incurred, the party must "***itemize with particularity*** the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed." *See, e.g.*, Civil L.R. 37-4(b)(3) (emphasis added).[16] Such detailed billing records, including hourly invoices, are required to assist the court in determining what, if any, fee award is reasonable, and to exclude fees that are unnecessary, duplicative, or excessive. *See, e.g.*, *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1232 (9th Cir. 1997) ("[T]he district court abused its discretion by not requiring ... original time records and billing statements."); *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

---

[16] Civil Local Rule 37-4 pertains exclusively to discovery-related sanctions (and Plaintiffs are ***not*** seeking sanctions under this local rule), but it is the only local rule that authorizes attorneys' fees as a form of sanction. If attorneys' fees are authorized as a sanction under Civil Local Rules 1-4 and 1-5, the requirements of Civil Local Rule 37-4(b)(3) should apply to such a request.

1102351

Plaintiffs' sanctions request ignores all of these principles. In fact, Messrs. Cobarruviaz and Golden seek *all* of their attorneys' fees allegedly incurred since December 2, 2015,[17] not only in this action, but in Mr. Golden's individual arbitration, in four *other* filed individual actions to which neither Mr. Cobarruviaz nor Mr. Golden are parties, and in eight *other* alleged individual actions which have never been filed. *See* Arns Decl. (ECF 108) ¶¶ 23–32. In total, Plaintiffs Cobarruviaz and Golden seek an astonishing amount in fees—more than *$380,000*—based only "in part" on contemporaneously recorded time, with the remainder amplified by what Plaintiffs' counsel now terms "re-creation" by "looking through my e-mails and the time recorded by others in the matter." *See* Arns Decl. ¶ 17.

Despite (or perhaps because of) Plaintiffs' fees being "re-created" on the fly, Plaintiffs fail to provide any detailed and itemized billing records to enable the court to determine what, if any, of the $380,000 fee request is reasonable, and to exclude fees that are unnecessary, duplicative, or excessive. *Compare* Arns Decl. ¶¶ 15–32 to *Entm't Research Grp.* 122 F.3d at 1232 (the trial court abused its discretion by not requiring "original time records and billing statements" for a fee request). Plaintiffs' inadequate documentation, which does not enable any court (let alone Instacart) to evaluate what Plaintiffs' counsel spent time on, is alone grounds to deny their massive request. *See Hensley*, 461 U.S. at 440.

Yet, even putting aside the "recreated" and inadequately documented nature of Plaintiffs' fee request, Plaintiffs also fail to link *any* of the alleged $380,000 in attorneys' fees to Instacart's alleged Local Rule violations or to "*itemize with particularity*" what they allege to be "otherwise unnecessary expenses." *See* Arns Decl. ¶¶ 15–32. Instead, Plaintiffs simply allege that "it is impossible to say exactly what our course of action would have been had we been . . . informed of the *Sumerlin* action" and thus "many, if not all, of our attorney's hours were unnecessary." *Id.* ¶ 14. This is improper under both Ninth Circuit law and this Court's Local rules. *See Chalmers*, 796 F.2d at 1210 (holding that the party seeking fees has the burden of submitting detailed time records which justify request); Civil L.R. 37-4(b)(3) (requiring itemization of

---

[17] Although Plaintiffs premise their sanctions request on the fact that the *Sumerlin litigation* contains a PAGA claim, the PAGA claim was not added to the *Sumerlin* litigation until January 26, 2016. *See supra* at 4. Despite this, Plaintiffs' fee request commences December 2, 2105.

1    unnecessary expenses with particularity, at least for discovery sanctions).

2           Plaintiffs' claim that "many, if not all" of their attorney fees were "unnecessary" is also

3    highly suspect and overstated. *First*, the *Cobarruviaz* litigation has been stayed since November

4    3, 2015, which is one month **before** the *Sumerlin* litigation was even filed.  The claim that

5    Plaintiffs' counsel spent 238.9 hours on the *Cobarruviaz* litigation since December 2, 2015,

6    makes little sense in view of that stay.  *See* Arns Decl. ¶¶ 23–26, Ex. 7.  Although Plaintiffs claim

7    to have spent 131.1 hours on the *Cobarruviaz* litigation between December 2, 2015 and July 8,

8    2016, the only event that occurred in the *Cobarruviaz* litigation during that time period was the

9    filing of a Joint Case Management Statement on June 2, 2016, and the conference on June 23,

10   2016.  *See* ECF 97 and 101.  Both events occurred before a formal settlement agreement had been

11   finalized in *Sumerlin*, and both certainly would have been required notwithstanding the

12   subsequent proposed settlement of the *Sumerlin* litigation on July 6, 2016.  In fact, the majority of

13   the *Cobarruviaz* Plaintiffs are unaffected by the proposed *Sumerlin* settlement, and therefore

14   Plaintiffs would have had to file a Joint Case Management Statement and attend the conference at

15   least on behalf of the non-California named Plaintiffs.  *See supra* at 3-4.  Plaintiffs also claim to

16   have spent another 107 hours on the *Cobarruviaz* litigation between July 8, 2016 and August 12,

17   2016, when the only event that occurred in the *Cobarruviaz* litigation during that time period was

18   the filing of this motion.  *See* Arns Decl. ¶¶ 25–26.  Not only is 107 hours on this motion seem

19   high, but nothing about such hours was "necessary" here.

20          Also, given the lack of any itemized billing records, it is impossible for Instacart's counsel

21   or the Court to identify what Plaintiffs claim to have spent time on or what proceeding time may

22   have been incurred for.  *See* Arns Decl.  It is also impossible for Instacart's counsel or the Court

23   to identify where there has been unnecessary duplication of efforts, a significant issue because

24   Plaintiffs have often sent numerous attorneys to hearings in the *Cobarruviaz* litigation and in

25   other litigations.  *See* Meny Decl. ¶ 25.  But it appears unreasonable to have spent so much time

26   in the stayed *Cobarruviaz* litigation, especially when most of the hours were spent on a case

27   management conference that lasted only fifteen minutes.  *See* ECF 101.

28          *Second*, Plaintiffs allege a staggering 512.8 attorney hours spent on Mr. Golden's

individual arbitration proceedings.  *See* Arns Decl. ¶ 27.  On its face, this amount is strangely high given that, even under Mr. Golden's best theory of his case, his potential arbitration recovery is tiny.  Moreover, it is also strangely high given the very limited events that have occurred in that litigation—narrow written discovery and three depositions strictly limited to Mr. Golden's individual claims—and impossible to verify given the lack of itemized billing records.  The lack of records submitted also makes it impossible to verify how much of this amount results from unnecessary duplication of efforts, a key issue since Mr. Golden's counsel has had numerous lawyers at most, if not all, of the arbitration proceedings and on most, if not all, meet and confer calls in the arbitration, ranging between 2–4 lawyers.[18]  Meny Decl. ¶ 25.  Finally, Mr. Golden's individual arbitration with JAMS is before Judge Cahill—not this Court—and any fee dispute or award regarding time spent by Mr. Golden's counsel on the arbitration can and should be addressed to the Arbitrator (if Mr. Golden were ever to prevail in that arbitration), who would be in a far better position to evaluate the reasonableness of Mr. Golden's claimed fees in view of his oversight of that litigation.

*Third*, Plaintiffs' counsel seeks reimbursement for an alleged 66.7 hours working on "other" arbitrations, including 8 arbitrations that they claim to be working on but which have never been filed.  *See* Arns Decl. ¶¶ 30–31.  Plaintiffs' counsel also seeks reimbursement for numerous, undefined hours handling "putative class" related issues since December 2015, even though their class action claims were dismissed in November 2015.  *See* Arns Decl. at 6:7–8, 7:9–11, 7:13–16, 7:25, 8:10–24 (seeking fees for time regarding request for corrective "class" notice); 6:28–7:3 (seeking fees for time spent "communicating with absent class members").  However, Plaintiffs cite no authority for the remarkable proposition that Messrs. Cobarruviaz and Golden are entitled to recover attorneys' fees or costs for work that their counsel may have performed for ***other clients*** in ***other cases*** or to recover such fees and costs expended on "putative class" issues after their putative class action has been dismissed.  Instacart is aware of no such authority, and it is difficult to imagine any rationale that could justify such a result.

---

[18] This is inconsistent with Mr. Arns' claim that "there was little to no duplication of effort as I divided up the work into discrete tasks between the attorneys," but the lack of billing records make his claim impossible to test.  *See* Arns Decl. ¶ 18.

1102351

*Fourth*, Plaintiffs' counsel seeks reimbursement for an alleged 34.7 hours (totaling $18,843) that the firm Outten & Golden allegedly worked "in this litigation," without specifying whether that work was on the *Cobarruviaz* matter, the Golden arbitration or some other arbitration or proceeding. *See* Arns Decl. ¶ 21. Plaintiffs' counsel also seeks 22.2 hours for Cecilia Rodriguez of the Arns Law Firm. *Id.* ¶ 20. Both of these requests are questionable since the Outten firm has never appeared at any hearing or proceeding in the Golden arbitration, much of the Outten firm's alleged work appears to relate to putative class issues after the class was dismissed, and Ms. Rodriguez has never appeared in any proceeding. Meny Decl. ¶ 25. But again, without the required itemization, there is no way to test these claims.

Lastly, Plaintiffs' claims for $16,580.39 in "litigation expenses" suffer from the same fatal flaws as its fee requests. *See* Arns Decl. ¶ 32. The bulk of these expenses appear to relate to individual arbitrations (some of which are yet unfiled and many of which relate to individuals besides Mr. Golden), and not to the *Cobarruviaz* litigation. Moreover, it is difficult to understand how Messrs. Cobarruviaz and Golden could have incurred significant expenses in relation to the *Cobarruviaz* litigation, which has been stayed since November 2015. But since Plaintiffs have not provided the required itemization, it is impossible to test the reasonableness of these expenses or link them to Instacart's alleged rule violation.

In sum, Plaintiffs' attorneys' fees request suffers from numerous defects, not least of which is their admittedly "re-created" attorneys' fees, the apparently inflated nature of such fees, and the fact that Plaintiffs appear to seek fees and costs for issues beyond any reasonable scope of proper dispute related to this motion. This, combined with the lack of detailed billing records and the lack of any evidence regarding fees that were truly "unnecessary" and created by the alleged wrongdoing, provides yet another reason to deny Plaintiffs' sanctions request.[19]

---

[19] In the unlikely event that the Court were to consider imposing any attorneys' fee-based sanctions, Instacart requests that the Court require Plaintiffs' counsel to submit detailed timesheets and billing statements, and provide Instacart with an opportunity to address the appropriateness of the individual fee requests in greater detail.

1102351

# IV. CONCLUSION

Instacart properly complied with its obligations under the Civil Local Rules and—even if a different interpretation of the Rules could be argued—Instacart's interpretation of the Rules was reasonable. Moreover, Plaintiffs fail to demonstrate that Instacart acted in bad faith or engaged in willful misconduct, or that Plaintiffs suffered any prejudice as a result of Instacart's alleged rule violation. For these reasons, and the reasons set forth above, Plaintiffs' motion for sanctions should be denied in its entirety.

Dated: August 26, 2016

KEKER & VAN NEST LLP

By:  */s/ Rachael E. Meny*
RACHAEL E. MENY

Attorneys for Defendant
MAPLEBEAR, INC. dba INSTACART